-20030912

en

**Commonwealth of Massachusetts**
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

12/10/2004
11:51 AM

## SUCV2004-04823
## Skanska USA Building Inc v Hartford Roofing Company Inc et al

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 11/04/2004 | **Status** | Disposed: transfered to other court (dtrans) | | |
| **Status Date** | 12/10/2004 | **Session** | F - Civil F | | |
| **Origin** | 1 | **Case Type** | A12 - Construction dispute | | |
| **Lead Case** | | **Track** | A | | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 02/02/2005 | **Answer** | 04/03/2005 | **Rule12/19/20** | 04/03/2005 |
| **Rule 15** | 01/28/2006 | **Discovery** | 12/24/2006 | **Rule 56** | 02/22/2007 |
| **Final PTC** | 06/22/2007 | **Disposition** | 11/04/2007 | **Jury Trial** | Yes |

### PARTIES

**Plaintiff**
Skanska USA Building Inc
Active 11/04/2004

**Private Counsel 543937**
Stanley A Martin
Holland & Knight
10 Saint James Avenue
11th Floor
Boston, MA 02116
Phone: 617-523-2700
Fax: 617-523-6850
Active 11/04/2004 Notify

**Private Counsel 640569**
Brett D Carroll
Holland & Knight
10 St James Avenue
11th floor
Boston, MA 02116
Phone: 617-523-2700
Fax: 617-523-6850
Active 11/04/2004 Notify

**Defendant**
Hartford Roofing Company Inc
Served: 11/05/2004
Served (answr pending) 11/12/2004

**Defendant**
St Paul Fire & Marine Insurance Company Inc, dba
Served: 11/17/2004
Served (answr pending) 12/02/2004

**Private Counsel 557279**
Thomas H Hayman
Cetrulo & Capone
2 Seaport Lane
World Trade Center East 10th fl
Boston, MA 02210
Phone: 617-217-5500
Fax: 617-217-5200
Active 12/10/2004 Notify

**Commonwealth of Massachusetts**
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

## SUCV2004-04823
## Skanska USA Building Inc v Hartford Roofing Company Inc et al

| | |
|---|---|
| | **Private Counsel 641289**<br>Eric H Loeffler<br>Cetrulo & Capone<br>2 Seaport Lane<br>World Trade Center East 10th fl<br>Boston, MA 02210-<br>Phone: 617-217-5500<br>Fax: 617-217-5200<br>Active 12/10/2004 Notify |
| **Doing busnss as (alias)**<br>St Paul Surety<br>Active 11/04/2004 | |

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 11/04/2004 | 1.0 | Complaint & jury demand on complaint (all issues) |
| 11/04/2004 | | Origin 1, Type A12, Track A. |
| 11/04/2004 | 2.0 | Civil action cover sheet filed |
| 11/12/2004 | 3.0 | SERVICE RETURNED:  Hartford Roofing Company Inc(Defendant) (In hand to Yvette Concepcion) |
| 12/02/2004 | 4.0 | SERVICE RETURNED:  St Paul Fire & Marine Insurance Company Inc, dba(Defendant) (In hand on 11/17/04) |
| 12/10/2004 | | Certified copy of petition for removal to U. S. Dist.Court of Deft. St. Paul Fire & Marine Insurance Company U. S. Dist.#(04-12538DPW). |
| 12/10/2004 | | Case REMOVED this date to US District Court of Massachusetts |

### EVENTS

. HEREBY ATTEST AND CERTIFY ON

DEC. 13, 2004 , THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY.

ASSISTANT CLERK.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
Civil Action No.

---

SKANSKA USA BUILDING, INC.

Plaintiff,

v.

THE HARTFORD ROOFING COMPANY,
INC. and ST. PAUL FIRE & MARINE
INSURANCE COMPANY, INC. d/b/a ST.
PAUL SURETY

Defendants.

---

04-4823

COMPLAINT OF SKANSKA USA
BUILDING, INC.

## INTRODUCTION

This is an action by a construction general contractor, Skanska USA Building, Inc. ("Skanska"), against its subcontractor, The Hartford Roofing Company, Inc. ("Hartford"), for specific performance, breach of contract, and breach of the covenant of good faith and fair dealing arising out of a subcontract between the parties on the Massachusetts Biologic Laboratories Project (the "Project"), and against Hartford's surety, St. Paul Fire & Marine Insurance Company d/b/a St. Paul Surety ("St. Paul"), for monies and expenses incurred as a result of Hartford's failure to execute work pursuant to the terms of the subcontract with Skanska.

## PARTIES

1.      Plaintiff, Skanska, is a foreign corporation, organized under the laws of the State of Delaware, with a principal place of business in Massachusetts at 270 Congress Street, Boston, Suffolk County, Massachusetts.

2.    Defendant, Hartford, is a foreign corporation organized under the laws of the State of Connecticut, authorized to conduct business in the Commonwealth of Massachusetts, and conducting business at 53 Evans Drive, Stoughton, Norfolk County, Massachusetts.

3.    Defendant, St. Paul, is, upon information and belief, a foreign corporation organized under the laws of the State of Minnesota authorized to conduct surety business in the Commonwealth of Massachusetts, with a place of business at 124 Grove Street, Suite 311, Franklin, Norfolk County, Massachusetts.

## JURISDICTION AND VENUE

4.    Jurisdiction is conferred upon this Court pursuant to M.G.L. ch. 212, § 4.

5.    Venue is properly laid in Suffolk County pursuant to M.G.L. ch. 223, §§ 1, 8.

## GENERAL ALLEGATIONS

### The Subcontract

6.    On June 30, 2004, Hartford submitted a Bid and Qualification Proposal (the "Bid") to Skanska in response to Skanska's request for bids for construction work to be performed on the Massachusetts Biologic Laboratories Project in Mattapan, Suffolk County, Massachusetts.

7.    Pursuant to the terms of its Bid, Hartford agreed to enter into an executed contract with Skanska if Skanska accepted the Bid.

8.    On August 21, 2003, Skanska verbally and in writing notified Hartford that Hartford's Bid was accepted, and that Hartford had been awarded the subcontract with respect to the roofing work to be performed on the Project (hereinafter the "Subcontract").

9.    Skanska and Hartford entered into a written Subcontract on or about August 21, 2004 reflecting the terms contained in the Bid submitted by Hartford to Skanska. A true and correct copy of Subcontract No. 551309-417 is attached hereto as Exhibit "A."

2

10.     All material terms to the Subcontract, including price, schedule, scope of work, and business and risk allocation terms, were agreed upon by Skanska and Hartford pursuant to the Bid submitted by Hartford and accepted by Skanska.

11.     Neither party signed the Subcontract, but both parties acted pursuant to the terms contained therein as if it was fully executed. Upon information and belief, Hartford signed the Subcontract and/or maintains the same in its possession, custody, and control.

## The Performance Bond

12.     Pursuant to the terms of its Bid, Hartford agreed to obtain performance and payment bonds for the Project naming Skanska as obligee.

13.     The Subcontract required Hartford to obtain performance and payment bonds for the Project naming Skanska as obligee.

14.     On July 25, 2003, St. Paul, Hartford's surety, provided Skanska with a Letter of Intent to provide performance and payment bonds for Hartford stating that St. Paul would issue a Performance Bond and a Labor and Material Payment Bond immediately upon Skanska's acceptance of Hartford's Bid. A true and correct copy of the July 25, 2003 letter is attached hereto as Exhibit "B."

15.     Upon information and belief, St. Paul issued, signed, and delivered a performance bond, No. 400TB9603 (the "Performance Bond"), to Hartford in relation to the work to be performed on the Project, naming Skanska as obligee.

16.     Upon information and belief, Hartford signed the Performance Bond and/or maintains the same in its possession, custody, and control.

17.     St. Paul has from time to time solicited a status report from Skanska, relative to the work to be performed by Hartford, and on each occasion has referenced the Performance Bond. St. Paul is estopped to deny that it has issued the Performance Bond.

## Hartford's Failure to Perform

18.    In late September and early October, 2003, Hartford refused to perform its work in accordance with the Subcontract. Its failures to perform include:

(a)    failing to deliver timely submittals to Skanska;

(b)    failing to order materials required for the Project;

(c)    failing to commence any work pursuant to the terms of the Subcontract;

(d)    failing, after notice from Skanska, to remedy the defaults in its performance;

(e)    failing to notify Skanska that it had shut down its operations and that it was no longer in the business of installing roofs or managing work of any kind; and

(f)    abandoning the Project without warning or justification, prior to completion of its work under the Subcontract.

19.    By letter dated October 22, 2003, Skanska served Hartford with a Notice to Cure demanding that Hartford properly and diligently pursue the work agreed upon under the Subcontract within forty eight (48) hours or the Subcontract would be terminated. St. Paul was copied on the Notice to Cure.

20.    Hartford refused and failed to cure its breaches under the Subcontract, and on November 4, 2003, Skanska delivered notice to Hartford that Subcontract No. 551309-417 was terminated for default. St. Paul was copied on the Notice to Terminate.

21.    As a result of Hartford's failure to perform and abandonment of the Project, Skanska has suffered damages including costs and expenses in having to arrange for the completion of Hartford's work, the incurred costs for completing the work, and excess costs for completing the work above the Subcontract price.

4

## Skanska's Claim to St. Paul Against the Performance Bond

22.    By letter dated October 21, 2003, Skanska gave notice to St. Paul of Hartford's abandonment of the Project, and Skanska's intent to make a claim against the Performance Bond.

23.    Skanska demanded that St. Paul perform its obligations under the Performance Bond.

24.    St. Paul refused to perform its obligations under the Performance Bond, and improperly denied Skanska's claim.

25.    As a result of St. Paul's failure to perform its obligations under the Performance Bond, Skanska has incurred significant damages.

## Conditions Precedent

26.    All other conditions precedent to the institution of this action have occurred, been satisfied or waived, or otherwise excused.

## Count I – Specific Performance
(Hartford)

27.    Skanska incorporates the allegations contained in paragraphs 1 through 26 above as if fully set forth herein.

28.    Skanska and Hartford agreed to all materials terms to the Subcontract, and entered into the Subcontract on August 21, 2003.

29.    The Subcontract is supported by adequate and sufficient consideration, and its terms are reasonable, clear, and ascertainable.

30.    At all times relevant to the Subcontract, Skanska was ready, willing, and able to perform its obligations owed under the Subcontract, but Hartford abandoned the Project

31.    Pursuant to the terms of the Subcontract, Hartford was required to obtain a performance bond for the Project.

32.    Hartford's surety, St. Paul, issued Skanska a Letter of Intent confirming that the Performance Bond would be issued in the full amount of the Subcontract.

33.    Hartford failed to fulfill its obligations to Skanska under the Subcontract by not providing Skanska with a copy of the Performance Bond issued by Hartford for the Project naming Skanska as obligee.

34.    St. Paul improperly denied Skanska's claim against the Performance Bond contending that Hartford did not sign the Subcontract or the Performance Bond.

35.    Equity requires Hartford to sign and return the already agreed upon Subcontract, or requires the Court to deem the Subcontract signed as a matter of law since: (1) all material terms to the Subcontract were agreed upon by the parties; (2) Hartford agreed to enter into the Subcontract with Skanska when its Bid was accepted; and (3) Hartford acted pursuant to the terms and obligations of the Subcontract at all times relevant.

36.    Equity requires Hartford to sign and/or deliver the already executed Performance Bond to Skanska in accordance with the terms of the Subcontract, or requires the Court to deem the Performance Bond executed as a matter of law since: (1) St. Paul issued a Letter of Intent to Skanska confirming that the Performance Bond would be issued; (2) the Subcontract required Hartford to obtain a Performance Bond for the Project; (3) Hartford agreed to the terms of the Subcontract; (4) Hartford acted pursuant to the terms and obligations of the Subcontract at all times relevant; and (5) St. Paul issued, signed, and delivered the Performance Bond to Hartford (#400TB9603) naming Skanska as obligee.

37.    Skanska has suffered significant damages as a result of Hartford's failure to fulfill its obligations under the Subcontract, and Skanska does not have an adequate remedy at law to require Hartford to sign and deliver the Subcontract and Performance Bond for the Project.

WHEREFORE, the Plaintiff, Skanska USA Building, Inc., respectfully requests that this Honorable Court enter a judgment in its favor and against Hartford requiring that Hartford either deliver the signed Subcontract and Performance Bond to Skanska, or deem that the Subcontract and Performance Bond are fully executed as a matter of law, award Skanska all attorneys' fees and costs incurred in having to bring this action, and for such other and further relief that the Court deems just and proper.

### Count II – Breach of Contract
(Hartford)

38.    Skanska incorporates the allegations contained in paragraphs 1 through 26 above as if fully set forth herein.

39.    Skanska and Hartford entered into the Subcontract on August 21, 2003.

40.    During the course of the Project, Hartford failed and refused to perform its work in accordance with the Subcontract.

41.    As a result of Hartford's breaches of the Subcontract, Skanska was required to take steps to complete Hartford's work, and incurred significant costs for the same.

42.    Skanska is entitled to recover from Hartford the additional costs incurred as a result of Hartford's breach of its subcontract obligations.

43.    The Subcontract provides for the award of attorneys' fees and costs arising out of any disputes thereunder.

WHEREFORE, the Plaintiff, Skanska USA Building, Inc., respectfully requests that this Honorable Court enter a judgment in its favor and against Hartford, awarding it damages incurred plus interest, attorneys' fees, and costs, and for such other and further relief that the Court deems just and proper.

7

## Count III – Breach of Covenant of Good Faith and Fair Dealing
### (Hartford)

44.     Skanska incorporates the allegations contained in paragraphs 1 through 26 above as if fully set forth herein.

45.     Skanska and Hartford entered into the Subcontract for the Project on August 21, 2003.

46.     Hartford breached the Subcontract and the covenant of good faith and fair dealing that is implied in every contract by failing to fulfill its obligations and responsibilities under the Subcontract.

47.     As a result of Hartford's failure fulfill its obligations and responsibilities under the Subcontract in good faith, Skanska was required to take steps to complete Hartford's work, and incurred significant costs for the same.

WHEREFORE, the Plaintiff, Skanska USA Building, Inc., respectfully requests that this Honorable Court enter a judgment in its favor and against Hartford, awarding it damages incurred plus interest, attorneys' fees, and costs, and for such other and further relief that the Court deems just and proper.

## Count IV-Action Against Performance Bond
### (St. Paul)

48.     Skanska incorporates the allegations contained in paragraphs 1 through 26 above as if fully set forth herein.

49.     As a result of Hartford's failures and refusals to perform under the Subcontract, Skanska had to arrange for the completion of Hartford's work, and incurred significant costs in the completion of the same. These costs resulted in excess costs for completing Hartford's work for which Skanska is entitled to recovery against the Performance Bond.

50.    Skanska has complied with all obligations and has taken all actions necessary to enforce its rights under the Performance Bond against St. Paul, and St. Paul has wrongfully denied Skanska's claim.

51.    St. Paul is jointly and severally liable, with Hartford, for the damages incurred by Skanska as a result of Hartford's failure to fully, timely, and properly perform its obligations under the Subcontract.

WHEREFORE, the Plaintiff, Skanska USA Building, Inc., respectfully requests that this Honorable Court enter a judgment in its favor and against Hartford for its contract damages, plus interest, attorneys' fees, and costs; and for such other and further relief that the Court deems just and proper.

## JURY DEMAND

The Plaintiff, Skanska USA Building, Inc., respectfully demands a trial by jury on all issues triable as of right to a jury.

Respectfully submitted,

SKANSKA USA BUILDING, INC.

By its attorney

Stanley A. Martin (BBO#543937)
Brett D. Carroll (BBO #640569)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
Tel: (617) 523-2700
Fax: (617) 523-6850

Dated: November 5, 2004

# 2203995_v1

9

50.  Skanska has complied with all obligations and has taken all actions necessary to enforce its rights under the Performance Bond against St. Paul, and St. Paul has wrongfully denied Skanska's claim.

51.  St. Paul is jointly and severally liable, with Hartford, for the damages incurred by Skanska as a result of Hartford's failure to fully, timely, and properly perform its obligations under the Subcontract.

WHEREFORE, the Plaintiff, Skanska USA Building, Inc., respectfully requests that this Honorable Court enter a judgment in its favor and against Hartford for its contract damages, plus interest, attorneys' fees, and costs; and for such other and further relief that the Court deems just and proper.

## JURY DEMAND

The Plaintiff, Skanska USA Building, Inc., respectfully demands a trial by jury on all issues triable as of right to a jury.

Respectfully submitted,

SKANSKA USA BUILDING, INC.

By its attorney

Stanley A. Martin (BBO#543937)
Brett D. Carroll (BBO #640569)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
Tel: (617) 523-2700
Fax: (617) 523-6850

I HEREBY ATTEST AND CERTIFY ON
DEC. 13, 2004 THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

ASSISTANT CLERK.

Dated: November 4, 2004

# 2203995_v1

9