EX A

# SKANSKA

| | |
|---|---|
| Subcontract No | 551039-417 |
| Subcontract Code | 03500 |
| Subcontract Date | August 21, 2003 |

## Subcontract

04- 12538

Skanska USA Building Inc
270 Congress Street □ Boston, MA 02210
(617) 574-1400 • fax (617) 482-1399

| | |
|---|---|
| SUBCONTRACTOR: THE HARTFORD ROOFING COMPANY, INC. | PROJECT: MASSACHUSETTS BIOLOGIC LABORATORIES |
| ADDRESS: 53 EVANS DRIVE<br>Stoughton, MA 02072 | ADDRESS: MATTAPAN, MA |
| TELEPHONE: 781-341-2299 | OWNER: Massachusetts Biologic Laboratories |
| FACSIMILE: 781-344-1040 | ARCHITECT: CDI Corporation |

THIS SUBCONTRACT, made as of the "Subcontract Date" by and between Skanska USA Building Inc. (the "Contractor") and the above referenced Subcontractor (the "Subcontractor")

WHEREAS, the Contractor has undertaken the construction of the Project in accordance with the provisions of an agreement by and between the Contractor and the Owner

NOW THEREFORE, in consideration of the agreements herein contained, the Contractor and Subcontractor agree as follows

### DEFINITIONS

1    Prime Contract (Article 1)   Agreement between the Owner and the Contractor dated March 21, 2003

2    Subcontract Amount (Article 2)  Five Hundred Sixty Nine Thousand Three Hundred Ninety Nine and 00/100 ($569,399.00)

3.    Bonds (Article 3): ☒ Required        ☐ Not Required

4    Shop Drawing Submission Time (Article 7 2):  2-4 Weeks

5    Work (Article 1)  Furnish all labor, materials and equipment necessary to perform the Roofing Work complete as specified under Bid Package No 417 -- Roofing dated June 17, 2003.

6.    Exhibits
☒    Terms and Conditions Which Constitute Part of This Subcontract dated 10/01/94

| | | |
|---|---|---|
| ☒ | Exhibit A. | General Addendum |
| ☒ | Exhibit B | List of Plans & Specifications |
| ☒ | Exhibit C | Tax Exempt Certificate |
| ☒ | Exhibit D | Application for Payment & Waiver of Lien |
| ☒ | Exhibit E | Sample Insurance Certificate |

| | | |
|---|---|---|
| ☒ | Exhibit F: | Authorized Signatory |
| ☒ | Exhibit G | Skanska Project Specific Safety Plan |
| ☒ | Exhibit H. | Lien Bond |
| ☒ | Exhibit I: | Performance & Payment Bonds |
| ☒ | Exhibit J. | Site Logistics Plan |
| ☒ | Exhibit K | Project Schedule |
| ☒ | Exhibit L | Confidentiality and Nondisclosure Agreement |

Exhibits marked above as being attached to this Subcontract are incorporated by reference herein  By executing this Subcontract, the Subcontractor certifies that it is fully familiar with all of the terms of the Contract Documents, the location of the job site, and the climatic and physical conditions under which the Work is to be performed, and enters into this Subcontract based upon its investigation of all such matters and is not relying on any opinions or representations of the Contractor  The Subcontractor will accomplish all Work undertaken for the Subcontract Amount

| Subcontractor: | Contractor: |
|---|---|
| THE HARTFORD ROOFING COMPANY, INC. | SKANSKA USA BUILDING INC. |
| By: _____ | By _____ |
| (Duly Authorized)            (Date) | (Duly Authorized)            (Date) |
| | Brian Howe, Project Executive |
| (Printed Name)            (Title) | (Printed Name)            (Title) |

October 1, 1992

## TERMS AND CONDITIONS
## WHICH CONSTITUTE A PART OF THIS SUBCONTRACT

*Article 1 - Work to be performed* The Subcontractor agrees to provide, furnish and install all labor, supervision, shop drawings, services, materials, equipment, tools, scaffolding, hoisting, transportation, unloading, handling, permits and insurance and all else required to perform and complete the Work as generally described in the Definitions section of this Subcontract and as further described in the General Addendum attached as Exhibit A, and as required by the Prime Contract. All of the foregoing is to be furnished and performed in accordance with this Subcontract, the Prime Contract, and the documents referred to therein, including the drawings, plans, specifications, addenda and other documents prepared by the Architect as indicated in Exhibit B, all of which are hereinafter collectively referred to as the "Contract Documents." Except as expressly modified herein, the Contract Documents form a part of this Subcontract as fully as if reproduced herein. Terms used in this Subcontract, which are defined in the Contract Documents, shall have the same meanings as designated in the Contract Documents. The Subcontractor agrees to be bound to the Contractor by all the terms of the Contract Documents and further agrees to assume to the Contractor, with respect to the Work, all obligations and responsibilities which the Contractor has to the Owner and will so bind its lower tier subcontractors and material suppliers.

The Subcontractor agrees to perform the Work diligently in accordance with the directions of the Contractor and in compliance with the job schedules of the Contractor. This Subcontract includes all of the Work performed prior to the Subcontract Date and all work to be performed by the Subcontractor for the Project.

*Article 2 - Subcontract Amount* Subject to additions and deductions by Subcontract Revision as defined in Article 6, the Contractor agrees to pay to the Subcontractor the total sum equal to the Subcontract Amount, as set forth in the Definitions section of this Subcontract as full payment for the performance of the Subcontractor's Work, subject to the provisions of this Subcontract. The Subcontract Amount shall be paid in installments pursuant to Article 5.

*Article 3 - Bonds* If required in the Definitions section of this Subcontract, the Subcontractor shall, prior to commencing its work, and as a precondition to the Subcontractor's right to payment, furnish to the Contractor a lien bond, and performance and payment bonds on the Contractor's standard forms (copies attached as Exhibit C) in the penal sum equal to the Subcontract Amount as set forth in the Definitions section of this Subcontract with corporate sureties satisfactory to the Contractor. The Subcontractor's failure to furnish the bonds within ten (10) days of execution by the Subcontractor of this Subcontract shall be grounds for termination pursuant to the provisions of Article 9 of this Subcontract.

*Article 4 - Schedule*

*- Time* Time is of the essence of this Subcontract. The Subcontractor agrees to punctually, and diligently perform all parts of its Work at the time scheduled by the Contractor, which shall be subject to change by the Contractor as deemed necessary or convenient for the overall progress of the Project. The Subcontractor agrees that it will keep itself continually informed of the progress of the Project and will, upon its own initiative, confer with the Contractor so as to plan its Work and coordinate its sequence and required progression with the work of the Contractor and of other subcontractors so as to be able to expeditiously undertake and perform its Work with adequate forces. This Subcontract includes the cost of any overtime or work shifts necessary for completion of the Work of this Subcontract and the Project in accordance with the Contractor's schedules.

*- Schedule Submission* The Subcontractor shall submit in form acceptable to the Contractor, a detailed schedule for the performance of the Work, including dates for delivery of materials and equipment and estimated manpower requirements, all in compliance with scheduling requirements of the Contractor, within fifteen (15) days of receipt of this Subcontract for signature by the Subcontractor. The Subcontractor shall make necessary modifications, revisions, and updates to said schedule as required by the Contractor. All materials or equipment to be furnished by the Subcontractor hereunder shall be pushed in sufficient time to enable the Subcontractor to perform and complete its Work within the time or times required by the Contractor's schedule.

*- Priority of Work* The Contractor shall have the right to decide the time, order and priority in which the various portions of the Work shall be performed and all other matters relative to the timely and orderly conduct of the Work. The Subcontractor shall commence its Work on the site upon notification by the Contractor.

*- Overtime and Shiftwork* Should overtime work or shiftwork be ordered by the Contractor in writing due to no fault of the Subcontractor, payment shall be made to the Subcontractor for the actual premium portion of direct labor cost only for such Work verified on a daily basis by the Contractor's superintendent.

*Delays in the Work* If, in the opinion of the Contractor, the Subcontractor has fallen behind in furnishing the necessary labor, and/or materials to meet construction needs in accordance with the Contractor's current schedule then, upon the direction of the Contractor, the Subcontractor shall, at its own cost (except as provided in Article 4.4), increase its forces or work such overtime as may be required to complete its Work in accordance with the Contractor's schedule. The Contractor's decisions in this matter will be final.

*Article 5 - Payment*

*Application for Payment and Waiver of Lien* The Subcontractor's applications for partial progress payments and waivers of lien, hereinafter called "Requisitions", are to be submitted to the Contractor in accordance with Exhibit D, "Application for Payment and Waiver of Lien", attached hereto. Each Requisition must be supported by such data substantiating the Subcontractor's right to payment as the Contractor, Architect, or Owner may require. Requisitions shall be submitted monthly on a schedule to be furnished to the Subcontractor by the Contractor. Failure to submit such Requisition on a timely basis may result in the postponement of payment thereunder until payment of the next Requisition is due.

*Progress Payments* The Contractor agrees to pay the Subcontractor monthly payments of Ninety percent (90%) of the value of the Work performed as approved by the Architect during the previous month, and for which payment has been received by the Contractor from the Owner. Receipt of progress payments and final payment by the Contractor from the Owner on account of the Work performed by the Subcontractor shall be, in each instance, a condition precedent to the Subcontractor's right to receive such payment. In no event shall the Subcontractor be entitled to any payment until the Contractor provides all Certificates of Insurance required pursuant to Article 12. Partial payments shall constitute advances against the Subcontract Amount until final payment is made. No payment made hereunder shall constitute acceptance of the Work.

*Schedule of Values* Within fifteen (15) days of the date of execution of this Subcontract by the Subcontractor and prior to submission of the first Requisition, and as a precondition to the Subcontractor's right to payment, the Subcontractor shall deliver to the Contractor, in acceptable form, a detailed breakdown of the Subcontract Amount indicating the values of the various parts of the Work for review and approval. Once accepted by the Contractor, subject to the Architect's approval, this Schedule of Values will be used as a basis for payment of the Subcontractor's monthly Requisition.

.4 - *Payment use Restriction*  Funds received by the Subcontractor shall be used only to satisfy the indebtedness owed by the Subcontractor to and on behalf of any person furnishing labor or materials, including taxes and fringe benefits used in performing the Work on this Project. The Subcontractor shall pay all applicable federal, state, and local taxes, licenses, fees, and sales tax imposed upon the labor, material or other items used in performance of the Work.

.5 - *Right of Manner of Payment*  The Contractor reserves the right to make payment by joint check or by direct check to the subcontractor's material suppliers or subcontractors or to any person who has right of action against the Contractor or the Contractor's surety under any law. The Subcontractor agrees that the Contractor reserves the sole right of determination as to what manner payment shall be made. Any payment made by the Contractor pursuant to this Article 5.5 shall be credited against any balance due under this Subcontract.

6 - *Final Payment*  Final payment, constituting the entire unpaid balance of the Subcontract Amount, shall be due after the Subcontractor has fully completed its obligations and after the entire work required by the Prime Contract has been fully completed in conformity with the Contract Documents and has been delivered to and accepted by the Owner, Architect, and Contractor. The Subcontractor shall, prior to and as a condition precedent to receiving final payment hereunder, execute and deliver to the Contractor as-built documents, operation and maintenance manuals, test reports, a guarantee bond for sales and use taxes for out-of-state subcontractors, a final release, in a form satisfactory to the Contractor, of all claims of the subcontractor against the Owner and Contractor, an affidavit listing all lower tier subcontractors and material suppliers and certifying that there are no liens, claims or demands by lower-tier subcontractors, material suppliers, laborers, other employees or third persons, union benefit funds and satisfactory evidence of payment of all applicable sales tax, fines, levies, charges, fees, or other tax from the appropriate municipal authority, final waivers of lien from the Subcontractor's lower tier subcontractors and material suppliers, and any other documentation required by the Contract Documents or the Contractor.

**Article 6 - Changes, Claims and Delays**

1 - *Changes in the Work*  The Contractor has the right to order changes in the Work without invalidating this Subcontract. Such changes may consist of changes in the work as such is defined in the Contract Documents, changes in the means and methods of the Work, changes in the sequence of the Work, or changes in the Work. The Subcontractor agrees, upon receipt of a written order from the Contractor, to change, eliminate from, or add to the Work.

2 - *Proposal Requests*  Prior to commencement of the changed work and no later than seven (7) calendar days after receipt of a request for proposal, the subcontractor shall submit to the Contractor a written cost or credit proposal and schedule impact with substantiation in form acceptable to the Contractor and the Architect. Any attempt to reserve the right to subsequent claims for either additional payment or extension of time not quantified on such proposal is deemed null and void. The Contractor will review such proposal with the Architect and, if required by the Contract Documents, and subject to agreement by the parties, issue a written modification, hereinafter called a "Subcontract Revision" adjusting the Subcontract Amount.

3 - *Subcontract Revisions*  All changes in the Work, except those resulting from the Subcontractor's default in the performance of its obligations hereunder shall be confirmed on a Subcontract Revision signed by the Contractor and the Subcontractor after the ordering thereof by the Contractor pursuant to Article 6.1. A Subcontract Revision constitutes complete agreement regarding compensation to the Subcontractor for both time and money for the changed Work, and constitutes a final settlement of all claims arising out of such Subcontract Revision, including, without limitation, all claims for delays, disruptions, accelerations, and impacts resulting from, caused by, or incident to the work on which such Subcontract Revision is based and any claim that such work, when considered with other work performed, or to be performed by the Subcontractor, constitutes a cardinal change. Subcontract Revisions will be made only to the extent that the Contractor is entitled to such compensation from (or must grant such compensation to) the Owner resulting from Owner or Architect directed changes.

4 - *Changed Work at Time and Material*  The Contractor may order changed work to be performed on a time and materials basis by written notification to the Subcontractor. Upon receipt of such notice, Subcontractor will perform the work and will accept in full payment thereof an amount equal to the direct cost of labor, materials and equipment actually used to perform such changed work, plus mark-up for overhead and profit as allowed in the Contract Documents (15% maximum if not specified) to cover all other indirect costs. Except in an emergency affecting the safety of persons or property, the subcontractor shall perform no work, which may constitute a change in the Work, which might otherwise entitle the Subcontractor to be paid additional compensation unless such work is done pursuant to a written order from the Contractor. The Subcontractor will keep written records of the labor, materials and equipment used to perform such changed work and will hand-deliver daily, said records supporting the costs to be paid to the Subcontractor for such work for written verification of Work done to the Contractor's Superintendent. The Subcontractor waives any right for compensation for work performed on a time and materials basis on any day for which said records are not kept and submitted to Contractor's Superintendent for written verification.

5 - *Claims*  Notice of all claims for additional compensation shall be given to the Contractor in writing within seven (7) calendar days after the occurrence, or such shorter period as may be required in the Contract Documents, of the event giving rise to such claim, or the claim shall be considered abandoned by the Subcontractor. Notwithstanding anything to the contrary herein contained, the Subcontractor shall have no claims for any additional compensation except to the extent that the Contractor shall have such claim under the Contract Documents, and such Contractor's claim and allowance thereof by the Owner shall be a condition precedent to the Subcontractor's claim and allowance thereof by the Contractor.

6 - *Disputes*  If a dispute arises as to whether a written order by the Contractor is a change to the Work, or if the Subcontractor is delayed in the execution or completion of its Work due to reasons not in its control, the Subcontractor must present a claim to the Contractor in writing within seven (7) calendar days of the occurrence of such delay or dispute. By failure to make such claim the Subcontractor waives all rights for additional compensation or time extension. The Subcontractor will keep written records in a form acceptable to the Contractor supporting any claim for additional compensation for which the Subcontractor is entitled to be paid under this Subcontract.

7 - *Continuous Work*  The Subcontractor shall not delay any portion of its Work because of any dispute relating to the interpretation of the drawings, compensation for extra work not agreed upon or other things of like nature. Despite any such claim, the Subcontractor agrees to continue to prosecute the work with all diligence in accordance with the provisions of this Subcontract.

8 - *Delay Extension*  The Subcontractor agrees that it shall have no claim for money damages or additional compensation for delay no matter how caused. For increase in the time required for performance of this Subcontract not due to the fault of the Subcontractor, the Subcontractor's sole and exclusive remedy shall be only such extension of time for performance of the Work as shall be allowed to the Contractor by the Owner. All claims for such extension of time shall be made in the manner and within the time provided for in Article 6.5 and in the Contract Documents.

9 - *Damages Caused by Delays*  If the Subcontractor should default in performance of the Work or should otherwise commit any act which causes delay to the work of the Contractor, the Subcontractor shall be liable for all losses, costs, expenses, liabilities and damages, including consequential damages or liquidated damages, sustained by Contractor, or for which Contractor may be liable to Owner or any other party because of Subcontractor's default.

*Article 7 - Subcontractor's Obligations*

7.1 - *Responsibilities* The Subcontractor shall provide all labor and materials required or incidental to this Subcontract or generally included under this class of Subcontract necessary for the proper execution and completion of the Work. The Subcontractor shall be responsible for taking field dimensions, providing tests, ordering of materials and all other actions as required to meet the Contractor's schedule. The Subcontractor shall also provide all layout, inserts, anchors, cutting, embedments, hangers, sleeves, cutting, drilling, firesafing, packing of sleeves, patching and reinforcing of holes required for the coordination and completion of its Work

7.2 - *Shop Drawings and Submittals* Within ten (10) days after the Subcontractor's receipt of this Subcontract for signature by the Subcontractor, the Subcontractor shall prepare and submit to the Contractor for approval a complete list of all shop drawings, product data and samples required by the Contract Documents, including a schedule of procurement and shop drawing lead time requirements for material and equipment to be furnished and the date by which the Subcontractor proposes to submit each item to the Contractor. The Subcontractor will modify such list as required by the Contractor

The Subcontractor shall prepare, review, approve and promptly submit to the Contractor and in sequence as to cause no delay in the Work or in the work of any other subcontractor, all shop drawings, product data and samples, certificates and similar information required by the Contract Documents and shall furnish all required submissions within the time period designated in the Definitions section of this Subcontract. The designated time period shall commence upon the Subcontractor's receipt of this Subcontract for signature by the Subcontractor. By submitting shop drawings and samples for the Architect's approval, the Subcontractor thereby represents that it has verified availability, determined and coordinated all field and shop measurements, field construction criteria, catalog numbers and similar data, and that it has checked and coordinated each shop drawing and sample with the requirements of the Work and Contract Documents. All submissions shall include manufacturer's latest product literature, installation details, and procedures. Shop drawing approval shall not be deemed to authorize deviations or substitutions from the requirements of the Contract Documents

7.3 - *Coordination* The Subcontractor shall be responsible for coordination with the Contractor and all others whose work may interfere or interface with the Work of this Subcontract and the Prime Contract and shall participate in coordination meetings and in the preparation of coordination drawings and work schedules in areas of potential conflict or insufficient space as deemed by the Architect and/or the Contractor and upon request of the Contractor the Subcontractor shall request from the Contractor, shop drawings, cuts, or other data regarding installation or equipment of others that may affect its Work in sufficient time so as not to delay the Work

7.4 - *Dependent Work, Inconsistencies, Omissions* If the Subcontractor determines that any previous work required to be performed under the Contract Documents, or any portion of the work on which its Work is dependent is defective or not in accordance with the Contract Documents, or if there are any consistencies, omissions or conflicts among the Contract Documents, the Subcontractor shall notify the Contractor in writing within forty-eight (48) hours discovery. If the Subcontractor proceeds without written instructions from the Contractor regarding inconsistencies, omissions, or conflicts, it shall do so its own risk with no right to recovery of damages there from

The Architect shall have the authority to reject Work, which does not conform to the Contract Documents. The Subcontractor shall, within twenty-four (24) hours, or within such additional reasonable time as the Contractor in its discretion may allow, at its own expense, repair or replace all Work or materials rejected by the Architect as defective or failing to conform to the Contract Documents, whether such defect is observed before or after Final Completion of the Work and whether or not fabricated, installed or completed. The Subcontractor shall bear all costs for modifications required in the work of others

7.5 - *Line, Grade and Layout* After the Contractor establishes principal axis lines and grades of the building and site, the Subcontractor shall lay out and responsible for the accuracy of its Work, for the coordination of its Work with others, and for any loss or damage to the Contractor or others by reason of Subcontractor's failure to lay out or perform its Work correctly. The Subcontractor shall exercise prudence so that the actual final conditions and details will result in proper alignment of finished surfaces. The Subcontractor shall guarantee the proper fit of any material furnished under this Subcontract

7.6 - *Authorized Representative* The Subcontractor shall have a responsible foreman or superintendent in charge of the Work, who will be on the site at all times during the performance of the Work under this Subcontract. This person shall be the Subcontractor's On-site Authorized Representative. The Subcontractor shall have a representative who is authorized to act on behalf of the Subcontractor present at all job meetings called by the Contractor

7.7 - *Provision For Inspection* The Subcontractor shall notify the Contractor when portions of the Work are ready for inspection. The Subcontractor shall at times furnish the Contractor, Owner, and Architect and its representatives adequate facilities for inspecting materials at the site or any place where materials made under this Subcontract may be in the course of preparation, process, manufacture or treatment. The Subcontractor shall furnish to the Contractor, such detail and as often as required, full reports of the progress of the Subcontractor's Work irrespective of the location of such Work.

7.8 - *Daily Manning Report* The Subcontractor shall provide the Contractor's superintendent with a daily report by 9:00 a.m. each workday, in form plable to the Contractor, indicating number of men, craft, and equipment to be used that day

7.9 - *Cleanup* The Subcontractor shall follow the Contractor's cleanup directions. The Subcontractor shall, at its own expense, keep the premises free from safe conditions at all times; regularly remove the accumulation of waste materials and rubbish caused by its operations from the site, broom clean each its area prior to discontinuing work in that area; thoroughly clean all surfaces, fixtures, equipment, etc., when directed by the Contractor, and remove all waste materials and rubbish from and about the Project as well as all its tools, construction equipment, temporary structures, machinery and surplus materials upon the completion of the Work. The Contractor shall have the right, but shall have no obligation to, direct the Subcontractor's clean up duties

If Subcontractor fails to commence cleanup duties within twenty-four (24) hours after written notification to its On-site Authorized Representative of compliance, the Contractor may implement such cleanup measures without further notice and deduct the cost thereof from any amounts due or to come due the Subcontractor

7.10 - *Unidentifiable Debris* After twenty-four (24) hours written notice to all parties concerned, the Contractor may institute a program to clean up and remove the accumulation of unidentifiable rubbish and to sweep the floors. The necessary labor and equipment for this program will be provided by the Contractor and charged at cost on a pro-rata basis to each responsible Subcontractor as determined by the Contractor. The clean up crew will be clearly identified and charges will be invoiced monthly

7.11 - *Safety* The Subcontractor shall establish a safety program implementing measures, policies, and standards conforming to those required or recommended by authorities having jurisdiction and by the Contractor and the Owner, including requirements imposed by the Contract Documents and Contractor's safety program. The Subcontractor shall comply with the reasonable recommendations of insurance companies having an interest in the Work. The Subcontractor shall, immediately upon notification from the Contractor, take whatever steps are necessary to correct any unsafe conditions. Subcontractor's failure to notify the Subcontractor of any unsafe practices shall not relieve the Subcontractor of its responsibility. The prevention of its Work on or in the vicinity of its Work is the Subcontractor's responsibility. The Subcontractor shall furnish the Contractor with copies of accident

24) hours of any accident

2.10.1 - *Safe Workplace* The Subcontractor shall provide a safe workplace for its workmen, material suppliers, lower-tier contractors, and consultants engaged to perform any of the Work, both on-site and at any off-site location. The Subcontractor is solely responsible for the safety of its workers, material suppliers, lower-tier contractors, and consultants

2.10.2 - *OSHA/Right-To-Know* The Subcontractor shall comply with all provisions of the Contract Work Hours and Safety Standards Act, and the regulations adopted thereunder, Right to Know Law, OSHA regulations and all safety requirements of all applicable laws, ordinances, regulations, rules and orders of the locality in which the Work is done. The Subcontractor shall replace all toeboards, handrails, guardrails, safety protection, netting, etc. in accordance with OSHA requirements, which are removed or made loose by the Subcontractor in the course of performing its Work

2.10.3 - *Material Safety Data Sheets* The Subcontractor will maintain at the jobsite Material Safety Data Sheets (MSDS) and will also provide to the Contractor's Superintendent a copy of such data prior to the time of material delivery. The Subcontractor shall include the training of its own staff and other workers on the premises who may be exposed to the Subcontractor's hazardous materials. The Subcontractor shall provide adequate safety equipment for its employees for the performance of its Work

2.10.4 - *Hazardous Material* The Subcontractor agrees that it shall, at its own expense, use, store and/or transport any and all materials, substances and waste which are defined by any governmental body as hazardous, including, without limitation, hydrocarbon based products, asbestos, and asbestos based products (collectively referred to herein as "hazardous substances), in strict compliance with all applicable rules and regulations for use, storage and/or transportation of such materials. Furthermore, the Subcontractor shall not cause any release of hazardous substances into, or contamination of, the environment, including the soil, the atmosphere, any watercourse, or ground water, except in accordance with applicable laws. The Subcontractor shall lawfully dispose of all hazardous substances brought onto the site or generated by the Subcontractor at the site, and shall indemnify the Contractor and the Owner in accordance with Article 11 for any failure of the Subcontractor to conform with any provision of this Article

2.11 - *Protection Of The Work* The Subcontractor specifically agrees that it is responsible for its Work until acceptance of the work by the Owner. The Subcontractor will make good or replace at no expense to the Contractor or Owner, any damage to its Work that occurs prior to final acceptance. The Subcontractor shall take necessary precautions to properly protect the Work and the work of other subcontractors from damage caused by the Subcontractor's operations. Should the Subcontractor cause damage to the Work or property of the Owner, the Contractor, or other subcontractors, the Subcontractor shall promptly remedy such damage to the satisfaction of the Contractor

2.12 - *Permits, Fees And Licenses* The Subcontractor shall give adequate notice as required to governmental authorities pertaining to the Work, post any required bonds and secure and pay for all permits, licenses, inspections, assessments, and fees as well as sales, consumer, use, and all other applicable taxes necessary to complete the Work in accordance with the Contract Documents. The Subcontractor shall immediately notify the Contractor of any deficiency reported by inspectional authorities, or denial of applicable permits, licenses, certificates of testing, inspection, and occupancy. Upon request of the Contractor, the Subcontractor shall present applicable documentation to the Contractor

2.13 - *Assignment by the Subcontractor* The Subcontractor shall not sublet or assign neither the whole nor any part of the Work without prior written approval of the Contractor. The Subcontractor acknowledges and agrees that neither this Subcontract nor the Work nor any part thereof nor the Subcontractor's right to receive payment hereunder shall be assigned nor sublet without the prior written consent of the Contractor, and any attempt to do so shall constitute an abandonment by the Subcontractor of this Subcontract and a cause for termination pursuant to Article 9.3 hereof. Any such agreement shall be void and the assignee shall acquire no rights in this Subcontract or to any payment due hereunder. No sublet agreement by the Subcontractor shall under any circumstances operate to relieve the Subcontractor of its obligations hereunder

2.14 - *Compliance With Laws* The Subcontractor agrees to be bound by, and at its own cost, to comply with all federal, state and local laws, building codes, ordinances and regulations, hereinafter collectively referred to as "laws", applicable to the Work including, but not limited to, equal employment opportunity, minority business enterprise, women's business enterprise, disadvantaged business enterprise, safety, prevailing wage requirements, and all other laws with which the Contractor must comply according to the Contract Documents. The Subcontractor shall promptly notify the Contractor in writing of any variance between the Contract Documents and applicable laws, statutes, ordinances, regulations, and building codes

## Article 8 - Subcontract Provisions

3.1 - *Independent Contractor* The Contractor has engaged the Subcontractor as an independent contractor. Wherever in the Contract Documents reference is made to the Contractor, and the Work or specifications therein pertains to Subcontractor's Work or type of work, then such work or specification shall be interpreted to apply to the Subcontractor instead of the Contractor

3.2 - *Workmanship and Materials* Every part of the Work shall be executed in accordance with the Contract Documents in a sound, good and workmanlike manner. All installation and materials used in the Work shall be furnished in ample quantities to facilitate the proper and expeditious execution of the Work.

3.3 - *Materials and Work Furnished by Others* In the event the scope of Work includes installation of materials or equipment furnished by others or Work to be performed in areas to be constructed or prepared by others, it shall be the responsibility of the Subcontractor to examine and accept, at the time of delivery or first access, the items or areas so provided and thereupon handle, store, install and protect the items or such areas with such skill and care as to insure acceptance of its Work. Use of such items or commencement of work by the Subcontractor in such areas shall be deemed to constitute acceptance thereof by the Subcontractor. Loss or damage due to the acts or negligence of the Subcontractor shall be borne by the Subcontractor

3.4 - *Substitutions/Equals* In the event that the Architect approves a substitution or equal, the Subcontractor shall reimburse the Contractor any additional cost that the Contractor incurs as a result of such substitution or equal

3.5 - *Use of Contractor's Equipment* In the event that the Subcontractor, by hourly rental rate, loan, or otherwise makes use of any of the Contractor's hoisting facilities, scaffolding, or other equipment the Subcontractor agrees to accept such equipment "as is". Such use shall be at the sole risk of the Subcontractor

3.6 - *Privity* The Subcontractor agrees that until Final Completion of the Project, it shall not perform any work directly for the Owner or any tenants thereof, or deal directly with the Owner's representatives or other subcontractors in connection with the Project unless otherwise directed in writing by the Contractor. All additional work for this Project performed by the Subcontractor shall be processed and administrated exclusively by the Contractor and shall be provided under this Subcontract as may be amended by Subcontract Revision pursuant to Article 6.3

7 - *Records*  Payroll records shall contain the name, address, social security number, hourly wage, daily and weekly number of hours worked, gross wages earned, deductions made, and actual wages paid  The Subcontractor and all lower tier subcontractors shall, on a weekly basis, provide certified copies of such payroll records to the Contractor in form and manner acceptable to the Contractor  Such records shall set forth the total number of workers employed on the Project as well as the total number of minority and female workers and apprentices totaled, and itemized by trade classification and any other information required by the Contract Documents  With respect to claims, changes, and Subcontract Revisions, proof of payment of wages and shall be kept on a weekly basis and shall be provided to the Contractor on request  The Subcontractor shall keep separate and accurate records of accounts with respect to all costs for which the Subcontractor desires to be reimbursed and shall, upon request by the Contractor, make such records, invoices and other information pertaining to such costs available for inspection by the Owner and Contractor, or other designee  All of the foregoing records shall be maintained for a minimum period of six (6) years or longer as may be required by law after acceptance of the work and in such a manner as to permit all costs to be specifically identified  Copies of all reports regarding the Subcontractor's Work at the jobsite which are provided to a municipal, state or federal agency, commission or authority shall also be provided to the Contractor

8 - *Warranty*  The Subcontractor warrants that all materials and equipment furnished under this Subcontract shall be new unless otherwise specified in the Contract Documents and that all Work shall be of good quality, free from fault and other defects and in conformance with the Contract Documents  The Subcontractor shall obtain and preserve, for the benefit of the Owner, manufacturer's warranties on materials, fixtures, and equipment incorporated into the Work  The Subcontractor shall execute a written guaranty and warranty applicable to all phases of the Work in accordance with this Subcontract and all other applicable provisions in the Contract Documents pertaining to warranties and guarantees

The Work of this Subcontractor shall be in full compliance with the Contract Documents and with written recommendations of recognized agencies and manufacturers, so as not to void the manufacturers' warranties or guarantees  Warranties shall commence as of the date of the Final Acceptance of the Work and shall continue for a period of no less than one year unless a longer period is otherwise provided for in the Contract Documents or unless the manufacturer provides a longer warranty  The Subcontractor shall immediately upon written notification from the Contractor or the Owner, perform any and all remedial work required during any warranty or guarantee period covering the Work of this Subcontract  All guarantees and warranties shall be enforceable directly by the Owner if the Owner so elects

9 - *Mechanics Liens*  The Subcontractor shall use its best efforts to prevent any laborers, material suppliers, mechanics, or other similar liens from being filed or otherwise imposed on any part of the Work or the Project  If any laborer's, material supplier's, mechanic's or other similar lien or claim is filed or otherwise imposed by the Subcontractor, or any lower tier subcontractor, or material supplier in connection with the Work, the Subcontractor shall either use such lien to be released and discharged, or shall file a bond in lieu thereof within twenty-four (24) hours of receipt of written notice thereof  If the Subcontractor fails to either release and discharge or bond over any such lien or claim, the Contractor may, at Subcontractor's expense, do so  Any costs so incurred by the Contractor, in doing so, may be deducted from any amounts due, or which may become due from the Contractor to the Subcontractor  The Subcontractor's obligations under this Article 8.9 shall survive termination of this Subcontract and completion of the Work  The Subcontractor warrants and guarantees that title to all work, materials, and equipment covered by a Requisition shall vest with the Owner before the receipt of payment by the Subcontractor, free and clear of all liens, claims, security interests or encumbrances (hereinafter referred to as "liens"), and that no Work, materials or equipment covered by a Requisition shall have been acquired by the Subcontractor or any other person performing the Work at the site or furnishing the materials and equipment for the Project, subject to an agreement under which an interest therein or lien thereon is retained by the seller or otherwise imposed by the Subcontractor or such other person

10 - *Discipline*  The Subcontractor shall at all times enforce strict discipline and good order among its employees and shall not employ on the Work any unfit person or anyone not skilled in the task assigned  The Subcontractor agrees to remove from the Work any workers or supervisor whose employment reason is objected to in writing by the Contractor

11 - *Storage of Materials/Site Access*  The Subcontractor shall confine its operations at the site to areas permitted by law, ordinance, permit, and the Contract Documents  All such areas shall be subject to the prior approval of the Contractor  All applicable storage and operations locations, both on and off site, shall be subject to inspection, at any reasonable time by representatives of the Owner, and Contractor  The Subcontractor shall assume the risk of loss or damage to any materials, equipment, traders or tools stored on-site and the Contractor shall have no liability to the Subcontractor for the security of property, tools, equipment, materials or work the Subcontractor stored on or off-site

Access to the site by vehicles of the Subcontractor or its material suppliers over state, city or town roads or parkways, or private roads will be in accordance with all rules, regulations and requirements of any agency having jurisdiction, compliance with which shall be the responsibility of the Subcontractor  The contractor includes payment of all freight, demurrage, and trucking charges  All deliveries shall be scheduled in advance with the Contractor

- *Ordering Materials*  The Subcontractor shall submit to the Contractor, upon request, copies of orders placed for the various materials required for the Project  Order copies shall indicate type of material, quantity, material suppliers name, address, delivery schedule, and other such pertinent information that may be requested by the Contractor  The Subcontractor shall be required to submit to the Contractor a monthly material status report, or as often if required by the Contractor, as a prerequisite to the Subcontractor's receipt of its monthly progress payment  The Subcontractor shall notify Contractor immediately upon learning of a change of status of any material, equipment, or supplies  The Subcontractor, having provided such information however, is not relieved of its responsibility to provide material when they are needed to insure compliance with the Contractor's schedule

- *Signage*  The Subcontractor shall not, without the Contractor's prior written consent, install or maintain any sign, trademark or advertisement or identification symbol in or about the Project  The Contractor shall have the right, at the Subcontractor's expense and without notice to the Contractor, to remove any sign, trademark, advertisement, or other identification symbol installed in violation of this Article

- *Communication*  All communication relating to the Work shall be through the Contractor  In no case shall communication be made directly with the Owner, the Architect, or the Engineer without prior written permission of the Contractor  All Project related public statements and releases, including the issuance of photographs, renderings, and the like for all media use, shall be considered proprietary and are subject to the prior written approval of the Contractor  In the event of a serious accident, the Subcontractor agrees not to communicate with any outside party in regard to such accident except as led by the Contractor

- *Temporary Services*  The Subcontractor shall furnish all temporary services and/or facilities necessary to perform its Work, except that the Contractor will supply temporary electricity at minimal wattage, single phase, for small electric hand tools and basic construction temporary lighting only  Specific power requirements for welding or other operations are to be provided by the Subcontractor

*e 9 - Recourse By Contractor*

*Notice to Cure*  If the Subcontractor, in the opinion of the Contractor, at any time refuses or neglects to supply enough properly skilled workers and material, or fails to properly and diligently prosecute the Work, or disregards the instructions of the Contractor, or fails to make prompt payment

health and welfare, pension, vacation, apprenticeship or other employee benefit program or trust or is otherwise guilty of a breach of a provision of this Subcontract, and fails within forty-eight (48) hours after receipt of written notice to commence and continue satisfactory correction of such default with diligence and promptness, then the Contractor, without prejudice to any other rights or remedies, shall have the right to any or all of the following remedies: (1) supply such number of workers and quantity of materials, equipment and other facilities as the Contractor deems necessary for the completion of the Work, or any part thereof which the Subcontractor has failed to complete or perform, and charge the cost thereof to the Subcontractor, who shall be liable for the payment of same including reasonable overhead, profit and attorneys' fees incurred as a result of the Contractor performing the Subcontractor's obligations because of the Subcontractor's failure of performance, (2) contract with one or more additional subcontractors to perform such part of the Work as the Contractor shall determine will provide the most expeditious completion of the total Work and charge the cost thereof to the Subcontractor, (3) take possession of any tools, equipment, implements, appliances and materials furnished by or belonging to the Subcontractor for the performance of the Work in order to implement the remedies set forth in clauses (1) and (2) above without compensation to the Subcontractor for such use, (4) accept any defective work or materials and reduce the Subcontract Amount accordingly, (5) make any payments on the Subcontractor's account to satisfy the Subcontractor's obligations relating to the Work for labor, materials, equipment, insurance or other items, or Subcontractor's failure to comply with any applicable laws, (6) withhold payment of any moneys due the Subcontractor pending corrective action to the extent required by and to the satisfaction of the Contractor. In the event of an emergency affecting the safety of persons or property, the Contractor may proceed as above without notice.

.2 - *Grounds for Withholding Payment*. The Contractor may withhold, or on account of subsequently discovered evidence, nullify the whole or part of any payment to the extent necessary to protect the Contractor from loss, including costs and attorney's fees, on account of any of the following: (1) defective work not remedied, (2) third-party claims or liens filed (including, without limitation, the filing of a Notice of Contract by any third party), (3) failure of the subcontractor to make payments properly to its lower-tier contractors or for material, labor or fringe benefits, (4) damage to the Contractor, Owner, another subcontractor or a separate contractor engaged by the Owner, (5) penalties or fines assessed against the Contractor or the Subcontractor for failure of the subcontractor to comply with state, federal or local laws and regulations, or as otherwise provided in the Subcontract, (6) failure to carry out the Work in accordance with the Contract Documents or this Subcontract. When the above matters are rectified, such amounts as then due and owing shall be paid or edited to Subcontractor.

3 - *Termination for Default*. If the Subcontractor fails to commence and satisfactorily continue correction of a default within forty-eight (48) hours after receipt by the Subcontractor of the notice issued under Article 9.1, then the Contractor may terminate the Subcontractor's right to perform under this Subcontract and may use any materials, implements, equipment, appliances or tools furnished by or belonging to the Subcontractor to complete the Subcontractor's Work without any further compensation to the Subcontractor for such use. The Contractor also may furnish materials and equipment, and/or employ such workers or subcontractors, as the Contractor deems necessary to maintain the orderly progress of the work.

such case, the Subcontractor shall be entitled to no further payment until the balance of the Work has been completed. Costs incurred by the Contractor performing the Subcontractor's Work, plus actual attorney's fees as provided above, shall be deducted from any payment due or to become due to the Subcontractor. The Subcontractor shall be liable for the payment of any amount by which such expenses may exceed the unpaid balance of the Subcontract amount.

the event that the Subcontractor has provided a performance bond to secure its obligations under this Subcontract, the Contractor may, notwithstanding anything to the contrary contained in the bond, exercise its rights under this Article 9, without further notice to the surety, and without relieving the surety of any of its obligations under the bond, if either the surety fails, within forty-eight (48) hours of its receipt of notice of the default of the Subcontractor, to give written notice to the Contractor specifying the actions which it desires to take in curing such default, or if the surety timely gives such notice and such actions are unacceptable to the Contractor. Without limiting the foregoing, in the event that the surety desires to engage another subcontractor or other personnel to cure such default, any such subcontractor or personnel must be acceptable to the Contractor. In the event that there shall be a conflict between provision of a surety bond and this Subcontract, then this Subcontract shall govern.

- *Termination Absent Cure*. Upon the appointment of a receiver for the Subcontractor or upon the Subcontractor making an assignment for the benefit creditors or if the Subcontractor seeks protection under the Bankruptcy Code or commits any other act of insolvency or, if an order for relief is entered er the Bankruptcy Code with respect to the Subcontractor, the Contractor may terminate this Subcontract upon giving forty-eight (48) hours written ce to the Subcontractor, its trustee and its surety, if any, unless the Subcontractor, the surety, or the trustee (1) promptly cures all defaults, (2) provides quate assurance of future performance, (3) compensates the Contractor for actual pecuniary loss resulting from such defaults; and (4) assumes all the gations of the Subcontractor.

- *Interim Remedies*. If the Subcontractor is not performing in accordance with the schedule of work at the time of entering an order for relief, or at any quent time, the Contractor, while awaiting the decision of the Subcontractor or its trustee to reject or to accept the Subcontract and provide adequate ance of its ability to perform hereunder, may avail itself of such remedies under this Article as are reasonably necessary to maintain the schedule of

ractor may offset against any sums due or to become due to the Subcontractor, all costs incurred in pursuing any of the remedies provided hereunder, ding, but not limited to, reasonable overhead, profit and attorneys' fees incurred as a result of Subcontractor's non-performance. Subcontractor shall ble for the payment of any amount by which such expense may exceed the unpaid balance of the Subcontract Amount.

*Termination for Convenience*. The Contractor may at any time and for any reason terminate the Subcontractor's services and Work at the Contractor's nience. Cancellation shall be by written notice pursuant to Article 14.6. Upon receipt of such notice, the Subcontractor shall, unless the notice directs wise, immediately discontinue the Work and placing of orders for materials, facilities and supplies in connection with the performance of the ntract, and shall, if requested, make its best effort to procure cancellation of all existing orders or contracts upon terms satisfactory to the Contractor, he option of the Contractor, give the Contractor the right to assume those obligations directly, including all benefits to be derived therefrom. The ntractor shall thereafter do only such work as may be necessary to preserve and protect the Work already in progress and to protect material and nent on the job site or in transit thereto.

such termination, the Subcontractor shall be entitled to payment in accordance with Article 2 only for the cost of the Work completed in conformity te Subcontract. There shall be deducted from such sums as provided in this subparagraph the amount of any payments made to the Subcontractor o the date of the termination of the Subcontract. The Subcontractor shall not be entitled to any claim or claim of lien against the Contractor or the for any additional compensation or damages in the event of such termination and payment. In no event shall the Subcontractor receive more than the value of its accepted Work or the Subcontract Amount, whichever is lower.

9.6 - *Cancellation of Subcontract* The Subcontract shall become null and void and of no effect in the event that (1) The Architect or the Owner objects to the Subcontractor, or (2) The Contractor shall not be awarded the Prime Contract.

*Article 10 - Labor Relations*

10.1 - *Harmonious Labor* The Subcontractor agrees to procure materials, equipment, labor and supplies from such sources and to perform all Work on the Project with labor, material suppliers and lower-tier subcontractors that will work harmoniously with other subcontractors, Owner's employees or employees of other contractors employed by the Owner and with other elements of labor involved in the construction of the Project.

10.2 - *Work Assignments* The Subcontractor shall, in making any work assignment, avoid jurisdictional disputes. The Subcontractor agrees that all disputes concerning the jurisdiction of trades shall be adjusted in accordance with any plan for the settlement of jurisdictional disputes, which may be in effect either nationally or in the locality in which the Work is being performed. The Subcontractor shall be bound by, and shall abide by, all such adjustments and settlements of jurisdictional disputes, whether or not the Subcontractor is signatory to the agreement establishing the Impartial Jurisdictional Disputes Board and/or its successors. The Subcontractor agrees that in the event it further subcontracts any part of the Work covered by this Subcontract, such additional subcontractors shall be required, as part of its sub-subcontract, to settle all jurisdictional disputes on the Project in accordance with the procedures set forth above.

10.3 - *Labor Disputes* In the event any labor dispute or difficulty is created by or results from the operations of the Subcontractor in connection with the Work, thereby causing or resulting in a delay, interference or stoppage of any portion of the work of the Contractor or any other subcontractor, and such delay or interruption continues in the aggregate for forty-eight (48) hours, the Subcontractor will be considered to be in default and the Contractor may terminate this Subcontract pursuant to this Article 10.3 and/or the Contractor shall have all of the rights and remedies provided in Article 9.1. The Subcontractor expressly agrees not to participate in or accede to any stoppage in the Work, which may result from any labor dispute.

10.4 - *Fringe Benefits* The Subcontractor agrees that it will make timely payments to fringe benefit funds, if any, and will, upon request, provide the Contractor with necessary proof that payment of said fringe benefits for all hours worked on this project have been made.

*Article 11 - Indemnification*

11.1 - *Subcontractor's Performance* To the maximum extent permitted by law, the Subcontractor shall indemnify, defend with counsel acceptable to Owner and Contractor, and save harmless the Owner and the Contractor, including their officers, agents, employees, affiliates, partners, parents and subsidiaries, and each of them, of and from any and all claims, demands, causes of action, damages, costs, expenses, attorneys' fees, losses or liability, in law or in equity, of every kind and nature whatsoever, hereinafter referred to as "Claims", arising out of or in connection with the Subcontractor's operations performed or to be performed under this Subcontract including, but not limited to any of the following: (1) Personal injury, including, but not limited to, bodily injury, sickness or disease, or death to persons, including, but not limited to, any employees or agents of the Subcontractor, Owner, Contractor, or any other subcontractor or damage to property of anyone (including loss of use thereof), caused or alleged to be caused in whole or in part by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by the Subcontractor or anyone for whose acts the subcontractor may be liable regardless of whether such personal injury or damage is caused in part by a party indemnified hereunder, (2) Penalties or fines imposed because of the violation of any law, order, citation, code, rule, regulation, standard, ordinance or statute, caused by the action or inaction of the Subcontractor, (3) Infringement of any patent rights which may be brought against the Contractor or Owner arising out of Work, (4) Claims and liens for labor performed or materials used or furnished to be used on the Project, all incidental or consequential damages and other costs incurred resulting to the Contractor or Owner from such claims or liens, including, without limitation, any Claims arising from a breach of Subcontractor's obligations under Article 8.9, (5) The Subcontractor's failure to fulfill the covenants set forth in Article 10, Labor Relations; (6) Failure of the Subcontractor's obligations under the provisions of Article 12, Insurance, (7) Any obligation or indemnity the Subcontractor has to Contractor or Owner (including, without limitation, any obligation of this Subcontractor under Article 7.10, Safety); (8) Any violation or infraction by the Subcontractor of any law, order, code, citation, rule, regulation, standard, ordinance or statute in any way relating to hazardous material or the occupational health or safety of employees, including, but not limited to, the use of Contractor's or other's equipment, hoist, elevators, or scaffolds.

This indemnification obligation shall not be limited in any way by any limitation on the amount or type of damages, compensation, or benefits payable by or for the Subcontractor's Commercial General Liability Insurance, Auto Liability Insurance or Workers' Compensation Insurance, Disability Benefit Insurance or other employee benefit insurance. The Subcontractor shall provide in the policy of commercial general liability insurance required by this subcontract agreement, contractual indemnity coverage that insures the Subcontractor's liability under the provisions of this Article.

The indemnification provisions above shall extend to Claims occurring after the Work of this Subcontract is completed as well as while the Work is ongoing. The Subcontractor, however, shall not be obligated under this Subcontract to indemnify the Owner or the Contractor for Claims arising from the sole negligence or willful misconduct of the Owner or the Contractor or their agents, employees or independent contractors who are directly responsible to Owner or the Contractor, or for defects in design furnished by such persons. Any sum or sums chargeable to the Subcontractor under this provision or other provision of this Subcontract may, at the election of the Contractor, be deducted from any payments otherwise due or to become due the Subcontractor under this or any other subcontract between the Contractor and the Subcontractor.

11.2 The Subcontractor shall: (1) At the Subcontractor's own cost, expense and risk, defend all Claims as defined in Article 11 that may be brought or instituted by third persons, including, but not limited to, governmental, state, or local agencies, or employees of the Subcontractor against the Contractor or Owner or their agents or employees or any of them; (2) Pay and satisfy any judgment or decree that may be rendered against the Contractor or the Owner or their agents or employees, or any of them arising out of any such Claim, and (3) Reimburse the Contractor or the Owner or their agents or employees for any and all legal expense incurred by any of them in connection herewith or in enforcing the indemnity granted in this Article 11.

11.3 - *Risk of Loss* All Work covered by this Subcontract performed at the Project or in preparing or delivering materials or equipment, or any or all of which, to the Project shall be at the risk of the Subcontractor exclusively until the completed work is accepted by the Contractor.

11.4 - *No Limitation of Liability* The indemnities set forth in this Section 11 shall not be limited by the insurance requirements set forth in Article 12.

*Article 12 - Insurance*

12.1 - *Subcontractor's Insurance* Prior to start of the Work, the Subcontractor shall procure policies of insurance for the Subcontractor's Work and maintain in force, with insurance companies acceptable to the Contractor and licensed to operate in the state where the Work shall be performed, and all insurance required of the Contractor under the Contract Documents including Workers' Compensation, Employer's Liability, Automobile Liability, and Commercial General Liability insurance on an occurrence basis, with limits of liability not less than set forth in the sample Certificate of Insurance attached hereto as Exhibit E; furthermore: (1) The Contractor, Owner and other parties as designated in the Contract Documents shall be named as additional insureds on each of these policies except for Workers' Compensation, (2) The policy of Commercial General Liability shall include contractual indemnity insurance covering the Subcontractor's insurable obligations under Article 11 hereof, (3) the Subcontractor shall carry completed operations liability

Insurance for at least two (2) years after receipt of its Final Payment.

The insurance required hereunder shall be maintained in an insurance company or companies which are A- rated, Class VIII or better in Best's Key Rating Guide and authorized to transact business in every state in which the Work is or is to be performed. Each insurance policy shall be endorsed to indicate that it is primary as respects the Contractor and the Owner, not contributory with any other insurance available to the Contractor or the Owner and not subject to reduction of coverage as to the Owner or the Contractor by reason of any claim asserted against the Subcontractor other than in connection with the Work.

*2.2 - Certificate of Insurance* Evidence of insurance shall be furnished by the Subcontractor to the Contractor prior to the start of any Work at the site on a Certificate of Insurance in conformance with the sample form attached hereto as Exhibit E. In a Certificate of Insurance the phrases "endeavor to" and "but failure to mail such notice shall impose no obligation or liability of any kind upon the company, its agents or representatives" are not acceptable.

*2.3 - Cancellation, Renewal or Modification* All insurance policies shall contain a provision that the coverage afforded thereunder shall not be canceled or lapsed, nor restrictive modifications added, until at least forty-five (45) days prior written notice, by certified mail, has been issued to the certificate holder.

*2.4 - Property Insurance by Subcontractor* The Subcontractor shall have sole responsibility to place property insurance coverage for tools and equipment owned, leased, or provided by the Subcontractor or its employees. The Subcontractor shall procure and maintain at its own expense property and equipment insurance for portions of the Work stored off the Project or in transit, when such portions of the Work are to be included in a Requisition.

*2.5 - Waiver of Rights* The Contractor and Subcontractor waive all rights of subrogation against each other for loss or damage to property to the extent the loss is covered by Builder's Risk or any other property or equipment insurance which the Owner is required to carry pursuant to the Contract Documents, except such rights as they may have to the proceeds of such insurance.

## Article 13 - Dispute Resolution - Arbitration

*13.1 - Prime Contract* The Contractor and Subcontractor shall not be obligated to resolve disputes arising under this Subcontract by arbitration provision, unless the Prime Contract has an arbitration provision, and a particular dispute between the Contractor and the Subcontractor involves issues of fact or law which the Contractor is required to arbitrate under the terms of the Prime Contract. In the event that arbitration is required under the terms of this provision, the same arbitrator(s) utilized to resolve the dispute between the Owner and Contractor shall be utilized to resolve the dispute under this provision. In the event the Owner is not involved in the dispute, it shall not be party to the selection of arbitrators.

*13.2 - Defense Preparation* In connection with any claims pursuant to Article 6, the Contractor agrees to allow the Subcontractor to use the Contractor's name in prosecuting claims pursuant to the provisions of the Contract Documents, as provided by law for the prosecution of such claims. The Contractor further agrees, upon reasonable notice as provided in the Contract Documents, to include any claims of the Subcontractor in any action brought by the Contractor against the Owner. In the event that the Contractor and Owner or others arbitrate or take other legal action regarding matters relating to this Subcontract, the Subcontractor shall be required, at the request of the Contractor, to prepare and present the Contractor's case, at Subcontractor's expense, to the extent the proceedings relate to this Subcontract.

*13.3 - Resolution Binding* Should the Contractor enter into an arbitration or other proceeding with the Owner or others with regard to issues relating to this Subcontract, the Subcontractor shall be bound by the result of any proceedings to the same degree as the Contractor. The Subcontractor agrees to become a party to and be bound by any legal proceedings involving the Contractor, the Architect, or the Owner to the extent that such proceedings involve any of the rights or obligations of the Subcontractor.

## Article 14 - Contract Interpretation

*14.1 - Contract Documents - Correlation* The Subcontractor shall perform the Work in strict compliance with the Contract Documents. The Contract Documents are complementary and what is required by one shall be binding as if required by all. Items omitted from the Contract Documents shall be included within the scope of the Work if they are required by applicable law, regulation, or code or if they are reasonably inferable from the Contract Documents. In the event of any conflict between the Contract Documents and this Subcontract or any conflict between any provisions of this Subcontract, Subcontractor shall satisfy the requirements of the most stringent obligation unless specifically directed otherwise by the Contractor. Nothing in the Contract Documents shall be construed to create a contractual relationship between persons or entities other than the Contractor and Subcontractor. No third party including, without limitation, the Owner, shall be deemed to be a beneficiary of the Contractor's obligations under this Subcontract (whether such obligations are expressed or implied).

*14.2 - Jurisdiction* The validity, interpretation, and performance of this Subcontract shall be governed by the laws of the Commonwealth of Massachusetts. Subcontractor hereby agrees to accept jurisdiction of and service of process in the Commonwealth of Massachusetts. Any action or proceeding under or in connection with this Subcontract shall be brought in Suffolk County, Massachusetts.

*14.3 - Waiver* The partial or complete invalidity of any one or more provisions of this Subcontract shall not affect the validity or continuing force and effect of any other provision. The failure of either party hereto to insist, in any one or more instances, upon the performance of any of the terms, covenants, conditions of this Subcontract, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right as respects to further performance.

*14.4 - Separability* The duties and obligations imposed by the Contract Documents and the rights and remedies available thereunder shall be in addition and not in limitation of any duties, obligations, rights, and remedies otherwise imposed or available by law. Should any provision of this Subcontract be held as a matter of law, such invalidity shall affect only such provision and shall not invalidate or affect remaining provisions of this Subcontract.

*14.5 - Successors and Assigns* The Contractor and the Subcontractor each binds itself, its partners, successors, assigns and legal representatives to the other hereto.

*14.6 - Written Notice* All notices shall be in writing addressed to the parties at the addresses indicated in this Subcontract unless subsequently changed in conformance with this notice provision and shall be considered as delivered on the third (3rd) business day after the date of mailing if sent certified mail, or received in all other cases, including telegram, facsimile, other printed electronic medium, personal delivery, or recognized overnight delivery service.

*14.7 - Titles* The titles given to the Articles of this Subcontract are for ease of reference only and shall not be relied upon or cited for any other purpose.

*14.8 - Entire Agreement* It is understood that this Subcontract, including all instruments incorporated herein by reference, constitutes the entire agreement existing between the parties and supersedes all other agreements, representations, proposals, understandings, negotiations, or other matters, oral or written.

## EXHIBIT A

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## THE FOLLOWING WORK IS INCLUDED IN THE SUBCONTRACT

## A. THE FOLLOWING WORK IS ALSO INCLUDED:

It is the intent of this Subcontract Agreement to provide for the furnishing and installation of all Roofing and related scope, required to complete the Project. It is further understood that the Project Drawings and Specifications listed in Exhibit B, may not be fully developed, and that the Subcontract Agreement Price will include whatever is required beyond same to provide a complete and functional installation to the satisfaction of the Owner.

1. The Scope of Work shall include, but not be limited to, the General Conditions, all Division One Specification Sections, and all the Work in the following Specification Section(s), as further described herein:

   | Section | Description |
   |---------|-------------|
   | 06100 | Specification For Rough Carpentry |
   | 07411 | Metal Roof Panels |
   | 07531 | Specification For EPDM Membrane Roofing |
   | 07620 | Sheet Metal Flashing And Trim |
   | 07920 | Joint Sealers |
   | 13100 | Lightning Protection |

2. This Subcontractor will perform the work in accordance with the Construction Manager's schedule to include daily coordination with the Construction Manager's Project Manager and Superintendent to meet all the schedule completion dates.

3. Subcontractor's Representative: The Subcontractor hereby designates the below named representative who shall be fully acquainted with the Work and has authority to act, render decisions, and furnish information expeditiously on behalf of the Subcontractor.

   Brian Barlow or Mike Hillcoat
   **Designated Subcontractor Representative**

4. The Subcontractor Representative shall not be removed by the Subcontractor without the written consent of Construction Manager. The Subcontractor shall replace the Subcontractor Representative at the request of the Construction Manager with a mutually acceptable replacement.

5. Subcontractor shall include all wood blocking, nailers, plywood and shimming associated with the work of this Subcontract. This shall also include any vertical wood where roof turns up vertically. Also included, but not limited to is all blocking and plywood at parapet walls, roof edges, gravel stop/fascia, expansion joints, HVAC curbs, lightning protection, elevator vents, roof hatch, metal roof and overflow scuppers.

6. Subcontractor shall include all roof pavers/traffic pads as shown on Drawing A-106 and as specified. Also include all expansion joints.

7. Subcontractor shall include any gutters, gutter cornices, scuppers, downspouts and splash blocks.

8. Subcontractor shall include any cant strips and pitch pockets as required for the proper installation of the Subcontract work, even though they may not be shown.

Initial

## EXHIBIT A

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## THE FOLLOWING WORK IS INCLUDED IN THE SUBCONTRACT

9.  All caulking and sealants associated with the Work of this Subcontract, including but not limited to caulking/sealants at gravel stop/fascia.

10. Subcontractor shall furnish and install all roof and roof to wall expansion joints including all fasteners, curbs, blocking, insulation, joint filler, etc. as shown and as specified.

11. Subcontractor shall furnish and install all flashing, counter flashing, collars, clamps, caulking, pipe seals, mastic, lap seals, termination bars, etc. as shown and as specified at all roof penetrations.

12. Subcontractor shall maintain, remove and replace as needed a perimeter fall protection system on all roofs during the work of this Subcontract. All workers must wear proper fall protection equipment during the installation and removal of the protection system. Furthermore, the above must be in compliance with the Project's fall protection standards.

13. Subcontractor shall perform any testing and subsequent repair work per the specifications prior to final acceptance.

14. Subcontractor shall furnish and install one (1) Roof Scuttle as shown on Drawings A-106 and A-322.

15. Subcontractor shall provide written certification from the roofing manufacturer, that the roof system has been installed in accordance with the Manufacturer's recommendations.

16. Subcontractor shall provide warranties as specified and as otherwise stated herein.

17. Subcontractor shall include all associated roofing work at or around electrical penetrations identified, including but not limited to, penetrations required by lightning protection systems and security systems. Coordinate work at the lightning protection system with the successful lightning protection Subcontractor.

18. Subcontractor shall include all roofing work associated with screen wall posts, steel gratings, duct supports, boiler stacks, railing posts, ladders, roof stairs, duct work, lightning protection, roof fans and vents.

19. Subcontractor shall furnish and install blocking and flashing for HVAC Openings and roof curbs.

20. Subcontractor shall include all roofing, wood blocking, insulation, plywood, thru wall flashing and counter-flashing as indicated in the following Drawings: A-310, A-311, A-312, A-313, A-314, A-315, A-320, A-322, A-330 and A-331.

21. Subcontractor shall furnish and install all metal counter-flashings at cast-in reglets in precast.

22. Composite metal wall panels (both vertical and horizontal) as specified under Section 07415 are by others.

23. Subcontractor shall furnish and install Metal Roof at Loading Dock as shown on Drawings A-312, A-315 and A-324.

24. Subcontractor shall provide in his Base Bid costs for completing flashing and sealing of Fifty (50) 2" Vents which are not identified. Refer to Allowance stated elsewhere herein.

Initial

# EXHIBIT A

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## THE FOLLOWING WORK IS INCLUDED IN THE SUBCONTRACT

25. Subcontractor shall provide in his Base Bid costs for completing flashing and sealing of Fifty (50) 4" Vents which are not identified. Refer to Allowance stated elsewhere herein.

26. Subcontractor shall provide in his Base Bid costs for completing flashing and sealing of Thirty (30) 6" Vents which are not identified. Refer to Allowance stated elsewhere herein.

27. Subcontractor shall provide in his Base Bid costs for completing flashing and sealing of Sixteen (16) 6" Column Stubs for HVAC platforms which are not identified. Refer to Allowance stated elsewhere herein.

28. Subcontractor shall provide in his Base Bid costs for completing flashing and sealing of Seventy-Five (75) 1" Conduits for roof mounted equipment which are not identified. Refer to Allowance stated elsewhere herein.

29. Subcontractor shall provide in his Base Bid an Allowance of $10,000.00 to furnish and install miscellaneous additional roof patching which is not identified. Refer to Allowance stated elsewhere herein.

30. Subcontractor shall protect membrane-roofing system from damage and wear during construction period. Inspect roofing for deterioration and damage, describing its nature and extent in a written report, with copies to Skanska.

31. Subcontractor shall correct deficiencies in or remove membrane roofing system that does not comply with requirements, repair substrates and repair or reinstall membrane roofing system to a condition free of damage and deterioration at time of Substantial Completion and according to warranty requirements.

## B. GENERAL SCOPE REQUIREMENTS:

In general, this Subcontract Agreement shall include all engineering, coordination, manufacturing, fabrication, labor, materials, tools, equipment and appurtenances required to complete the Subcontract work, clean up for your own work and related work indicated on or implied by the Contract Drawings and Specifications outlined in Exhibit B attached hereto.

1. The Subcontractor shall furnish all labor, material, equipment, support, scaffolding, hoisting, tools, supervision, and any other services and pay all taxes, fees, bonds and insurance as required to accomplish in a safe, timely and workmanlike manner, the full performance and completion of the Work as described in the Contract Documents listed in Exhibit 'B'.

2. The plans included in the Contract Documents are diagrammatic in nature, and do not necessarily indicate or describe all of the work required for complete and full performance of the Work in this Subcontract. The Subcontractor shall furnish and install all miscellaneous materials, supports, devices, temporary construction, appurtenances, procurement, expediting, or any other work or services required or obviously necessary to effect the full installation of the Work.

3. The Subcontractor shall provide at all times sufficient manpower to maintain the progress of the Work to the satisfaction of the Construction Manager and/or Owner. All Work shall be performed by skilled labor experienced in their respective trade, who shall comply with all Project, site safety and security requirements. The Subcontractor shall remove from the Project any employee deemed

Initial

## EXHIBIT A

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## THE FOLLOWING WORK IS INCLUDED IN THE SUBCONTRACT

by the Construction Manager and/or Owner to be in violation of any Project safety or security requirements.

4.  The Subcontractor shall provide competent supervisory personnel who shall be authorized to act on behalf of the Subcontractor. The appointed supervisor shall be present on site at any time work is being performed, either by this Subcontractor or any other subcontractor working under this Subcontractor's agreement to complete the Scope of Work contained herein. The supervisory personnel assigned to the Project shall not be transferred from the Project without the prior written consent of the Construction Manager. The Subcontractor shall remove from the Project any supervisory personnel deemed to be incompetent or unacceptable by the Construction Manager and/or Owner.

5.  The Subcontractor shall comply and be fully responsible to perform all Work in accordance with the applicable Federal, State, Local and Site regulations and ordinances, including the requirements of the Department of Labor, as well as the Occupational Safety and Health Administration (OSHA).

6.  The Subcontractor shall perform all Work in full cooperation with other trades and coordinate the schedule and sequence of all Work with other trades under the direction of the Construction Manager. When so directed, the Subcontractor shall temporarily omit, or perform certain portions of the Work out of normal sequence, in order to accommodate coordination requirements. Furthermore, the Subcontractor shall attend all coordination meetings and other relevant meetings such as safety meetings, and provide all necessary engineering, design and drafting services as required, and make whatever reasonable dimension, configuration, or location modifications to the Work of this Subcontract as may be required to effect the coordination process at no additional cost.

7.  The Subcontractor will gain access and egress to the project site by using the construction entrance gate (See the *Site Logistics Plan* attached). This Subcontractor is to coordinate all work with SKANSKA in order to maintain site access for all trades. This includes the gate referenced above, as well as the access roads and laydown areas throughout the site. Furthermore, this Subcontractor shall cooperate with cleaning all mud and debris from truck tires prior to exiting the site. A truck tire wash will be furnished by the Sitework Subcontractor. Labor to clean trucks/tires shall be provided by each Subcontractor for their own trucks/tires.

8.  Site conditions are limited. All storage trailers MUST be coordinated with the Project Superintendent prior to being brought on site.

9.  The Subcontractor is required to submit a man loaded two-week schedule every Monday and attend weekly job meetings.

10. The Subcontractor is to maintain a clean and safe work area to the satisfaction of Skanska. Housekeeping is a *daily* priority. All trash generated by this Subcontractor shall be **placed in dumpsters at grade level** provided by the Construction Manager. Separation of trash into its respective (wood, cardboard, metals, etc.) dumpsters shall be required. All trades are responsible for *daily* clean up of their work and debris. If a Subcontractor fails to clean up, all material and debris will be cleaned up by others and all costs associated will be charged to the responsible Subcontractor. In the event the Subcontractor encounters labor jurisdictional issues over this work, the Subcontractor agrees to make whatever arrangements or provisions required to complete same, including all costs to complete this work.

Initial

## EXHIBIT A

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## THE FOLLOWING WORK IS INCLUDED IN THE SUBCONTRACT

11. This Subcontractor shall protect the work and equipment of others while performing its work. Any work performed by others that is damaged by this Subcontractor or its employees or agents shall be the responsibility of this Subcontractor to replace at no additional cost.

12. The Subcontractor shall provide all survey and layout for its own work

13. SKANSKA will provide vertical and horizontal control on the site for use by this Subcontractor.

14. The Subcontractor shall be responsible for unloading, rigging and hoisting all of its equipment and material required to complete the Work of this Subcontract Agreement. This includes furnishing and erecting all planking, scaffolding, and temporary hoist beams as necessary.

15. Subcontractor shall fully cooperate with any testing and/or inspection agencies retained by the Owner, Construction Manager or the Architect and their consultants, including implementation of any remedial Work recommended as a result of such inspections.

16. Subcontract includes all safety that is part of this work, including but not limited to personnel protection, safety access ladders, sub-Subcontractor safety, and protection of all rebar per OSHA and the Skanska USA Building Inc.'s (Skanska) Safety program.

17. The start of the shop drawing / submittal process shall be within one (1) week of award of contract and/or notice to proceed. This includes but is not limited to all Product Data, Shop Drawings, Samples, etc.

18. A safety cable/railing system will be installed by others, unless specifically included in the Specific Scope of Work above, along the perimeter of all the floors and the roof. Subcontractor shall only remove and replace the safety cable / railing system as required for the installation of the Work and shall also be responsible for the maintenance of the safety cable / railing system while working in the area.

19. A fall protection system in full compliance with OSHA is to be provided and maintained by this Subcontractor. Details of the fall protection program must be included in the project specific safety plan submitted for approval. Full body harnesses must be worn as part of the fall protection system. Safety belts are not acceptable. Reference the Project Specific Safety Plan for additional information.

20. Subcontractor shall submit a written execution plan for site logistics coordination, to Skanska for review and approval, within five (5) days after receipt of a written directive to proceed. These plans must indicate the intended locations from which the following shall occur:

    A. Crane picks if required (crane size, location, and reach)

    B. Any cribbing or protection required

    C. Trailer staging locations

21. Subcontractor is to submit a detailed schedule for the entire scope of the contract, including shop drawings, material fabrication, material delivery, and installation within ten (10) days of written

Initial

## EXHIBIT A

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## THE FOLLOWING WORK IS INCLUDED IN THE SUBCONTRACT

notice to proceed. This schedule is to be updated and submitted to SKANSKA every two weeks throughout the performance duration.

22. All mobilizations necessary to complete the work as scheduled are included as part of this Subcontract.

23. Skanska has developed a Project Specific Safety Plan that will be strictly enforced on this project. Subcontractor is responsible for providing acceptable safety protection devices and/or precautions for all related work, and for full compliance with all safety programs instituted by Skanska and/or OSHA. At all times Subcontractor's employees must wear hardhats and eye protection. Subcontractor is responsible to provide employees with all safety equipment including hardhats and eye protection.

24. This Subcontractor has conducted a jobsite visit to view the designated areas of access and delivery shown on the site plan. This Subcontractor agrees that such areas are satisfactory and sufficient for its needs in the execution of its scope. Any change in such areas shall not be permitted without prior approval of SKANSKA.

25. This Subcontractor's operations must comply with the requirements of Skanska's Project Specific Safety Plan and the Site Logistics Plan, See Exhibit G and Exhibit J respectively.

26. As an industry leader, Skanska has implemented an ISO 14001- Environmental Management System designed to achieve Regulatory Compliance, Prevention of Pollution, Conservation, Emissions and Effluents, Ecology and Habitat, and Communication with the public and employees. This Subcontractor will be required to comply with and provide necessary documentation to support the Environmental Management System. A copy of the ISO 14001 - Environmental Management System plan is available at the project office.

27. This Subcontractor will be responsible for all costs of standby trades should this Subcontractor elect to work other than the normal working hours of 7:00 a.m. to 3:30 p.m. or Saturdays, Sundays and Holidays.

28. The building permit will be obtained and paid for by others. This Subcontractor will be responsible to fill out and pay for all sub-code permits that are required for completion of the Scope of work of this Subcontract. Subcontractor shall be required to submit to the Construction Manager proof of such licenses and permits prior to commencement of its work.

29. This Subcontractor is responsible for all hoisting, rigging, erection, distribution, lifts and scaffolding required to its their work.

30. Where material and/or equipment is to be furnished and/or installed by the Subcontractor, the Subcontractor shall be totally responsible for scheduling, delivery, receiving, unloading, inventorying, storing, handling, clean up, protecting, relocating, hoisting, distributing, laying out and installation of said materials and/or equipment.

31. All references to the "Contractor" in any specification, including the Division One – General Requirements, are delegated to this Subcontractor and are included in the scope of this Subcontract.

32. No charges for additional or revised scope will be accepted without being authorized and acknowledged in writing by Skanska's Project Manager or Project Executive before the work is

Initial

## EXHIBIT A

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## THE FOLLOWING WORK IS INCLUDED IN THE SUBCONTRACT

performed.

33. Subcontractor is aware that the structural steel is treated with spray-on fireproofing by others. The removal of fireproofing by this Subcontractor will only be as required for the immediate attachment and installation of its work. Wholesale removal of fireproofing material solely for the convenience of Subcontractor will not be tolerated and will result in an appropriate backcharge.

34. All floor and wall penetrations, excluding slab openings indicated on the structural design drawings, shall be furnished and installed by the Subcontractor including firestopping, smoke seal and/or waterproofing materials as required. Core drilling shall be in accordance with structural drawing details and only after receiving written approval from the Structural Engineer and SKANSKA.

35. SKANSKA reserves the right to issue deviation tickets for defective work, schedule delays; safety related items, etc. The deviation ticket will describe the deviation to be corrected and the monetary value, which will be withheld from progress payments until remediation, is complete. If remediation is not complete by the designated completion date, SKANSKA, at its discretion may elect to have the work performed by others and charge this Subcontractor for the cost of the work performed.

36. Skanska will provide line and grade benchmarks for offsets to the building corners. All other lines, grades, benchmarks, layouts, and engineering (professional or otherwise) required to perform the work of this Subcontract are the responsibility of this Subcontractor.

37. Subcontractor is responsible for satisfying the requirements of all jurisdictions relative to permits, fees and trade jurisdictions; including composite crews where/as required.

38. This Subcontract includes all overtime required to meet the project schedule.

39. Subcontractor will be responsible for overtime costs for the Construction Manager's supervision if the Subcontractor falls behind schedule, by its own fault, and overtime is required by Subcontractor to make up the schedule.

40. A representative of this Subcontractor will be required to attend Project Managers' meetings, Safety meetings, Superintendents' meetings, Coordination meetings and all other meetings, which SKANSKA may require. This Subcontract includes coordination with other trades.

41. This Subcontractor acknowledges that minor adjustments to the schedule may be required as all parties progress through project construction, and agrees to accomplish such minor adjustments at no increase in price.

42. This Subcontractor must submit a written safety program, including job hazard analysis documentation, specific to the work being performed. This must be submitted and approved by Skanska prior to mobilization on site.

43. Each Subcontractor's employee who will work at the Project will be required to attend an Orientation Program the first day of work. The Orientation Program will require approximately one (1) hour for each employee's first day. All costs for same are included in the Subcontract Price set forth herein.

Initial

## EXHIBIT A

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## THE FOLLOWING WORK IS INCLUDED IN THE SUBCONTRACT

44. All electrical power tools/equipment are required to have ground fault circuit interrupters, which are to be supplied by this Subcontractor.

45. Skanska will provide construction lighting in general work areas to meet the requirements of OSHA. Any and all special lighting, task lighting, etc. required to bring the lighting level to a higher level of illumination to install the Work is the responsibility of this Subcontractor.

46. Subcontractor is required to provide and maintain all temporary ladders required for the safe performance of its work.

47. Subcontractor will be required to provide a firewatch and all necessary fire protection/safety equipment, acceptable to SKANSKA, at each location where burning, welding and other "hot work" is being performed. Requirements include, but are not limited to a dedicated fire extinguisher and welding blankets. A "hot work" permit must be obtained from SKANSKA prior to work beginning.

48. Prior to any demolition, excavation, and drilling Subcontractor will be responsible to contact Dig Safe.

49. 120-volt power will be provided for use on each floor. Subcontractor is responsible for all extension cords from the source of power. A 208-volt power source will be made available at specific areas. It shall be the Subcontractor's responsibility and cost to connect to this 208-volt power source should it be required to complete the scope of its work.

50. Due to the limitation of available space within the project site, office and material trailers will need to be coordinated with SKANSKA. The location of any trailers, equipment or stored material must be submitted to and approved by the SKANSKA Superintendent prior to delivery. All trailers must be in a condition that is acceptable to SKANSKA.

51. All material and equipment deliveries shall be coordinated through Skanska's Superintendent a minimum of 72 hours prior to arrival. The Subcontractor shall provide all necessary labor, equipment, dunnage, or material necessary for unloading and staging of deliveries. Storage of material and equipment at the job site will be permitted only to the extent approved in advance by the SKANSKA Superintendent. If anything so stored obstructs the progress of any portion of work, it shall be promptly removed or relocated by this Subcontractor without reimbursement. Facilities for storage at the site will be limited and it shall be the Subcontractor's responsibility to make whatever arrangements may be necessary to insure proper material availability to maintain job progress. SKANSKA reserves the right not to allow trailers onto the Project site if the delivered material is improperly scheduled with no cost impact to the Project. Furthermore, any material temporarily stored inside the building's footprint, shall be placed on moveable dollies/carts with lockable wheels.

52. This Subcontractor shall provide traffic control, flagmen, dust control, noise control and temporary enclosures for its work. Sequencing and barricading of work shall provide for the complete safety of the public and all construction personnel and shall create a minimum of interference with the normal flow of pedestrians and autos. These steps shall include but not be limited to, traffic plates, handrails etc., to provide uninterrupted traffic flow. All such barricading, flagmen, etc. shall have prior written approval of Skanska.

53. It will be this Subcontractor's responsibility to keep the streets clean by whatever means necessary,

Initial

## EXHIBIT A

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## THE FOLLOWING WORK IS INCLUDED IN THE SUBCONTRACT

including street sweepers as required.

54. All Subcontractor employees will eat lunch break meals at a designated area. This area will be determined by Skanska's Superintendent and may change from time to time. Employees are to leave the area free of debris after each meal. No eating will be allowed in the building, including chewing gum, sunflower seeds, etc.

55. Subcontractors will be responsible for keeping the parking areas free of trash and debris.

56. Only in designated areas will food, beverages, and smoking be allowed. No radios other than for project communications will be allowed within the building area. A smoking area will be designated. It will be the responsibility of each Subcontractor to supervise and restrict its employees with regard to this policy.

57. Break times and durations are to be enforced as determined by union trade agreement or company policy.

58. All deliveries are to be made by the gate, entering the site. See the Site Logistics and Staging Plan for additional information.

59. Submittal requirements are as follows:

   A. Shop Drawings – one (1) sepia and five (5) black line prints
   B. Catalog cuts, brochures, etc. – six (6) sets
   C. Final As-builts – one (1) sepia and three (3) prints
   D. Manufacturers Certification & Warranty – four (4) sets
   E. Operation and Maintenance Manuals – seven (7) sets*
   *Note: These manuals must be submitted for approval in triplicate prior to issuing the formal O&M Manuals that will be turned over to the Owner.

60. Subcontractor will be responsible for the cost of engineering review of any shop drawings or catalog cuts, beyond the initial two (2) submissions, if the requirement for resubmission is due to failure on the part of this Subcontractor to properly conform to requirements of the design drawings and specifications. SKANSKA will provide the sole determination regarding compliance.

61. This Subcontractor is responsible for all printing costs necessary to comply with all documentation requirements of the specifications and Subcontract, including but not limited to, initial plans, field sets, specifications, shop drawings, as-builts, etc.

62. All billings are to be submitted to Skanska by the 20th of each month. The billing cycle will be from the 1st to the 31st of each month.

63. As-built drawings must be maintained on-site at all times. Periodic inspections of ongoing as-built documentation will be performed by SKANSKA, CDI and MBL personnel. Failure to maintain as-built drawings is cause for withholding of progress payments until the condition is resolved. As-builts must be submitted in AutoCAD 14.0 or later.

64. This Subcontractor shall provide products from the specified manufacturers and suppliers only. There shall be no substitutions or "equals" unless previously approved by the Architect and Construction Manager.

Initial

## EXHIBIT A

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## THE FOLLOWING WORK IS INCLUDED IN THE SUBCONTRACT

65. This Subcontract includes all costs to accomplish the intent of the documents, as though shown or described fully and correctly therein, wherever a competent licensed Subcontractor can reasonably infer such intent.

66. In case of conflicting information in the documents the more extensive or stringent requirement of higher quality or quantity shall be provided.

67. This Subcontract includes Division One General Requirements pertaining to "Contractor" which can be interpreted to be applicable to this Subcontract by the Construction Manager, as well as requirements in other specification divisions or other drawings where applicable to the work or equipment to be provided under this Subcontract, or if generally performed by the same trades performing the specific scope of work of this Subcontract.

68. Subcontractor is completely and solely responsible for the performance of the components as well as the integrated assembly for items purchased and/or installed under this Subcontract.

69. The contractual requirements of Skanska/Massachusetts Biologic Laboratories are hereby incorporated into this Subcontract and Subcontractor is obligated to said terms and conditions in performing its work. All contract documents are available for review at Skanska's Project Site office during normal working hours.

70. This Subcontractor acknowledges that all Drawings, Specifications, Addenda, Amendments, Schedules and other Documents referred to herein have been examined and this Subcontractor has acquainted itself with all jobsite conditions.

71. Subcontractor is responsible for all requirements to achieve the required tolerances as stated in the specifications.

72. Subcontractor is required to meet or exceed the insurance requirements as outlined in Exhibit "E". Subcontractor acknowledges that failure of this Subcontractor to secure insurance coverage or failure to comply with any of the insurance provisions of the Subcontract Agreement or the Contract Documents shall in no way relieve the Subcontractor of its obligations under the Subcontract Agreement or the Contract Documents.

73. Subcontractor will receive one (1) copy of all Project Contract Documents at Subcontract Award. All other copies of Contract Documents will be at the Subcontractor's cost.

74. This Subcontract includes Performance Bonds, Payment Bonds and Lien Bonds.

75. It is the Construction Manager's Policy to ensure that local and minority business enterprises shall have the maximum opportunity to participate in the performance of Subcontract Agreements performed in conjunction with this Project. The Construction Manager will take all reasonable steps in accordance with regulations promulgated under Massachusetts General Laws to ensure that local and minority business enterprises have the maximum opportunity to compete for and perform Subcontract Agreements in conjunction with this Project.

In furtherance of the Construction Manager's policy of promoting the development of local and minority business enterprises, the Subcontractor agrees to award Subcontract Agreements to such enterprises, as they are defined above to the maximum practicable extent consistent with the

Initial

## EXHIBIT A

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 - ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## THE FOLLOWING WORK IS INCLUDED IN THE SUBCONTRACT

efficient Subcontract performance. The Subcontractor further agrees to place this same utilization policy on its Sub-Subcontractors and lower-tier Vendors

The Subcontractor shall be required to report the status of the above to the Construction Manager as required.

76. Subcontractors are encouraged to utilize qualified local firms as well as qualified MBE/WBE/SBE Companies to complete its Subcontract Work. Subcontractors must indicate its intent to facilitate this in the respective portion of the Bid Form. Note: Skanska has partnered with Mass Alliance in an effort to facilitate, review and monitor this process.

77. Subcontractors are required to become familiar with and comply with the Boston Residents Construction Employment Plan For The Massachusetts Biologic Laboratories Project (File Name LIBD/1269803.3) as well as the Transportation Access Plan between the City of Boston Transportation Department and FPA Lot 3A, LLC. Copies of both documents are included herein by reference and made a part hereof as fully as if herein set forth at length.

## C. SUPPLEMENTARY GENERAL CONDITIONS:

1. In order to reinforce compliance with the safety policies defined above, a fine program has been implemented. The fine structure is as defined in Exhibit G. All fines will be issued as backcharges and be deducted from the Subcontract Amount via change order.

2. As an industry leader Skanska has implemented an ISO 14001 Environmental Management System designed to achieve Regulatory Compliance, Prevention of Pollution, Conservation, Emissions and Effluents, Ecology and Habitat, and Communication with the public and employees. This Subcontractor will be required to comply with and provide necessary documentation to support the Environmental Management System

3. All injuries, regardless of severity, must be reported to the Construction Manager's Superintendent and an accident report must be completed within 24 hours.

4. Anyone creating an unsafe condition must erect the necessary barricades, covers and warning apparatus.

5. Each Subcontractor shall submit a listing of emergency telephone numbers for key personnel involved with this project before any work starts.

6. All scaffolding must be constructed as directed in the Construction Manager's Safety Manual. Riding on rolling scaffolding is strictly prohibited.

7. No power tool is to be operated without the proper guards and/or safeties in place.

8. The Subcontractor shall submit a complete submittal schedule addressing individually each scope item. The Submittal schedule will be submitted in a form, and to a level of detail satisfactory to the Construction Manager. This schedule shall include at a minimum, the area or item each submittal is for, the anticipated number of drawings included for each package to be submitted, the date each submittal will be issued to the Construction Manager and the date the submittal must be approved by in order to fabricate in time for delivery to meet the project schedule. The Subcontractor shall bear responsibility for delays resulting from the failure of the Subcontractor to provide this

Initial

## EXHIBIT A

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## THE FOLLOWING WORK IS INCLUDED IN THE SUBCONTRACT

information. Quantities of submittal documentation and other submittal requirements shall be as required.

9. Where structural calculations and/or shop drawings are required to be signed and sealed by a Structural Engineer, said Engineer will be registered in the Commonwealth of Massachusetts.

10. The Subcontractor shall provide any available color, not just "standard colors", for particular products that are required to be of color selected by the Architect.

11. Unless otherwise noted in the Contract Documents, the below listed items will be submitted within the timeframe indicated (all items not specifically addressed below will be submitted no later than fourteen (14) days after award of the Subcontract):

| | | |
|---|---|---|
| a. | Submittals Schedule | Within ten (10) calendar days after award |
| b. | Shop Drawings/Calculations. | Commence within ten (10) calendar days after Award |
| c. | Embed Layout Drawings (if rqrd): | Within twenty (20) calendar days after award |
| d. | Misc. Data, Design Mixes, etc. | Within twenty (20) calendar days after award |
| e. | Samples: | Within fourteen (14) calendar days after award |
| f. | Sample Panels/Mockups: | Within fourteen (14) calendar days after approval of samples |
| g. | Sample Warranties: | Within forty-five days (45) calendar days after Award |
| h. | All Submittals | Complete within ninety (90) calendar days after Award |

12. A Request for Information (RFI) form must be used to obtain clarifications of the content or intent of drawings or specifications issued by the Architect.  The Request for Information creates a written record of the question and the response.

13. The Subcontractor is responsible to submit its RFI's in a timely manner so as not to impact the progress of work.  The Subcontractor acknowledges that the Architect/Owner is allowed at least seven (7) days to respond to RFI's.

14. The Construction Manager will forward RFI responses to the originating Subcontractor and any other trade contractor whose work may be affected by the response.  If the response has a potential cost or schedule impact, the Construction Manager will issue the response to the Subcontractor with a PCO/Pending Change Order.  The Subcontractor shall notify the Construction Manager immediately and provide pricing and schedule impact within ten (10) days of receipt of the response.

15. The Subcontractor includes assistance during commissioning, as required by the Construction Manager.  This includes but is not limited to the following:

Initial

## EXHIBIT A

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## THE FOLLOWING WORK IS INCLUDED IN THE SUBCONTRACT

a.     The Subcontractor shall notify the Construction Manager and the Owner, when pipe system testing, flushing, cleaning, and startup of each piece of equipment and testing and balancing will occur. Subcontractor shall be responsible to notify the Construction Manager, a minimum of 24 hours ahead of time, when commissioning activities not yet performed or not yet scheduled will delay construction. Subcontractor shall be proactive in seeing that commissioning processes are executed and that the Construction Manager has the scheduling information needed to efficiently manage the commissioning process.

16.   At the punchlist stage of the project, Subcontractors will assign a specific individual to coordinate their respective punch list activities. Each Subcontractor punch list coordinator will be responsible to participate in weekly punch list coordination meetings. It is the Subcontractor's responsibility to find and repair all punch list work items the first time through the list. The Construction Manager will not "point out" each item to the Subcontractor. Items found incomplete after the Subcontractor indicates they are complete may be repaired by the Construction Manager and backcharged to the Subcontractor rather than request another return trip by the Subcontractor.

a.     Skanska may elect to put together specific punch list crews made up of those Subcontractors that Skanska may want to monitor closely in order to expedite the punch list process. Any craftsman will be approved by Skanska and will be separate from any base contract or independent punch listing the subcontractor may be performing.

17.   This Subcontractor shall pay for and maintain throughout the life of the Subcontract, software and hardware connections to allow for the transfer of information between the Construction Manager and Subcontractor. Specific software shall include Prolog "Project Talk" and Microsoft "Outlook", "Word" and "Excel". Hardware shall include a minimum 128K Internet connection. Information transfer may be in the form of Submittals, RFI's, Meeting Minutes, Schedules, etc.

18.   All work is to be installed, and all materials used, shall be in strict accordance with the manufacturers' recommendations and all Federal, State and local codes and regulations as interpreted by the Agency or Authority having such jurisdiction.

19.   Subcontractors are required to provide their respective Project Foreman with Nextel Radios/Phones that will be part of the "Construction Manager's Network" to enable radio communication with the Construction Manager's Field and Project Management staff. Additionally, cellular telephone numbers will be provided to the Construction Manager for all key Foreman and Project Manager's who are working on the project. Twenty-Four - (24) Hour Emergency numbers shall also be provided for this Subcontractor's Project Manager and Superintendent.

20.   This Subcontractor shall include the layout, furnishing, and installation of hangers, inserts, anchors, fasteners, and miscellaneous embedded items as required for the complete performance of this Scope of Work.

21.   In the event any scope items of this Subcontract are improperly located, this Subcontractor will be responsible for all cutting and patching associated with installing these items correctly.

22.   This Subcontractor will furnish and layout any/all access panels required for proper access and/or maintenance for components of systems and assemblies provided under the scope of work of this Subcontract.

| Initial |
| --- |
|  |
|  |

## EXHIBIT A

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## THE FOLLOWING WORK IS INCLUDED IN THE SUBCONTRACT

23.  Any/all required testing shall be performed in a manner that supports and maintains the Construction Manager's schedule. Testing frequency, sequences, means, methods, and durations will be performed in a manner acceptable to the Construction Manager.

24.  All major Subcontractors are required to submit Foreman's Daily Work Reports to the Construction Manager's Field Superintendent on an appropriate form, which will be provided by the Construction Manager. Subcontractor's Foremen will be required to provide the required information detailing manpower levels, work activities and locations for same within the building, and major issues impacting the Subcontractor's Scope of Work. These reports are to be kept current and are to be submitted to the Field Superintendent for periods not exceeding one week.

25.  The Construction Manager will not be responsible for the theft of any items from this site. Subcontractors must secure their own tools and equipment and carry appropriate insurance coverage for these occurrences.

26.  Each worker on this site is responsible for both safety and quality control. The installations on this site are to be of the highest possible quality. Inferior quality work will be repaired or replaced at this Subcontractor's cost.

27.  This Subcontractor is responsible for taking field measurements as required to properly complete the work of this Subcontract.

28.  Before the date of Substantial Completion for the Project, Subcontractor will submit final as-built documentation, guarantees, attic stock, extra stock, warranties, and all other closeout documents required by the Contract Documents.

29.  Subcontractors will be required to mark all lifts with their company name and provide Skanska with a key. All lifts will require white and/or non-marking tires. All personnel will be trained on the use of the lift.

30.  Environmental control and monitoring will be the responsibility of each Subcontractor for their own work areas. Any Work that generates fumes will require ventilation and/or off peak/2nd shift installation requirements. If Skanska determines that additional ventilation and/or off peak/2nd shift installation periods are required, there will be no reimbursement to the Subcontractor. Subcontractors are aware of the materials they are working with and the potential side effects and shall include all costs associated with same.

31.  The Contract Documents are meant to be complimentary and what is required by one is required by all. Whenever possible, the Contract Documents shall be interpreted as consistent with one another and cumulative. However, if a conflict arises between the Contract Documents, the most stringent requirement shall prevail; provided, however, that the following priorities shall apply to the interpretation of the Drawings and Specifications:

   a.  Among and between Drawings, detail Drawings shall govern over general Drawings, and larger scale Drawings shall govern over smaller scale Drawings. Figured dimensions shall govern over scaled dimensions, and work not dimensioned shall be performed as directed by the Architect. In the event of a conflict, inconsistency or discrepancy within or among the Specifications or Drawings as to the quantity or quality of work or materials or quality of construction methods, the higher quality or greater quantity shall be furnished or performed unless otherwise specifically directed in writing by the Architect. Any matters

Initial

## EXHIBIT A

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## THE FOLLOWING WORK IS INCLUDED IN THE SUBCONTRACT

contained in the Specifications which have been omitted from the Drawings or vice versa shall be construed as though contained in both

32.   Attic stock will be delivered per a mutually agreed schedule before substantial completion. The materials will be appropriately placed on pallet(s) and properly labeled and wrapped. Once the quantity has been confirmed, the Subcontractor will be responsible for placing the attic stock in a location as directed by the Owner. Skanska will not accept any materials, which do not meet the above and/or specified requirements. Any materials left behind by the Subcontractor that are not properly turned over and are either lost, misplaced, and/or thrown away as a result, will be replaced at the Subcontractor's expense.

33.   This Subcontractor shall provide all wash down, cleaning, touch up paint and touch-up painting of his Work as required for the proper completion and acceptance of the work of this Subcontract.

34.   Provide and maintain temporary protection of the Work as required during delivery, installation, and until final acceptance by the Owner. Subcontractor will not be compensated for damages caused by their own forces or by others for work left unprotected by this Subcontractor.

35.   Any and all references in CDI's Specification Sections to specific Division One Specs. (i.e. 01300), are hereby referencing the document titled Skanska Division One Specifications, General Conditions for Subcontractors under Construction Management Agreements dated January 23, 2003.

## D.   ADDITIONAL INCLUSIONS AND CLARIFICATIONS:

1.   Subcontractor acknowledges and includes all work as described, modified, identified and clarified under Skanska USA Building Inc.'s Addendum No. 1 dated June 25, 2003, a copy of which is included herein by reference as fully as if herein set forth at length. Note: copy of Addendum Letter is attached hereto, but its attachments may not all be physically attached to this Subcontract, although the attachments are included herein by reference.

2.   Sales Tax on Material Purchases which are to physically become part of the Building's Construction have been excluded from this Subcontract (Refer to Exhibit C).

3.   Performance and Payment Bonds and the costs associated therewith, are included in the Subcontract Price set forth herein.

4   The labor rates, equipment rates, unit prices and alternates proposed by this Subcontractor for changes included in this Subcontract have not been formally agreed to by the Owner. They are subject to substantiation and final review and approval by the Owner, prior to implementation of same.

5.   All rates, unit prices and alternates set forth herein are firm throughout the duration of the Project.

6.   The Subcontractor has indicated its intent to Skanska USA Building Inc to award approximately $145,240.00 of the Subcontract Price to Certified Minority, Women Owned and Small Business Enterprises. Furthermore, this Subcontractor agrees to utilize a certified Minority Company to complete the roof blocking and plywood work included herein.

7.   In the event Skanska USA Building Inc., subject to the approval of the Owner, modifies the Scope

| Initial |
|---------|
|         |
|         |

## EXHIBIT A

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## THE FOLLOWING WORK IS INCLUDED IN THE SUBCONTRACT

of Work of this Subcontract to increase or decrease the Scope of Work of this Subcontract, this Subcontractor will perform this work as directed by Skanska USA Building Inc. and payment for said work shall be in accordance with the following alternates, rates and unit prices set forth below.

A. **ALTERNATES:** The following Lump Sum Alternates are the net amounts to be added or deducted from the Lump Sum Bid for all changed work which shall include all charges for labor, material, waste factor, handling, delivery, storing, hoisting, scaffolding, power hook-ups, restocking fees, general expenses, taxes, insurance, bonds, labor burdens, engineering, shop drawings, small tools, field and office supervisory personnel, insurance, overhead and profit, permits, fees, etc., as may be necessary or required by each Alternate.

1. Subcontractor to provide dumpsters as required in lieu of dumpster(s) being provided by Skanska.

    ADD:    $5,000.00

2. Subcontractor to furnish and install a temporary roof at the circle shaped high roof at Penthouse.

    ADD:    $40,150.00

B. **LABOR RATES:** The following labor rates and premium rates may be used for additional work. All costs, including but not limited to: labor burden, fringes, payroll taxes, bonds, worker's compensation and liability insurance, etc. shall be included. The rates shall also include a percentage for all overhead items such as home office administration, estimating, cartage, small tools, pick-up trucks, travel time, supervision, and all other direct job expenses. The rate shall also include a percentage for fee. No additional mark-ups shall be allowed on labor. Utilization of these rates shall be at the sole discretion of Skanska

| Job Title | Regular | Overtime (x 1 ½) | Double (x 2) |
|---|---|---|---|
| Roofer Journeyman | $57.89 | $85.45 | $103.67 |
| Roofer Foreman | $70.67 | $91.87 | $113.07 |
| Sheet Metal | $75.23 | $98.19 | $121.14 |
| Sheet Metal Foreman | $77.58 | $101.53 | $125.49 |

C. **UNIT PRICES:**

At the Owner's and/or Contractor's option, and in accordance with the Contract Documents the following unit prices shall be used to adjust the Subcontract Amount for additions and/or deletions to the Scope of Work and shall include all charges for labor, material, waste factor, handling, delivering, storing, hoisting, scaffolding, power hook-ups, restocking fees, general expenses, taxes, insurance, labor burdens, engineering, shop drawings, small tools, field and office supervisory personnel, bonds, overhead and profit, permits, fees, cleanings, etc., as may be necessary or required by each Unit Price. Unit prices shall be utilized at the sole discretion of Skanska.

1. Furnish and install an additional pitch pocket (4" x 4").    $90.00/ea.

2. Furnish and install an additional roof paver (30" x 30" membrane).    $25.00/ea.

Initial

## EXHIBIT A

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## THE FOLLOWING WORK IS INCLUDED IN THE SUBCONTRACT

3.  Furnish and install an additional vent flashing ("witches hat" – 6" maximum).    $80.00/ea.

4.  Furnish and install an additional roof scuttle (Bilco S-20 w/railing).    $1,900.00/ea.

5.  Furnish and install additional flashing and sealing at additional roof curbs.    $20.00/lf.

D.  **EQUIPMENT RATES:** The following are the all inclusive equipment rates for all equipment for the undersigned, which include all fuel, maintenance, operators, insurance, bonds, taxes, overhead and profit as defined above. The overtime rates for equipment shall be determined by adding the difference between the straight time and overtime rates for operators above, to the equipment rates provided herein. Utilization of these rates shall be at the sole discretion of Skanska.

| Equipment | Per Hour | Per 8 Hour Day | Per 40 Hour Week | Per 160 Hour Month |
|-----------|----------|----------------|------------------|--------------------|
| 35-Ton Crane | $200.00 | $1,600.00 | $8,000.00 | $32,000.00 |

Subcontractor owned tool and equipment rental rates, including all third party and lower tier Sub-subcontractor/supplier rates, will be reimbursed at a cost not to exceed 80% of the latest editions of the MCAA Tool and Equipment Rental Survey and/or the AED Greenbook of National averaged rates, which includes, but is not limited to, all costs for fuel, or other energy costs to operate a tool or machine, all transportation costs, cost of hook-up of other necessary preparatory work, consumables, normal and extraordinary wear and tear, depreciation, maintenance, lubrication, storage, bonds, overhead and profit. Subcontractor shall not be reimbursed for the cost of leasing/renting an individual tool or piece of equipment in excess of its fair market value as determined in the latest edition of the K-III Machinery Information Divisions' Green Guide. Subcontractor owned automobiles and pick-up trucks are to be furnished as part of the Subcontractor's Overhead and Profit Mark-up and shall not be reimbursed as a rental expense.

E.  **MATERIAL MARK-UP:**
Equipment rates, alternates, labor rates and unit prices include overhead and profit costs. The following percentage will be added to the actual changes to cover the Subcontractor's overhead and profit for changes not covered under the above rates, alternates and unit prices. Mark-up for overhead and profit shall <u>not</u> exceed 10%.

8.  The Subcontract Price set forth herein includes an Allowance of $10,000.00 for miscellaneous patching and flashing of roof.

9.  The Subcontract Price set forth herein includes an Allowance of $3,700.00 for flashing and sealing of fifty (50) safety tie-in supports to be located on the roofs.

10. The Subcontract Price set forth herein includes an Allowance of $3,700.00 for flashing and sealing of fifty (50) additional 2" vents at locations to be determined.

11. The Subcontract Price set forth herein includes an Allowance of $3,900.00 for flashing and sealing of fifty (50) additional 4" vents at locations to be determined.

12. The Subcontract Price set forth herein includes an Allowance of $2,400.00 for flashing and sealing thirty (30) additional 6" vents at locations to be determined.

| Initial |
|---------|
|         |

## EXHIBIT A

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## THE FOLLOWING WORK IS INCLUDED IN THE SUBCONTRACT

13. The Subcontract Price set forth herein includes an Allowance of $1,500.00 for flashing and sealing of sixteen (16) additional 6" column stubs at locations to be determined.

14. The Subcontract Price set forth herein includes an Allowance of $6,600.00 for flashing and sealing of seventy-five (75) additional 1" conduits/pipe penetrations at locations to be determined.

15. This Subcontractor includes all union labor to complete the work of this Subcontract.

16. This Subcontractor acknowledges receipt of Lightning Protection Drawings E-641 and E-642 dated 6/17/03 and Drawing A-106 dated 7/14/03 issued to this Subcontractor at its meeting on- site with Skanska on 7/15/03.

17. Standard Kynar color is included on one (1) side only of the metal roof at the Loading Dock.

18. Flashing and sealing of two (2) elevator vents is included.

19. Furnishing and installing roof hatch with safety railing is included.

20. Furnishing and installing membrane walkway pads as specified and as shown on the drawings is included.

21. Furnishing and installing stainless steel cap flashings at skylight is included.

22. Furnishing and installing roof expansion joints shown in Detail 18/A322 is included.

23. Material and labor warranties as specified are included.

24. Flashing and sealing of boiler stacks is included.

25. Furnishing and installing flashing at precast as shown on Detail 3/A313 is included.

26. Furnishing membrane flashing as shown on Detail 1/A330 is included and shall be built into the masonry by the Masonry Subcontractor.

27. Furnishing and installing the Penthouse Plenum Roof Systems is included. In the event this work gets deleted from the Project, the Subcontract Price set forth herein shall be decreased by the LUMP SUM AMOUNT of $9,817.00.

28. The Subcontract Price set forth herein includes three (3) separate mobilizations. One (1) for the Central Utility Building (CUB), another for the Low Roof Areas, and another for the High Roof Areas.

29. Flashing and sealing of roof curbs as shown on Drawing A106 dated 7/14/03 is included.

30. Furnishing and installing gutters, downspouts and splashblocks at metal roof work is included.

31. Flashing and sealing of a quantity of twelve (12) each columns and twelve (12) each tube steel supports for the roof screen not yet shown is included.

Initial

# EXHIBIT A

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## THE FOLLOWING WORK IS INCLUDED IN THE SUBCONTRACT

32.  Although not listed in the specifications, 6-mil polyethylene vapor barrier over steel roof decks is included as shown on the Drawings. Subcontractor shall overlap the joints as well as seal the joints using duct tape. Subcontractor stated that its roof system including this vapor barrier will meet the Massachusetts State Energy Codes.

33.  Tapered insulation and wood fiberboard overlayment as specified, shown and required is included.

34.  Fully adhere EPDM membrane as specified over the overlayment board and insulation to the rear of the parapet walls and to the top of the precast walls under the precast stone cap (Reference Details 1, 2, 4/A330).

35.  Furnishing and installing stainless steel gravel stops/fascias where shown is included.

36.  Shop fabricate and furnish for others to install, stainless steel through wall masonry flashing at the base terminations of the EPDM roof system (Reference Details 3/A311 and 5/A310).

37.  The following items are not included:

   a.  Building permits.

   b.  Masonry fabric and through wall flashings at masonry unless otherwise indicated herein.

   c.  Through wall flashing at curtain wall and metal wall panel systems, unless otherwise indicated herein.

   d.  Furnishing and installing pre-fabricated HVAC roof curbs.

   e.  Concrete pavers and pedestals. There are none shown on the Drawings.

   f.  Precast stone copings.

   g.  Roof protection of new work that has already been completely installed, although while this Subcontractor is working on, or adjacent to new roof work, this Subcontractor shall protect roof as required.

   h.  Temporary roofing.

38.  This Subcontractor requires reasonably adequate space on-site for parking, loading and staging of its work.

39.  Dumpster(s) shall be provided by Skanska, but this Subcontractor includes all labor and costs associated with getting its trash and debris into said dumpster(s).

40.  A copy of Exhibit R – Rider to Subcontract Agreement No. 551039-417 (1 Page) is attached hereto and made a part hereof.

Initial

# EXHIBIT B

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## THE FOLLOWING WORK IS INCLUDED IN THE SUBCONTRACT

| Number | Rev | Title | Rev Date | Status |
|--------|-----|-------|----------|--------|
| **D06-Architectural** | | | | |
| A-001 | 0 | Architectural Cover Sheet | 5/23/2003 | For Permit |
| A-002 | 0 | Drawing List Symbols & Abbreviations | 5/23/2003 | For Permit |
| A-003 | 2 | Basement Floor Egress Plan | 5/23/2003 | For Permit |
| A-004 | 2 | First Floor Egress Plan | 5/23/2003 | For Permit |
| A-005 | 2 | Second Floor Egress Plan | 5/23/2003 | For Permit |
| A-101 | 2 | Basement Floor Plan | 5/23/2003 | For Permit |
| A-102 | 2 | First Floor Plan | 5/23/2003 | For Permit |
| A-103 | 2 | Second Floor Plan | 5/23/2003 | For Permit |
| A-104 | 0 | First Floor Perimeter Plan | 5/23/2003 | For Permit |
| A-105 | 0 | Second Floor Perimeter Plan | 5/23/2003 | For Permit |
| A-106 | 3 | Roof Plan | 5/23/2003 | For Permit |
| A-107 | 0 | Basement Floor Plan | 5/23/2003 | For Permit |
| A-108 | 0 | First Floor Plan | 5/23/2003 | For Permit |
| A-109 | 0 | First Floor Plan | 5/23/2003 | For Permit |
| A-110 | 0 | First Floor Plan | 5/23/2003 | For Permit |
| A-111 | 0 | First Floor Plan | 5/23/2003 | For Permit |
| A-112 | 0 | Second Floor Plan | 5/23/2003 | For Permit |
| A-113 | 0 | Second Floor Plan | 5/23/2003 | For Permit |
| A-201 | 0 | Building Elevations | 2/27/2003 | For Fndtn. Permit |
| A-202 | A | Enlarged Elevations | 2/27/2003 | For Fndtn. Permit |
| A-203 | A | Enlarged Elevations | 5/23/2003 | For Permit |
| A-301 | C | Building Sections | 5/23/2003 | For Permit |
| A-302 | C | Building Sections | 5/23/2003 | For Permit |
| A-303 | C | Partial Section/Elevations | 5/23/2003 | For Permit |
| A-310 | D | Wall Sections | 5/23/2003 | For Permit |
| A-311 | D | Wall Sections | 5/23/2003 | For Permit |
| A-312 | D | Wall Sections | 5/23/2003 | For Permit |
| A-313 | D | Wall Sections | 5/23/2003 | For Permit |
| A-314 | D | Wall Sections | 5/23/2003 | For Permit |
| A-315 | D | Wall Sections | 5/23/2003 | For Permit |
| A-320 | A | Exterior Sections & Details | 5/23/2003 | For Permit |
| A-321 | C | Loading Dock Details | 5/23/2003 | For Permit |
| A-322 | C | Roof Details | 5/23/2003 | For Permit |
| A-323 | C | Cafe Sunshade Plan & Details | 5/23/2003 | For Permit |
| A-324 | C | Loading Dock Canopy Details | 5/23/2003 | For Permit |
| A-330 | D | Roof Edge & Misc. Exterior Details | 5/23/2003 | For Permit |
| A-331 | C | Roof Edge & Misc. Exterior Details | 5/23/2003 | For Permit |
| A-401 | C | Enlarged Floor Plan - Labs | 5/23/2003 | For Permit |
| A-402 | C | Enlarged Floor Plans - Toilet Rooms | 5/23/2003 | For Permit |

Initial

# EXHIBIT B

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## THE FOLLOWING WORK IS INCLUDED IN THE SUBCONTRACT

| Number | Rev | Title | Rev Date | Status |
|---|---|---|---|---|
| A-403 | B | Enlarged Floor Plan - Cafe, Lobby | 5/23/2003 | For Permit |
| A-404 | B | Enlarged Floor Plans - 2nd Floor Conference Rooms | 5/23/2003 | For Permit |
| A-501 | D | Plan Details | 5/23/2003 | For Permit |
| A-502 | D | Plan Details | 5/23/2003 | For Permit |
| A-503 | D | Plan Details | 5/23/2003 | For Permit |
| A-504 | C | Column Details | 5/23/2003 | For Permit |
| A-505 | B | Interior Sections & Details | 5/23/2003 | For Permit |
| A-507 | C | Plan Details | 5/23/2003 | For Permit |
| A-520 | A | Drinking Fountain/Fire Extinguisher Wall Protection Details | 5/23/2003 | For Permit |
| A-521 | A | Wall Penetration Details | 5/23/2003 | For Permit |
| A-521. | PP | Drinking Fountain/Fire Extinguisher Wall Protection Details | 1/24/2003 | Progress Print |
| A-601 | 1 | Room Finish Schedules | 5/23/2003 | For Permit |
| A-602 | 0 | Partition Types | 5/23/2003 | For Permit |
| A-603 | B | Finish Details | 5/23/2003 | For Permit - |
| A-604 | 1 | Door Schedules | 5/23/2003 | For Permit |
| A-605 | 1 | Door Schedules | 5/23/2003 | For Permit |
| A-606 | C | Exterior Door Details | 5/23/2003 | For Permit |
| A-607 | B | Interior Door Details | 5/23/2003 | For Permit |
| A-620 | C | Curtain Wall Elevations | 5/23/2003 | For Permit |
| A-621 | C | Curtain Wall Details | 5/23/2003 | For Permit |
| A-701 | 0 | Stairs One & Two Plans & Sections | 5/23/2003 | For Permit |
| A-702 | 0 | Stair Three Plans & Sections | 5/23/2003 | For Permit |
| A-703 | 0 | Stair Details | 5/23/2003 | For Permit |
| A-704 | 0 | Elevator Plans & Sections | 5/23/2003 | For Permit |
| A-705 | 0 | Elevator Details | 5/23/2003 | For Permit |
| A-801 | PP | Basement Floor Reflected Ceiling Plan | 1/24/2003 | Progress Print |
| A-802 | PP | First Floor Reflected Ceiling Plan | 1/24/2003 | Progress Print |
| A-803 | PP | First Floor Reflected Ceiling Plan | 1/24/2003 | Progress Print |
| A-804 | PP | First Floor Reflected Ceiling Plan | 1/24/2003 | Progress Print |
| A-805 | PP | Second Floor Reflected Ceiling Plan | 1/24/2003 | Progress Print |
| A-807 | B | Interior Details | 5/23/2003 | For Permit |
| A-901 | B | Interior Elevations | 5/23/2003 | For Permit |
| A-904 | 0 | Toilet Room, Casework Elevations & Details | 5/23/2003 | For Permit |
| **D07-Structural** | | | | |
| S-201 | 2 | Basement Slab & Foundation Plan | 6/6/2003 | Revised as Noted |
| S-202 | 3 | Basement Slab & Foundation Plan | 6/6/2003 | Revised as Noted |
| S-203 | 2. | Basement Slab & Foundation Plan | 5/14/2003 | For Permit |

| Initial |
|---|
|  |
|  |

## EXHIBIT B

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## THE FOLLOWING WORK IS INCLUDED IN THE SUBCONTRACT

| Number | Rev | Title | Rev Date | Status |
|--------|-----|-------|----------|--------|
| S-204 | 1 | 1st Floor Slab Plan | 6/4/2003 | Revised as Noted |
| S-205 | 1 | 1st Floor Slab Plan | 6/4/2003 | Revised as Noted |
| S-206 | 0 | 1st Floor Slab Plan | 5/21/2003 | For Permit |
| S-207 | A | 2nd Floor Slab Plan | 5/21/2003 | For Permit |
| S-208 | A | 2nd Floor Slab Plan | 5/21/2003 | For Permit |
| S-401 | 1 | Foundation Sections & Details | 5/30/2003 | Revised as Noted |
| S-402 | 1 | Foundation Sections & Details | 6/4/2003 | Revised as Noted |
| S-501 | 1. | Second Floor & Low Roof Framing Plan | 2/17/2003 | For Permit |
| S-502 | 1. | Second Floor & Low Roof Framing Plan | 2/17/2003 | For Permit |
| S-503 | 1. | Utility Building Roof Framing Plan | 2/17/2003 | For Permit |
| S-504 | 1. | Roof Framing Plan | 2/17/2003 | For Permit |
| S-505 | 1. | Roof Framing Plan | 2/17/2003 | For Permit |
| S-506 | 1. | High Roof Framing Plan | 2/17/2003 | For Permit |
| S-507 | 1. | High Roof Framing Plan | 2/17/2003 | For Permit |
| S-601 | 1. | Building Elevations | 2/17/2003 | For Permit |
| S-701 | 0. | General Notes & Details | 2/27/2003 | For Permit |
| S-702 | 0. | Sections & Details | 2/18/2003 | For Permit |
| S-703 | B | Sections & Details | 5/21/2003 | For Permit |

| | | | | |
|--------|-----|-------|----------|--------|
| **S01-General Conditions** | | | | |
| Division One | 0 | General Conditions for Subs u/CM Agreement | 1/23/2003 | IFC |
| | | | | |
| **S05-Metals** | | | | |
| 05120 | 0 | Structural Steel | 12/17/2002 | IFC |
| 05300 | 0 | Metal Deck | 12/17/2002 | IFC |
| | | | | |
| **S06-Woods & Plastic** | | | | |
| 06100 | 0 | Rough Carpentry | 1/9/2003 | IFC |
| | | | | |
| **S07-Thermal & Moisture Protection** | | | | |
| 07210 | 1 | Building Insulation | 4/8/2003 | Revised as Noted |
| 07262 | 0 | Liquid-Applied Vapor Permeable Air Barrier System | 4/16/2003 | IFC |
| 07411 | 0 | Metal Roof Panels | 5/6/2003 | IFC |
| 07531 | 1 | EPDM Membrane Roofing | 2/5/2003 | Revised as Noted |
| 07620 | A | Sheet Metal Flashing & Trim | 11/21/2002 | For Approval |

Initial

<u>EXHIBIT B</u>

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

<u>THE FOLLOWING WORK IS INCLUDED IN THE SUBCONTRACT</u>

| Number | Rev | Title | Rev Date | Status |
|--------|-----|-------|----------|--------|
| 07920 | 0 | Joint Sealers | 12/19/2002 | IFC |
| S16-Electrical | | | | |
| 13100 | 0 | Lightning Protection | 3/11/2003 | IFC |

THE HARTFORD ROOFING COMPANY, INC.                SKANSKA USA BUILDING INC.

BY: _____          BY: _____

TITLE: _____          TITLE: Brian Howe, Project Executive _____

DATE: _____          DATE: _____

Initial

## EXHIBIT C

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

---



Form ST-2
Certificate of Exemption

Massachusetts
Department of
Revenue

Certification is hereby made that the organization herein named is an exempt purchaser under General Laws, Chapter 64H, sections 6(d) and (e). All purchases of tangible personal property by this organization are exempt from taxation under said chapter to the extent that such property is used in the conduct of the business of the purchaser. Any abuse or misuse of this certificate by any tax-exempt organization or any unauthorized use of this certificate by any individual constitutes a serious violation and will lead to revocation. Willful misuse of this Certificate of Exemption is subject to criminal sanctions of up to one year in prison and $10,000 ($50,000 for corporations) in fines. (See reverse side.)

| * | WORCESTER CITY CAMPUS CORP | EXEMPTION NUMBER E |
| | U MASS MEDICAL SCHOOL | 043-170-910 |
| | WORCESTER CITY CAMPUS CORP | ISSUE DATE |
| | 55 LAKE AVE NORTH | 05/30/00 |
| | WORCESTER                              MA | CERTIFICATE EXPIRES ON |
| | 01655 | 05/30/05 |

NOT ASSIGNABLE OR TRANSFERABLE

COMMISSIONER OF REVENUE

ALAN LEBOVIDGE

---

Initial

Exhibit C   Page 1 of 1

## EXHIBIT D

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## APPLICATION FOR PAYMENT AND WAIVER OF LIEN

| | |
|---|---|
| From | _____ |
| To: | Skanska USA Building Inc |
| Project | Massachusetts Biologic Laboratories |
| | Mattapan, MA |

| | |
|---|---|
| Subcontract No. | 551039 |
| Requisition No. | _____ |
| Date Prepared | _____ |
| Period From | _____ To _____ |

| (FOR INTERNAL PURPOSES) | | |
|---|---|---|
| Bond OK | ___ | |
| Signed Subcontract | ___ | |
| Ins. Exp. Date | ___ | |
| | / / | |

| | | | |
|---|---|---|---|
| 1. | Original Subcontract Amount | $ | _____ |
| 2. | Approved Subcontract Revisions No. ___ to No. ___ | $ | _____ |
| 3. | Total Adjusted Subcontract Amount | $ | _____ |
| 4. | Total Completed to Date  (Attach Breakdown) | $ | _____ |
| 5. | Cost of Stored Materials  (Attach Back-up) | $ | _____ |
| 6. | Total: | $ | Approval |
| 7. | Less 10% Retainage: | $ | _____ |
| 8. | Total Earned less Retainage: | $ | _____ |
| 9. | Less Previous Payments: | $ | Approval |
| 10. | Amount Due This Requisition: | $ | _____ |

I hereby certify that the Work performed and the materials supplied to date, represents the actual value of accomplishment under the terms of the Subcontract (and all authorized changes thereto) to the date hereof between the above named Subcontractor and SKANSKA USA BUILDING INC. (Skanska) relating to the referenced project

The undersigned also affirms, warrants and represents that there are no unsubmitted claims of any nature, contractual or otherwise, arising from or associated with the performance of the undersigned's Work through and including the date hereof

I also certify that I have complied with Federal, State and local tax laws, including Social Security laws and Unemployment Compensation laws and Workmen's Compensation laws insofar as applicable to the performance of this Subcontract  I further certify that all insurance premiums, welfare, and pension fund payments and fringe benefits of all nature due in connection therewith have been fully paid through the period covered by previous payments received from the Contractor, except as noted below

I further certify that payments, less applicable retention, have been made through the period  covered by previous payments received from the Contractor, and that I owe no one (including, without any limitation, all lower-tier subcontractors and material suppliers) for any labor, tools, equipment, materials, taxes or any other item of cost or expense in connection with the performance of the Subcontract except as noted below

NOTE  Please list here any unpaid amounts together with the name of person or corporation to whom owed  Write "none" if nothing owed  (Use back side if more space is necessary )

| | | |
|---|---|---|
| _____ | $ | |
| _____ | $ | |
| _____ | $ | |

To the fullest extent permitted by law, I hereby agree to indemnify and save harmless Skanska and their officers, governing board members, employees, successors, and assigns, from all liens (including, without limitations, liens under Massachusetts General Chapter 254), claims and demands, and all expenses incurred, including attorney's fees and cost of defense, for or on account of or in any way growing out of claims of the undersigned, or others claiming by, through or under the undersigned, for payments for any labor performed or material, appliances, tools, equipment or services furnished in connection with the erection, alterations, repair or removal of a building or structure, or any improvement or alteration to real property, or any other Work performed on land for the above-referenced project

Furthermore, in consideration of the payments received, and upon receipt of the amount of this request, the under-signed does hereby waive, release and relinquish all claim or right of lien which the undersigned may now have upon the premises above described, except for claims or right of lien for contract, and/or change order work performed to the extent that payment is being retained or will subsequently become due

| | | |
|---|---|---|
| Subcontractor | by _____ | |
| | Officer of Company | Date |
| _____ | _____ | |
| Company Name | Name Typed as Written Above | Title |

Initial

## EXHIBIT E

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

---

## Certificate of Insurance

Issue Date (MM/DD/YY)

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |
|---|---|

| | INSURERS AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED | INSURER A | |
| | INSURER B | |
| *Subcontractor's Name* | INSURER C | |
| | INSURER D | |
| | INSURER E | |

### COVERAGES

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| CO LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | Limits | |
|---|---|---|---|---|---|---|
| | **GENERAL LIABILITY** | POLICY NUMBER | | | EACH OCCURRENCE | $ 1,000,000 |
| X | COMMERCIAL GENERAL LIABILITY | | | | PRODUCTS COMP/OP AGG | $ 1,000,000 |
| | CLAIMS MADE  X OCCUR | PER PROJECT AGGREGATE ENDORSEMENT SO RAILROAD EXCLUSION ELIMINATED (ISO OR EQUIVALENT) | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | OWNER S & CONTRACTOR'S PROT | | | | GENERAL AGGREGATE | $ 2,000,000 |
| X | ISO FORM CG001 | | | | FIRE DAMAGE (Any one fire) | $ 50,000 |
| X | CONTRACT LIAB | | | | MED EXPENSE (Any one person) | $ 5,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: POLICY  X PROJECT  LOC | | | | | |
| | **AUTOMOBILE LIABILITY** | POLICY NUMBER | | | COMBINED SINGLE LIMIT | $ 1,000,000 |
| X | ANY AUTO | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS | | | | | |
| | SCHEDULED AUTOS | | | | BODILY INJURY (Per accident) | $ |
| X | HIRED AUTOS | | | | | |
| X | NON OWNED AUTOS | | | | PROPERTY DAMAGE | $ |
| | GARAGE | | | | | |
| | **EXCESS LIABILITY** | POLICY NUMBER | | | EACH OCCURRENCE | $ 5,000,000 |
| X | UMBRELLA FORM | | | | AGGREGATE | $ 5,000,000 |
| | OTHER THAN UMBRELLA FORM | PER PROJECT ENDORSEMENT INCLUDED | | | | |
| | **WORKERS' COMPENSATION AND EMPLOYER'S LIABILITY** | POLICY NUMBER | | X | STATUTORY LIMITS | |
| | | | | | EACH ACCIDENT | $ *1,000,000 |
| | | COVERAGE APPLIES IN STATE OF/OR SITE OPERATION UNDER THIS SUBCONTRACT | | | DISEASE POLICY LIMIT | $ 1,000,000 |
| | THE PROPRIETOR, PARTNERS, EXECUTIVE OFFICERS ARE  X INCL  EXCL | USL&H COVERAGES INCLUDED WHERE NEEDED | | | DISEASE-EACH EMPLOYEE | $ *1,000,000 |
| | | | | | | *EXCEPT WHERE UNLIMITED |

OTHER    The coverages provided shall be pursuant to insurance requirements contained in the Subcontract.

SEE ATTACHED DESCRIPTIONS.

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/SPECIAL ITEMS

All operations performed under Massachusetts Biologic Laboratories Project, 460 Walk Hill Street, Mattapan, MA 02126. Skanska USA Building Project Number 551039. The following are included as Additional Insured (Endorsement ISO Form B, CG2010 11/85 or equivalent) for all coverages except Workers' Compensation: Skanska USA Building Inc., their directors, officers, employees, subsidiaries & affiliates, Massachusetts Biologic Laboratories and Worcester City Campus Corporation.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Skanska USA Building Inc. 270 Congress Street Boston, MA 02210    *This must be crossed out* | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED ** BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ~~ENDEAVOR TO~~ MAIL 45 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, ~~BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE COMPANY, ITS AGENTS OR REPRESENTATIVES.~~ |
| | AUTHORIZED REPRESENTATIVE |
| | **NON-RENEWED OR MATERIALLY CHANGED    Initial |

## DESCRIPTIONS (Continued from Previous Page)

**Additional Insureds:**  The following are included as Additional Insureds (Endorsement ISO Form B, CG2010 11/85 – "your work" – ongoing operations not acceptable), as respects to General Liability, Auto and Umbrella Policies:  Skanska USA Building Inc., Owner, and their directors, officers, employees and affiliates.

**Primary Insurance:**  As respects to General Liability, Business Automobile and Umbrella Liability, policies have been endorsed and stipulate that this insurance is primary, for all additional insureds; and any other insurance or self-insurance maintained by Skanska USA Building Inc. and any other additional Insured et al, shall be excess only and shall not be called upon to contribute with this insurance.

**With respect to the Excess Liability Insurance,** the following policies are scheduled as primary:  Commercial General Liability, Automobile Liability, and Employers Liability.

**Waiver of Subrogation:**  As respects to General Liability, Business Automobile, Workers Compensation, and Umbrella Liability, Subcontractor and all its insurers agree to waive their rights of recovery (subrogation) against all additional insured including Skanska USA Building Inc. and its directors, officers, employees, subsidiaries and affiliates.

**Cancellation Clause:**  All policies have been endorsed to provide 60 days prior written notice of cancellation, material change and/or non-renewal by certified mail; return receipt requested, to Skanska USA Building Inc., 270 Congress Street, Boston, MA  02210.

| Initial |
| --- |
|  |

## EXHIBIT F

**Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.**

The Subcontractor shall list below those officers of the Subcontractor duly authorized to execute documents for the Subcontractor, legally binding the Subcontractor to the terms, conditions, or requirements of said documents so executed   The Construction Manager shall rely upon the representation made herein until written notice from the Subcontractor, modifying said list, is received by the Construction Manager.

<table>
<tr><th>NAME</th><th>TITLE</th></tr>
<tr><td>_____</td><td>_____</td></tr>
<tr><td>_____</td><td>_____</td></tr>
<tr><td>_____</td><td>_____</td></tr>
<tr><td>_____</td><td>_____</td></tr>
<tr><td>_____</td><td>_____</td></tr>
</table>

Initial

## EXHIBIT G

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 - ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

Project Specific Safety Plan
for

# Massachusetts Biologic Laboratories
## Mattapan, MA
## JOB NO. 551039

# SKANSKA

| Initial |
|---------|
|         |
|         |

# SKANSKA

Project Specific Safety Plan - Massachusetts Biologic Laboratories

## Table of Contents

| | | |
|---|---|---|
| 1.0 | Introduction | 4 |
| 1.1 | Major Construction Activities | 4 |
| | | |
| 2.0 | Special Site Requirements | 4 |
| 2.1 | Guidelines for Access to the Site | 4 |
| 2.2 | Sites and Buildings | 4 |
| 2.3 | Site Security | 4 |
| 2.4 | Environmental Issues | 4 |
| | | |
| 3.0 | CM Responsibility | 5 |
| 3.1 | Program Scope | 5 |
| 3.2 | Orientations | 6 |
| 3.3 | Inspections | 6 |
| 3.4 | Correction of Violations | |
| 3.5 | Crisis Management | 6 |
| 3.5.1 | Accident Reporting | 6 |
| 3.5.2 | Injury Management | 7 |
| 3.5.3 | Accident Investigation | 7 |
| 3.5.4 | Injury to Persons | 7 |
| 3.5.5 | Major Catastrophe | 7 |
| 3.6 | Display of Information | 7 |
| | | |
| 4.0 | Subcontractor Responsibility | 7 |
| 4.1 | The Subcontractor – Safety Supervision | 7 |
| 4.2 | Supervisor Training | 8 |
| 4.3 | Competent Persons | 8 |
| 4.4 | Housekeeping | 8 |
| 4.5 | Safety Violations | 8 |
| 4.6 | OSHA Penalties | 9 |
| 4.7 | Emergency Responders | 9 |
| 4.8 | Hazard Communication | 9 |
| 4.9 | Tool Box Talks | 9 |
| 4.10 | Potable Water | 9 |
| 4.11 | Hygienic Practices | 10 |
| 4.12 | Orientation | 10 |
| | | |
| 5.0 | Project Safety Rules | 10 |
| 5.1 | Personal Protective Equipment | 10 |
| 5.1.1 | Hard Hats | 11 |
| 5.1.2 | Safety Glasses | 11 |
| 5.1.3 | Clothing | 11 |
| 5.1.4 | Cutting, Chipping, Grinding | 11 |
| 5.1.5 | Respiratory Protection | 11 |
| 5.1.6 | Reflective Vests | 11 |
| 5.2 | Fall Protection | 11 |
| 5.2.1 | Guarding Floor Holes | 11 |
| 5.2.2 | Work on Roofs | 12 |
| 5.3 | Steel Erection | 12 |
| 5.4 | Crane and Pile Driver Safety | 13 |
| 5.4.1 | Use of Suspended Personnel Platforms | 13 |
| 5.4.2 | Machinery Operation and Equipment Inspections | 13 |
| 5.4.3 | Heavy Rigging | 13 |
| 5.5 | Forklift and Lull Operation | 14 |

Initial

# SKANSKA

Project Specific Safety Plan – Massachusetts Biologic Laboratories

| | | |
|---|---|---|
| 5.6 | Excavations | 14 |
| 5.7 | Special Permits | 14 |
| 5.8 | Fire Prevention | 14 |
| 5.8.1 | Fire Fighting Equipment | 14 |
| 5.8.2 | Flammable Storage | 15 |
| 5.8.3 | Temporary Indoor Shacks | 15 |
| 5.9 | Compressed Gases | 15 |
| 5.10 | Electrical Safety | 16 |
| 5.10.1 | Responsibility | 16 |
| 5.10.2 | Fixed Equipment | 16 |
| 5.10.3 | Open Conductors | 16 |
| 5.10.4 | Grounding – Temporary Wiring | 16 |
| 5.10.5 | Defective Tools and Equipment | 17 |
| 5.10.6 | Lockout/Tagout | 17 |
| 5.11 | Ladders | 17 |
| 5.12 | Confined Spaces | 17 |
| 5.13 | Demolition | 18 |
| 5.13.1 | Existing Utilities | 18 |
| 5.13.2 | Ventilation | 18 |
| 5.14 | Hazardous Materials | 18 |
| 5.15 | Smoking Policy | 19 |
| 5.16 | Radios and Walkmans | 19 |
| 5.17 | Intoxicants | 19 |
| 5.18 | Personal Conduct | 19 |
| 5.19 | Overhead Work & Coordination | 19 |
| 5.20 | Hazard Communication | 19 |

Appendix A – Safety Violation Fine System
Appendix B – ISO 14001 – Environmental Management System
Appendix C – Skanska Hot Work Permit
Appendix D – Skanska Confined Space Entry Permit

Initial

# SKANSKA

Project Specific Safety Plan – Massachusetts Biologic Laboratories

| | | |
|---|---|---|
| 1.0 | Introduction | Skanska USA Building Inc. (Skanska) is constructing a 155,000 square foot pharmaceutical manufacturing facility. The project is being built on a twenty-two acre site located at 460 Walk Hill Street, Mattapan, Massachusetts |
| 1.1 | Major Construction Activities | Major work segments in the construction sequence for the Massachusetts Biologic Labs (MBL) are: Site work, foundations, structural steel, exterior skin, MEP work, and process piping. Major rigging work is anticipated for the installation of boilers, chillers, cooling towers, pumps, and process equipment |
| 2.0 | Special Site Requirements | |
| 2.1 | Guidelines for Access | **The utmost priority will be assigned to public safety and the minimization of disruption to the neighborhood activities.  Close coordination with Skanska shall be maintained for all deliveries.**<br><br>Pedestrian and Vehicular Protection<br>Subcontractors shall be responsible to coordinate safe vehicular and pedestrian access and materials delivery into and adjacent to the project site.  See the MBL Site Logistics Plan for more detail. |
| 2.2 | Sites and Buildings | All areas, other than construction site and access paths, are off limits. Subcontractors are responsible to secure tools, equipment and materials on a daily basis from theft or vandalism.<br><br>Questions concerning access to and from the site will be referred to the Skanska Superintendent |
| 2.3 | Site Security | All persons accessing the site will need a badge and be required to show it to security personnel daily.  Vehicular access within the site shall also be subject to Skanska discretion and coordinated with a pass system.  Posted speed limits on site must be adhered to at all times. |
| 2.4 | Environmental Issues | Skanska believes that how we care for the environment today affects both current and future generations.  We accept responsibility for doing our best, to maintain awareness, and to minimize adverse environmental impacts from construction operations.  Reference Appendix B of this contract, the project specific Environmental Management System (EMS) for further detail, and paragraph 3.1 for enforcement provisions of Skanska's ISO 14001 program. |

| Initial |
|---|
| |
| |

# SKANSKA

Project Specific Safety Plan – Massachusetts Biologic Laboratories

3.0     CM Responsibility     The safe completion of this project will take the highest priority with Skanska. Not only are all contractors obligated by law to comply with the provisions of OSHA, the State of Massachusetts, and other federal regulatory agencies, Skanska firmly believes that expediting a safe project also means expediting one that is efficient and productive as well. The following methods may be utilized to achieve this goal:

- ◆ Reviewing each contract prior to award to ensure all safety issues are properly coordinated;
- ◆ Requiring project specific safety plans from each subcontractor
- ◆ Requiring competent supervision, as it pertains to safety and that company's expertise, for each subcontractor. Skanska reserves the right to reject candidates if their qualifications are not adequate for the potential hazards;
- ◆ Conducting weekly project safety meetings, with mandatory attendance by a supervisory representative from each of the subcontractors on site;
- ◆ Implementing and enforcing a fine system for subcontractor companies and/or their employees who do not comply with all project requirements;
- ◆ Coordinating the needs of the Owner and/or their project representatives into the earliest planning phases of the project. These representatives are encouraged to participate in all safety related meetings held at this project.

3.1     Program Scope     All persons who come into the project area for any reason during construction will be required to comply with the established safety and environmental regulations of federal, state and local governments, as well as that of Skanska USA Building Inc.

**Skanska reserves the right to fine non-compliant subcontractors for serious, repeat "other than serious" violations, and owner related disciplinary concerns. Enforcement may also require the removal of offending parties from the project at Skanska's discretion.**

**See Appendix A for further clarification.**

Our goal is to accomplish this project with zero (0) lost time accidents.

The subcontractors are committed by the contract to observe and comply with all applicable safety regulations. Each subcontractor will participate in the project safety program as outlined in this Plan.

Nothing contained herein, however, shall serve to relieve the subcontractor of his responsibilities and/or obligations under the Occupational Safety and Health Act of 1970 and all additions and revisions thereto, as well as all other applicable Federal, State, and local requirements.

The Project Manger may withhold payment of any sums due to a subcontractor for failure to follow Project Safety Program policies and procedures.

| Initial |
| --- |
| |
| |

# SKANSKA

Project Specific Safety Plan – Massachusetts Biologic Laboratories

| 3.2 | Orientations | Skanska will implement a project specific safety orientation that will be mandatory for all subcontractor employees prior to their work on site. The time commitment related to orientation shall be born by all contractors at no additional cost to Skanska or the owner. The orientation will take approximately one hour. |
|-----|--------------|-------------|
| | | Each subcontractor, prior to beginning work, will be required to inform their employees of the safety requirements of the project and/or trade. Before assigning trades person to a new job, the subcontractor's immediate supervisor will explain the safety precautions that must be observed during the work. |
| 3.3 | Inspections | Skanska will make regular safety inspections to monitor subcontractor compliance with safety regulations. This will not relieve subcontractors of their obligation as defined by OSHA to regularly monitor their own activities and correct unsafe behaviors of their employees. |
| 3.4 | Correction of Violations | All supervisors (and foremen), including those of subcontractors, have the authority to stop work in the event of a safety violation and take all necessary steps to abate the condition. |
| 3.5 | Crisis Management | Skanska has developed a corporate Crisis Management Plan and will institute a plan at this project which will reflect these corporate requirements, as well as those that are specific to this project. Our project team shall work closely with the local authorities to ensure the proper emergency phone numbers are utilized and that the authorities in turn have current knowledge of project access and the location of any flammable or hazardous materials kept on site. |
| | | An evacuation plan shall be developed and provided to each subcontractor to review with their employees prior to their beginning work at this site. |
| 3.5.1 | Accident Reporting | It will be the subcontractor's responsibility to complete the State First Report of Injury for his employees and to transmit these reports immediately to the State and their insurance carrier representative. |
| | | In addition, a copy of this Report as well as an indication of what shall be done in the future to prevent re-occurrence of the incident, is to be sent to the Skanska Project Manager within 24 hours of the incident. This shall be forwarded immediately to the Skanska Corporate Safety Director for review and follow up with Owner representatives as requested. |
| | | Any accident or incident resulting in a lost-time injury, fatality, damage to property or equipment, a serious 'near miss', or the recognition of a potential hazard to health or environment will be investigated and reported upon by the subcontractor(s) involved. |

| Initial |
|---------|
| |

# SKANSKA

Project Specific Safety Plan – Massachusetts Biologic Laboratories

| | | |
|---|---|---|
| 3.5.2 | Injury Management | Upon mobilization, it is the responsibility of all subcontractor employers to provide Skanska with a list of light duty activities which will be made available to all injured workers who have been released by their physician to return to work. It is the responsibility of each employer to ensure that any employee released for restricted duty is aware that they are obligated to return to work and that their restrictions will be accommodated. |
| 3.5.3 | Accident Investigation | Accident investigation(s) must begin immediately. Skanska shall work in concert with the subcontractor(s) to assist in securing the scene to ensure that a proper investigation can be conducted. Investigation results and recommendations for preventative action shall be documented <u>within 24 hours</u> of the incident by the involved subcontractor(s). Safety and health violations must be corrected immediately.<br><br>Except when necessary to avoid further injury or to prevent an unacceptable delay in the work schedule, equipment will not be moved, or the position of items, parts, pieces, controls, etc., will not be changed until the scene is released by BSCC. |
| 3.5.4 | Injury to Persons | For accidents resulting in injury to personnel, the qualified first aid responders will assist the person(s), will stabilize their condition, and will arrange for transportation to the hospital if further treatment is required. It is the responsibility of each subcontractor to provide transportation to a hospital unless the Emergency Medical Personnel remove the injured person from the site via ambulance. |
| 3.5.5 | Major Catastrophe | The project specific crisis management plan will be implemented in the event of any emergency. |
| 3.6 | Display of Information | Skanska will display the General Safety Rules on bulletin boards and in other conspicuous locations so that subcontractor employees may have a thorough understanding of their opportunities to work without injury or accident. Traffic and pedestrian regulations, posters, scoreboards and other safety signs may also be displayed. |
| 4.0 | Subcontractor Responsibilities | The responsibilities outlined in this plan are minimum requirements and should not be considered all-inclusive by any party. All subcontractors are responsible to comply with all regulatory requirements. Skanska's project team will be receptive to any and all suggestions, concerns, and/or issues that are brought forth by the their representatives. |
| 4.1 | The Subcontractor - Safety Supervision | The subcontractor will be responsible to provide a full time, on site safety person when and if the number of field personnel exceeds 25. This safety person must be considered and designated as "competent", meeting OSHA's definition, for all activities and hazards that the subcontractor's workforce will be exposed (see also paragraph 4.3 of this safety plan). Skanska reserves the right to review the qualifications of the proposed individual and reject and/or remove any individual who does not have the qualifications or conduct consistent with OSHA's requirements. |

| Initial |
|---|
| |
| |

# SKANSKA

Project Specific Safety Plan - Massachusetts Biologic Laboratories

Subcontractors shall be required to inform all of their employees about the hazards that are specific to their trade and this project. Subcontractors shall provide evidence of this orientation at the request any Skanska representative or agent.

Reference also Paragraph 4.5 – Orientations

| | | |
|---|---|---|
| 4.2 | Supervisor Training | Subcontractors shall provide at least one supervisor who has received 30 hours of OSHA construction awareness training. |

4.3  Competent Person

Upon mobilization the subcontractor shall furnish the name(s) and qualifications of the competent person(s) who will be responsible for the safety of their workforce.

<u>Definition:</u> To qualify as the competent person, the following must exist:

> - On site for the duration of the activity,
> - Has the experience, training, and/or knowledge to recognize existing and predictable hazards, and
> - Has the authorization to take prompt corrective measures to eliminate the hazards.

If the proposed competent person at any time does not demonstrate all three qualifications, the employer must immediately identify a new competent person.

4.4  Housekeeping

Subcontractors are required to remove scrap, combustibles, food wrappings, and waste material <u>daily</u> or more frequently, if necessary, to meet housekeeping requirements. Skanska reserves the right to conduct cleanup at its discretion if contractors do not meet this obligation, and back charge the offending subcontractors accordingly.

4.5  Safety Violations

Skanska shall notify the subcontractor if violations of safety regulations are observed. Warnings to non-compliant subcontractor employees shall consist of the following:

> - Verbal warning for "Other Than Serious" (OTS) violations for first time offense
> - Written warning for the second OTS violation, or the first "Serious" violation
> - Skanska reserves the right to fine a contractor and/or remove the offending party from the site as referenced in Appendix A, which outlines Skanska's fine system. The values contained therein can be revised at the discretion of the project team on a project-by-project basis

Skanska will incorporate other owner related specific concerns into our disciplinary policy at their request.

If the subcontractor fails to take corrective action within a reasonable period of time, Skanska will do so and the cost thereof shall be charged to the offending subcontractor(s).

Skanska reserves the right to implement the following steps if contractors neglect to correct unsafe conditions or activities in a timely manner. These steps may include a notice of intent to withhold payment, a notice that corrective work will be performed by others and

| Initial |
|---------|
|         |
|         |
|         |

# SKANSKA

Project Specific Safety Plan – Massachusetts Biologic Laboratories

| | | |
|---|---|---|
| | | charged to the offending subcontractor's account, a direction to "stop work" where serious exposure is evident, and/or a demand for removal of habitual violators and/or uncooperative employees from the job site. |
| 4.6 | OSHA Penalties | Skanska reserves the right to back charge the value of any mirror citations Skanska receives in it's roll as "controlling contractor" under OHSA's Multi-Employer Citation Policy as a result of a subcontractor's cited violation of OSHA's regulations. For example, if both Skanska *and* a subcontractor are fined for the same alleged violation, and that violation was the responsibility of that subcontractor, Skanska will back charge said subcontractor for the value of the final penalty assessed to Skanska. |
| 4.7 | Emergency Responders | Subcontractors shall furnish the Safety Manager names of company employees assigned to the project who are qualified in First Aid and CPR. Each subcontractor is responsible for providing at least one employee who is currently certified in CPR and first aid for the duration of the project. |
| | | Each contractor will be responsible for maintaining a complete first-aid kit in their field office or "gang-box" suitable for the size of the crew(s). |
| 4.8 | Hazard Communication | Each subcontractor shall provide a written Hazard Communication Program. The subcontractor shall submit Material Safety Data Sheets (MSDS) for all potentially hazardous materials being used on site before they mobilize, and/or before any new product is introduced. The subcontractor shall make available his MSDS to employees. All employees shall be trained in the safe handling, use, storage, and disposal of any hazardous material s/he is in contact with. Documentation of said training shall be made available to Skanska upon request. |
| 4.9 | Tool Box Talks | Subcontractors are required to hold weekly 10-15 minute "tool box" safety meetings for all employees at the project site. Topics related to work assigned, and current safety problems should be discussed. Skanska may monitor these "tool box" meetings through personal attendance, by copy of the meeting report, and/or with a signed attendee list. This meeting documentation is required to process the monthly payment requisitions. |
| 4.10 | Potable Water | Each subcontractor shall provide an adequate quantity of potable water at the work site for their employees. |
| 4.11 | Hygienic Practices | Each subcontractor must provide an acceptable means for employees to clean their hands. For example, orange clean or hand sanitizers. |
| 4.12 | Orientation | All workers employed on this project are expected to know the safety requirements that apply to the work to which they are assigned. If it is demonstrated that this awareness is inadequate, additional training should be conducted to increase their awareness of the dangers associated with our industry and the precautions that must be taken. It will be each individual subcontractor's responsibility to provide this required training. |

Initial

# SKANSKA

Project Specific Safety Plan – Massachusetts Biologic Laboratories

Before the work begins, all subcontractor employees, including those of lower tier subcontractors, will be briefed by their respective Supervisor or Safety Representative, and will receive a safety orientation as follows

♦ Information to acquaint the employee with special hazards at the work site and traffic regulations
♦ Description of the nature of the project
♦ Hazards that may be expected during the work
♦ Safety equipment that must be used
♦ Work practices to minimize the possibility of an accident, including lifting, falls, fire and housekeeping
♦ Review of the contents of their company Safety Manual
♦ Warning that violations of safety rules may result in disciplinary action or layoff
♦ Boom boxes and radios are not allowed in construction areas
♦ There must be employee training and review of MSDS for all hazardous materials which workers may be exposed to
♦ Emergency evacuation procedures.

| 5 0 | Project Safety Rules | |
|---|---|---|

Subcontractors are responsible for providing the safeguards necessary for their employees to conduct their work. All means and methods to minimize or eliminate exposures shall be considered prior to issuing workers personal protective equipment. The items listed below shall not be considered all inclusive. Subcontractors shall be obligated to determine specific protective measures based upon their own hazard analyses.

| 5 1 | Personal Protective Equipment | |
|---|---|---|

Subcontractors shall provide all personal protective equipment, guards, welding screens, etc. needed for eliminating, minimizing, or controlling hazards during their work or to which their employees may be exposed. Identification of these hazards should be accomplished by means of a Job Hazard Analysis (JHA). This is a process by which contract packages are broken down into major activities, hazards associated with those activities are identified, and then a plan or course of action is identified to eliminate or minimize that hazard, prior to the start of Work.

| 5.1 1 | Hard Hats | |
|---|---|---|

The entire project site will be considered a hard hat area for all personnel. Hard hats are required at all times except within office areas.

| 5 1.2 | Safety Glasses | |
|---|---|---|

Appropriate eye protection (ANSI Z87), with side shields, is required to be worn in construction areas at all times. **Workers requiring prescriptive lenses must have approved safety glasses with ANSI approved side shields or safety glasses designed to fit over prescription eyewear. An ample supply of safety glasses must be available on site at all times.** Appropriate eye protection may mean safety glasses, goggles, or face shields, depending upon the exposure or hazard.

| 5.1.3 | Clothing | |
|---|---|---|

Clothing suitable for weather and your work requirements shall be worn. Torn or lose clothing, cuffs or neckwear are hazardous. Suitable approved safety footwear, in good condition, will be used. Shoes with



| Initial |
|---|
| |
| |

# SKANSKA

Project Specific Safety Plan – Massachusetts Biologic Laboratories

|   |   |   |
|---|---|---|
| | | soft uppers or soft covering over the toes and upper part of the foot are not suitable for construction work. Full shirts with sleeves are a minimum requirement. Shorts, tank tops, and sneakers are not acceptable. |
| 5.1.4 | Cutting, Chipping, Grinding | A face shield and hearing protection shall be required during these operations. If the operation or material being cut is spark producing, a fire extinguisher must be provided in the immediate area by the contractor doing the work. All combustible materials shall be removed from the vicinity, including on floors below, where applicable. |
| 5.1.5 | Respiratory Protection | All subcontractor employees are required to evaluate and provide to their employees the appropriate level of respiratory protection for each hazardous exposure. In cases where employees are required or request to wear respiratory protection (including dust masks), the employer shall provide evidence of a written respiratory protection program, exposure assessments, fit testing, and medical approvals as required by OSHA. |
| 5.1.6 | Reflective Vests | All subcontractor employees required to work in the road or in or adjacent to unprotected vehicular traffic are required to wear reflective vests or high visibility shirts (red or orange). Vests and high visibility attire are also required on site during civil activities where exposure to moving heavy equipment exists. |
| 5.2 | Fall Protection | All subcontractor employees, except those engaged in structural steel erection, exposed to falls of six feet (6) or more must be protected 100% of the time by an appropriate means. Examples include standard guardrails on open-side floors, platforms, scaffolds, or safety harnesses with two (2) shock absorbing lanyards capable of being attached to an anchorage point capable of supporting 5,000 lbs per person. *Lanyards without integral shock absorbers shall be utilized for restraint, or fall prevention, only* |
| 5.2.1 | Guarding Floor Holes | Floor holes/openings, into which persons can accidentally walk, must be guarded by either a standard railing with toe boards on all exposed sides, or a floor hole cover of standard strength and construction to withstand twice its potential intended load, that is secured against accidental displacement, and conspicuously labeled "DANGER – FLOOR HOLE". |
| | | Under no circumstance shall any subcontractor or worker remove guardrails without the express consent of Skanska and without an alternate form of personal fall protection in place. Non-compliance of this provision shall be considered 'serious' and will result in immediate disciplinary action as described in paragraph 4.3 and Appendix A. |
| 5.2.2 | Work On Roofs | <u>Roofing Contractors:</u> For roofing activities, subcontractors shall not be allowed to consider Controlled Access Zones (CAZ's) or Safety Monitor Systems (SMS's) as fall protection systems unless no other method of fall protection is proven feasible, and an exception granted by the Skanska Safety Director and project management prior to mobilization. |

Initial

# SKANSKA

Project Specific Safety Plan – Massachusetts Biologic Laboratories

Other Trades Working on Roofs: All subcontractors working on roofs must provide active fall protection at all times. *The use of warning lines as a sole means of protection is prohibited unless an exception from OSHA is granted.* Acceptable means of fall protection are active fall restraint (harness and proper anchorage points) or guardrails constructed in accordance with OSHA regulations.

| | | |
|---|---|---|
| 5.3 | Steel Erection | A project specific erection plan shall be submitted prior to project mobilization in accordance with 1926.750 - 761 Appendix A. The plan shall also address and/or any reinforcement work where existing coated steel to be welded to has tested positive for lead content. These plans shall comply with all parts of 29 CFR 1926 Subparts R and D as well as state regulations where requirements are more stringent. |

For new structural steel installation, the contractor shall furnish, install, and maintain while on site a safety cable/railing at the perimeter of all floors and at all interior floor openings. Two (2) continuous strand cables shall be installed at the outset, with turnbuckle tightening devices every 25 feet to allow for proper maintenance. In addition, double strand cable is required at the roof perimeter and at any roof openings. Anchor cable using 2" x 2" x 5/16" x 48" high angle welded to the structural steel at 8'–0" centers and such that the cable railings cannot deflect more than three (3) inches.

**Fall protection shall be provided for ALL employees (no exceptions) involved in skeletal steel erection and decking installation at heights of fifteen (15) feet or greater, for fall exposures to the in- and outside of building perimeters and openings.**

Sliding up and down columns as access to upper and/or lower working levels is prohibited.

Workers involved in miscellaneous steel or metal work (ie, stairs, slab reinforcement, ornamental metals, etc.) must comply with OSHA's six (6) foot fall protection criteria.

| | | |
|---|---|---|
| 5.4 | Crane and Pile Driver Safety | Cranes, derricks, back hoes, pile drivers and all other hoisting machinery, including the load, shall not operate within ten feet (10') of any energized electrical distribution and transmission lines, rated at 50KV or below, which have not been de-energized AND visibly ground at the point of work. **For lines rated over 50KV, refer to Occupational Safety and Health Standards for the Construction Industry 29 CFR 192.550 (a) (15) for further distance requirements. This work shall require the express consent of Skanska's Safety Director 48 hours prior to the start of the activity.** |

See also Paragraph 5.4.2 for inspection and maintenance requirements

| | | |
|---|---|---|
| 5.4.1 | Use of Suspended Personnel Platforms | Under **no circumstance** shall a suspended personnel work platform be used to gain access to elevated work areas unless: |

    ❑ The subcontractor can demonstrate that there is absolutely <u>no other way</u> to access the work area, **and**

| Initial |
|---|
| |
| |

# SKANSKA

Project Specific Safety Plan – Massachusetts Biologic Laboratories

|  |  |  |
|---|---|---|
|  |  | ☐  The Beacon Safety and Environmental Director has been involved in the pre-mobilization job hazard analysis and has reviewed and accepted all pre-lift inspection and safety meeting paperwork |
| 5.4.2 | Machinery Operations and Equipment Inspections | A thorough, annual inspection of hoisting machinery (cranes, boom trucks, pile drivers, and derricks) shall be made by a 3rd party professional inspection agency. The subcontractor must post the annual inspection certificate in the cab or operator's station of the hoisting machinery (cranes or derricks). The contractor must provide a copy of the inspection certificate and inspection report, as well as two (2) previous monthly maintenance inspection reports prior to the start of the work. |

Construction equipment and vehicles will be inspected by the subcontractor, with regularly scheduled maintenance and repair performed to keep the units in safe operating condition as required by the equipment manufacturer. Evidence of these inspections shall be provided to Skanska upon request. Operating manuals for all equipment must be in or near the machinery as required by the manufacturer.

In accordance with 1926.601, all motorized vehicles shall be equipped with audible warning devices (back up alarms).

Riding on machinery and/or equipment is strictly prohibited. Riders in trucks are to be seated, in a seat while the vehicle is moving with seat belts fastened. Employees must not be transported in the back of a pick-up truck AT ANY TIME.

The operators of equipment brought to the site must produce evidence of training or competency as required by OSHA, Massachusetts Dept of Public Safety and/or the equipment manufacturers upon request.

| 5.4.3 | Heavy Rigging | Heavy rigging for major equipment picks shall not be conducted prior to a pre-task meeting with Skanska, and an approved activity specific hazard analysis submitted 48 a minimum of hours prior to the pick. |
|---|---|---|

All rigging and hoisting equipment shall be inspected by a competent person in accordance with manufacturer, ANSI, and OSHA regulations.

| 5.5 | Fork Lift and Lull Operation | All operators of forklifts or other equipment capable of lifting over 500 lbs. or to a height of 10' must comply with OSHA's March 1, 1999 standard 1926.602 (and reference to 1910.178(1)), requiring written certification and evidence of competency in classroom and field training related to equipment operation. The state of Massachusetts requires operators to have a hoisting license from the Dept. of Public Safety. |
|---|---|---|

| 5.6 | Excavations | All excavation work shall be done in accordance with 29 CFR 1926.650-652. Subcontractors and/or tier subs conducting this work shall submit evidence and qualification of the competent person a minimum of seven (7) days prior to the commencement of the work. The competent person shall be on site at all times during excavation |
|---|---|---|

Initial

# SKANSKA

Project Specific Safety Plan – Massachusetts Biologic Laboratories

| | | |
|---|---|---|
| 5.8.2 | Flammable Storage | Fuel for motorized equipment or tools shall not be stored within a building except in approved lockers and with the express approval of the Beacon Superintendent. The storage location shall be approved and posted as directed by Skanska. Only an approved supply of flammable liquids shall be allowed within the building at any given time. |
| | | At no time shall LP-Gas be stored inside any project building or structure. |
| | | Bulk storage of flammable liquids shall be in accordance with the following: no more than 25 gal of flammable materials shall be stored inside a building and no more than 60 gal shall be stored outside without an approved fire cabinet. |
| | | At fuel or combustible material storage areas, contractors shall provide a 10B extinguisher within 50 feet of any point on perimeter of the stored material. In addition, these areas are to be identified with signs restricting access and prohibiting sources of ignition. |
| 5.8.3 | Temporary Indoor Structures | In accordance with 1926.151(b)(2), temporary buildings (ie, construction shacks or offices) within a building must be constructed to achieve a minimum 1 hour fire rating. |
| 5.9 | Compressed Gases | Welding and cutting torch set ups shall be equipped with check valves and flash back arrestors. Flash back arrestors shall be installed at the torch to prevent flame or spark from entering the hose and potentially flowing back to the regulator or cylinder. |
| | | Subcontractors shall identify all compressed gas cylinders in their control. Consult Beacon supervision for approved storage locations of compressed gas cylinders. |
| | | At the end of each workday, or when work is suspended for a substantial period of time, hazardous materials including compressed gas cylinder valves must be closed, regulators removed and properly stored. Cylinders may remain within their carrier, provided it is intended for this purpose, or otherwise firmly secured in an upright position with valve protection caps in place. Oxygen and fuel gases in storage must be separated by 20 feet or a 5 foot high barrier with a ½ hour fire rating. |
| 5.10 | Electrical Safety | |
| 5.10.1 | Responsibility | The responsibility for the installation, maintenance and testing of all electrical system components supplying power for the construction of this project, and maintenance of temporary lighting and it's components (bulbs, cages, etc.), will be in the scope of the electrical subcontractor. This scope includes all grounding references of this section and as required by the NEC and OSHA. |
| | | The responsibility for the prescribed use of all tools and equipment utilizing these electrical systems belongs to each individual subcontractor performing the work. This includes the areas of inspection, maintenance and repair of cords and tools noted under the |

Initial

# SKANSKA

Project Specific Safety Plan – Massachusetts Biologic Laboratories

Assured Equipment Grounding Program where applicable. All subcontractors are required to comply with the provisions of the electrical requirements set forth in 29 CFR 1926 and the NEC.

Subcontractors are required to notify Skanska in writing whether their electrical safety programs shall be accomplished by means of an assured grounding program or through the use of GFCIs, and indicate the name of the competent person who shall be responsible for implementing and maintaining said program on a day-to-day basis.

| | | |
|---|---|---|
| 5.10.2 | Fixed Equipment | Exposed, noncurrent carrying metal parts of fixed electrical equipment, including motors, generators, frames and tracks of electrically operated cranes, electrically driven machinery, etc., shall be grounded. |
| 5.10.3 | Open Conductors | Precautions shall be taken to ensure that any necessary open wiring is inaccessible to unauthorized personnel. All temporary power panels shall have covers installed at all times, with no missing side or top knockouts. All open or exposed breaker spaces shall be adequately covered and labeled. Temporary power panels and plug outlets shall provide adequate weather protection (caps or covers) where water infiltration is a possibility. |
| 5.10.4 | Grounding - Temporary Wiring | All 120 volt, 15 and 20 amp receptacle outlets on the site, which are not part of the permanent wiring of the building shall use ground fault circuit interrupters (GFCIs). |

All extension cords shall be for hard usage or extra hard usage as described in NEC Table 400-4.

Contractors shall string extension cords above the floors or provide protective covers to prevent damage by lift and vehicle traffic as well as tripping hazards.

Any subcontractor that requires a receptacle which needs larger than 20 amps shall coordinate this work with Skanska.

All temporary electrical plug drops shall be mounted at fixed location such that they are not allowed to be left hanging, or have strain relief installed. Further, plug boxes shall not be allowed to lay on the floor.

Temporary lighting shall be listed, labeled, or certified equipment and shall be installed and used in accordance with instructions including in the listing, labeling, or certification. Temporary stingers made from romex or other non listed materials are not allowed.

| | | |
|---|---|---|
| 5.10.5 | Defective Electrical Tools and Equipment | All electrical tools and extension cords found to be defective (example, missing or broken ground pins and exposed conductors) shall be immediately destroyed by cutting off the male plug end, or tagged out of service to prevent inadvertent usage. |

Cords with cut or frayed insulation shall be cut and taken out of service. Taped repairs are only allowable if the contractor can demonstrate that the integrity of the repair provides at least the same amount of insulating protection as the original factory assembly.

| Initial |
|---|
| |
| |

# SKANSKA

Project Specific Safety Plan – Massachusetts Biologic Laboratories

5.10.6   Lock-out/Tag-out
The work that requires shutdown of any utility or equipment shall be scheduled at least 72 hours in advance with Skanska.

Where the need for securing hazardous energy or controlling hazardous materials is required, subcontractors shall coordinate their lock-out/tag-out protocol with Skanska, who in turn shall coordinate with the appropriate representatives. Contractors shall not be allowed to work on a line or system storing hazardous energy under the protection of a tag only unless approval has been received by Skanska or the Owner. Where this is observed without authorization, the offending employee(s) shall be removed immediately from the site.

5.11   Ladders
Do not carry materials or equipment up ladders. Subcontractors are required to provide a wench or a hoisting device for materials and equipment.

Whenever possible ladders should not be used as work platforms. Do not use ladders as bearing points for planks.

Defective ladders should be taken out of service and tagged "DO NOT USE" immediately.

Keep the areas at the top and the bottom of the ladder clear at all times.

5.12   Confined Spaces
When work in confined spaces is scheduled, such as in manholes, deep excavations, shafts, plenums, pits, stainless steel tanks, etc., consideration must be given to these major known and recognized hazards:
1.   The possibility of fire or explosion, due to flammable gases, fumes, vapors, or dusts.
2.   The possibility of injury (or loss of consciousness) to workers resulting from an exposure to harmful or toxic contaminants or to oxygen deficiency.
3.   The possibility of entrapment, engulfment, or being struck by moving parts.

Skanska must be notified in advance of the entry into a space characterized as a confined space a minimum of 72 hours. The subcontractor will be responsible for providing equipment such as ventilating units, respirators, retrieval equipment, etc. and adequately trained workers, in conformance to all applicable OSHA standards. Evidence of this conformance must be provided prior to the execution of this work.

Subcontractors shall ensure any confined space entry work is coordinated with Skanska and/or owner project representatives where applicable.

5.13   Demolition
Subcontractors installing new openings in existing slabs or walls shall provide adequate fall protection for their employees and the employees of others. This work shall not be considered complete until standard guardrails are installed around or across openings at the completion of each activity.

| Initial |
| --- |
|  |

# SKANSKA

Project Specific Safety Plan – Massachusetts Biologic Laboratories

In the event that railings cannot be immediately constructed, Skanska must approve the installation of warning barricades and/or appropriate covers.

Subcontractors conducting this work shall make any and all documentation relating to OSHA regulations available upon request, including that associated with the need or assignment of respiratory protection when applicable.

| | | |
|---|---|---|
| 5.13.1 | Existing Utilities | The subcontractor shall be responsible for verifying the presence and location of existing building utilities, such as electrical services, and coordinating the demolition or tie in of these services with Skanska. |
| 5.13.2 | Ventilation | The subcontractor shall be responsible for maintaining indoor air quality at levels that are safe for employees.

If motorized equipment with combustion engines are anticipated for use during demolition of interior spaces, the subcontractor shall be responsible to monitor and document carbon monoxide (CO) levels.

Any fossil fuel burning piece of equipment and/or machinery must be ventilated adequately outside of the building, have a scrubber installed to reduce the emissions to an acceptable level or be kept out of the building. |
| 5.14 | Hazardous Materials | Skanska will forward to the contractor(s) any and all information provided by the owner or its agents pertaining to hazardous materials and existing conditions of the site. Contractors are required to provide evidence of all federal, state, and/or local licenses required to conduct the work and shall conduct all work in accordance with said regulations. |
| 5.15 | Smoking | Smoking will not be permitted in or around the perimeter of the building. Smoking is only permitted in the designated smoking trailer supplied by the Construction Manager. This will be the only place smoking can take place at the job site. Enforcement actions described in Appendix A and paragraph 4.3 shall apply.

Skanska and all of their subcontractors shall comply with any owner requirement relating to smoke free environments. |
| 5.16 | Radios and Walkmans | The use of radios, tape players, or "walkman" types is prohibited. They are proven safety hazards. |
| 5.17 | Intoxicants | Drinking, being under the influence of, and/or the possession of intoxicants on the job site property is forbidden. The use of narcotics, unless authorized by a physician is forbidden. Violation of the above means immediate dismissal. |
| 5.18 | Personal Conduct | Practical jokes, horseplay, scuffling, wrestling or fighting are prohibited. Utmost respect and courtesy will be given to outside personnel and pedestrians at all times. Any violation of this policy will mean immediate dismissal from the project site. |

Initial

# SKANSKA

Project Specific Safety Plan – Massachusetts Biologic Laboratories

5 19    Overhead Work & Coordination

No subcontractor is to allow their employees to work under overhead loads or any other overhead work being performed without proper overhead protection. Subcontractors must coordinate overhead work activities with Skanska before working in areas that create potential overhead hazards. It is the responsibility of the subcontractor who is creating the hazard to provide overhead protection for any and all effected parties.

5 20    Hazard Communication

It shall be the responsibility of Skanska and all subcontractors to have a written Hazard Communication Program in effect and available for review by the Project Manager. If the subcontractor brings hazardous chemicals onto the construction site, a Material Safety Data Sheet (MSDS) must be available at the site for Skanska's review prior to its use. The subcontractor is responsible for the care, use, storage, and proper disposal of chemical(s) and hazardous material(s) that they have at the site.

| Initial |
|---------|
|         |
|         |

# SKANSKA USA BUILDING INC.
## Project Safety Rules and Regulations

## Appendix A - Safety Violation Fines

| SAFETY VIOLATION | 1ST OFFENSE | 2ND OFFENSE | 3rd OFFENSE |
|---|---|---|---|
| Accident Report Not Submitted in 24 hrs | $250 | $500 | Discretion of project team for all violations or offenses |
| Alcohol or Drug Abuse | $1000 and/or Removal | N/A | |
| Competent Person Not on Site | $1000 and/or Removal | $2,000 | |
| Confined Space Entry | $1000 and/or Removal | $2,000 | |
| Electrical Cords Defective | $250 | $500 | |
| Endangerment of Life and Limb to Others | $1000 and/or Removal | N/A | |
| Equipment Violation | $250 | $500 | |
| Eye Protection Missing | $250 | $500 | |
| Failure to Protect Public | $1,000 | $2,000 | |
| Fall Protection Not Present | $1,000 | $2,000 | |
| Fighting or Horseplay | $250 and/or Removal | $500 | |
| Fire Watch Missing | $250 | $500 | |
| Fire Extinguisher Missing | $250 | $500 | |
| Footwear Not Adequate | $250 | $500 | |
| Gas Cylinders Stored Incorrectly/Unlabeled | $250 | $500 | |
| General Duty Violation | $250 | $500 | |
| GFCI Not Intact at Panel | $1,000 | $2,000 | |
| Guardrail Removal | $1,000 | $2,000 | |
| Hard Hat Missing | $250 | $500 | |
| Hearing Protection Missing | $250 | $500 | |
| Hot Work Permit Missing (where applicable) | $500 | $1,000 | |
| Housekeeping Poor | $500 | $1,000 | |
| ISO 14001 Non-conformance (violation) | $250 | $500 | |
| Ladder Defective | $250 | $500 | |
| Ladder Use Improper | $250 | $500 | |
| Ladder Not Secured | $250 | $500 | |
| LO/TO Violation | $1,000 and/or Removal | $2,000 | |
| Material Storage Improper | $250 | $500 | |
| MSDS Missing | $250 | $500 | |
| Open Hole (Falling Object Protection) | $250 | $500 | |
| Orientation Not Attended | $500 | $1,000 | |
| Defective Power Tool (Missing guard, etc ) | $250 | $500 | |
| Scaffold Violation | $250 | $500 | |
| Smoking in Non-Designated Area | $250 | $500 | |
| Tool Box Meeting Not Held | $250 | $500 | |
| Training Inadequate, Worker | $250 | $500 | |
| Training Inadequate, Supervisor | $500 | $1,000 | |
| Training Inadequate, Competent Person | $1000 and/or Removal | $2,000 | |
| Trench Protection Inadequate | $1,000 and/or Removal | $2,000 | |
| Trench Violations, Misc. | $250 | $500 | |
| Unauthorized Entry/Access to Owner Areas | $500 | $1,000 and/or Removal | |
| Uncertified Lifting Device | $500 | $1,000 | |
| Unlicensed Operator | $1,000 and/or Removal | $2,000 | |
| Urinating/Defecating in Building | $1,000 and/or Removal | $2,000 | |
| Written HazComm Program Missing | $500 | $1,000 | |

Initial

# SKANSKA USA BUILDING INC.

## ISO 14001

### ENVIRONMENTAL MANAGEMENT SYSTEM

#### SUBCONTRACTOR REQUIREMENTS

| Initial |
|---------|
|  |
|  |

Skanska USA Building Inc is committed to run all operations in a manner that is protective of human health and the environment. Skanska has implemented on each of its projects an environmental management system in compliance with the International Standards Organization Standard 14001 (ISO 14001). The Subcontractor shall be responsible to abide by requirements of the Skanska Environmental Policy

Working with companies like yours as our partners, Skanska has always sought to be a leader in our industry and a good neighbor in the communities where we work. In recent years we're sure that you have noticed, as we have, an increased concern for global and local environmental issues. While we have always tried to be environmentally sensitive, we believe we can do more.

In this spirit, we have made a commitment to implement an Environmental Management System (EMS) based on the ISO 14001 environmental standard. This standard was developed by the International Organization of Standardization, the same organization that developed the well-known ISO 9000 quality standards. Our plan has been registered with an accredited ISO 14001 Registrar. In September 1999 Skanska and the Skanska USA companies became the first construction group in the United States to be registered ISO 14001 companies.

ISO 14001 relies on a common sense, business approach to environmental issues. To begin with, all of us can make a difference by simply looking for cost effective, environmentally friendly options for the ways in which we provide goods and services. By thinking about environmental issues as business issues, we will be looking for ways to streamline processes, reduce waste, minimize our legal liabilities and save money.

If one of our building partners is providing a product that causes a significant environmental aspect, we will work with that partner to determine if there is a cost-effective option that will minimize the environmental impact of that product. In addition, when one of our building partners is supplying goods or services that unavoidably impact the environment, we will advise that partner of applicable laws as well as procedures and requirements to minimize, control, or if possible, eliminate the environmental impact.

Our intention in making this commitment is to make a positive influence on our environment for future generations. We hope you share our interest in this endeavor and look forward to your cooperation and participation. Any feedback you have is welcomed.

## What is an Environmental Management System (EMS)?

EMS is an abbreviation for Environmental Management System. Which is the core of the ISO 14001 standard. An EMS is a company wide set of standards and procedures through which an organization monitors and continually improves its environmental performance on every business level. In short an EMS is a commitment by an organization to improve its environmental performance through self-regulation verified by documentation. There

Initial

are no prescribed requirements other than those, which the company binds itself to uphold

## WHAT DOES THIS MEAN TO OUR SUBCONTRACTORS

Construction activities that are determined to be significant aspect must be managed on this project.

An aspect is an activity that can impact the environment. **Significant Aspects** are those environmental aspects that have regulatory requirements, are owner required, a solid waste stream that can be profitably recycled or reused, or those activities that are environmentally beneficial and not cost prohibitive.

If you are involved in a significant aspect Skanska will review the following with you:

♦  The laws and /or permits that pertain to your work activities.
♦  Reporting and or monitoring requirements related to that significant aspect
♦  The emergency procedures associated with that activity
♦  The roles and responsibilities in achieving conformance with our EMS
♦  The consequences to the environment for not following specified procedures
♦  Any special training needed for employees

In order to prevent and to provide for abatement and control of environmental pollution arising from the construction activities of the Subcontractor and his subcontractors in the performance of this Contract, they shall comply with applicable federal, state, and local laws, and regulations concerning environmental pollution control and abatement as well as the specific requirements stated elsewhere in the Contract Documents.

Items having apparent historical or archaeological interest which are discovered in the course of construction activities shall be carefully preserved.  The Subcontractor shall leave the archaeological find undisturbed and shall immediately report the find to Skanska so that the proper authorities may be notified.

No Subcontractor shall pollute water resources with fuels, oils, acids or any other potentially hazardous materials.  It is the responsibility of each Subcontractor to investigate and comply with applicable federal, state, county, and municipal laws concerning pollution of rivers, streams, or any other sensitive ecological areas. Work under this Contract shall be performed in such a manner that objectionable conditions will not be created in water resources through or adjacent to the project areas.

> Spillages:  Throughout the duration of the Project, special measures shall be taken to prevent chemicals, fuels, oils, grease, paints, waste washings, herbicides and insecticides, and cement from entering water resources. Subcontractors having hazardous materials on site shall be responsible to have on site spill clean up kits of adequate size to clean up a worst-case spillage.

Initial

Disposal  All subcontractors and his subcontractors working with or bringing onto the site any waste materials containing potentially hazardous materials are responsible for the proper disposal of these materials  The contractor is required to remove all residual materials and containers from the project site  Left over materials and waste shall not be disposed of in project dumpsters without written authorization from Skanska. If waste material is dumped in unauthorized areas, the Subcontractor shall remove the material and restore the area to the condition of the adjacent undisturbed area.  If necessary, contaminated ground shall be excavated, disposed of as directed by the owner or Skanska, and replaced with suitable fill material, compacted and finished with topsoil, at the expense of the Subcontractor

## SIGNIFICANT ASPECT SUMMARY

### Erosion/Sediment Control

☐ Pay attention to the sediment control plan procedures: If silt control measures are damaged report it to the Skanska superintendent.
☐ If you see silt running beyond the established controls report it immediately.
☐ Do not dump or discharge anything to sewers or catch basin without permission for Skanska.
☐ Wash out of concrete trucks only in designated areas where erosion control is in place.

### Machinery and Equipment/Fuel Storage and Delivery

☐ Be sure to fuel equipment away from catch basins drains and any other sensitive ecological habitats.
☐ All fuel must be stored in a designated location check with the Skanska Superintendent.
☐ All storage tanks and fuel cans stored on site must be appropriately labeled and must be stored with secondary containment.
☐ If you observe a piece of equipment leaking oil, fluids, report it immediately to the Skanska Superintendent, and fix it immediately.
☐ All contractors with equipment working on site must have available a spill kit to respond and contain spills. All spills must be reported to Skanska.

### Hazardous Materials

☐ Do not work with, handle, or dispose of any hazardous materials without proper Hazard Communication Training.
☐ Do not throw any hazardous materials or hazardous material containers (solvent cans, paint cans, NiCad batteries, fluorescent bulbs, PCB ballast) in to general debris dumpsters.
☐ Know the emergency procedures in the event of a spill or release of a hazardous material.

Initial

- Use controls to minimize the generation of airborne dust generated by operations. This includes utilizing wet saws or wetting agents during site work and or concrete demolition activities
- Seek to use materials that may be less hazardous or environmentally friendly.

## Endangered Species/Wetlands

- If the project has designated protective areas Skanska will instruct you on the procedures to follow to protect these sensitive areas. Follow all posted signs, fences and other physical barricades established.
- Follow the project guidelines for protection of trees or other sensitive areas if present
- Follow all stipulations established on the wetlands permit if applicable.

## Resource and Waste Management

- Follow the projects recycling programs established. We strive to reduce our waste, reuse materials where possible and to recycle.
- Skanska is committed to the prevention of pollution and will do so by striving to reduce the amount of construction debris that winds up in the landfill.

## Noise/Vibration

- Do not start or operate any equipment before designated start times as required by local ordinances or the owner.
- Be sure muffling equipment is in place on equipment and is properly functioning.
- Turn off all unnecessary idling equipment
- Notify Skanska of any operations that may create excessive or impact noise or vibrations.

## ELECTIVE ASPECTS

### Water Conservation

- Fix and repair all leaking equipment immediately. If equipment belongs to others report it to Skanska immediately.
- Shut off all water supply when not in use.

### Energy Conservation

- Shut off all lights not required for safety or security of the site.
- Shut off computers, generators and other electrically powered equipment when not in use.

Initial



**Environmental Policy Statement ISO 14001**

It is the policy of Skanska to be a leader in the construction industry and at the same time protect employees, customers, and the environment. This policy is applicable to all Skanska projects and activities and is in line with the Skanska AB environmental philosophy that is incorporated here by reference. Skanska senior management has given effect to this policy by implementing environmental management systems (EMS) that will be continually improved as a framework to achieve the following results:



**Regulatory Compliance**
We will identify, evaluate, and comply with all applicable federal, state and local environmental laws, regulations, and other requirements at each location where we conduct business.

**Prevention of Pollution**
We will seek, first to cost effectively avoid the creation of pollution and waste from our projects and operations, and second, to manage remaining waste through safe and responsible methods.

**Conservation**
We will strive to diminish our consumption of natural resources through cost-effective use of recycled and reused materials and conservation of energy and water.

**Emissions and Effluents**
We will work to diminish our emissions and effluents by employing cost-effective operational controls, by selecting appropriate building materials, and by implementing corrective and preventative actions whenever necessary.

**Ecology and Habitat**
We will protect habitats, wetlands and other sensitive ecological resources in accordance with applicable regulations and local ordinances.

We will communicate this policy to all employees, make it available to the public, and establish procedures to receive and respond to inquiries from external interested parties. We will also alert potentially affected individuals and authorities of any environmental incidents in a timely and effective manner

**Communication**
Skanska senior management believes that how we care for the environment today affects both current and future generations. We accept responsibility for doing our best, to maintain awareness, and to minimize adverse environmental impacts from operations. This is beneficial for both the environment in which our families and our neighbors live and for generating new opportunities for our business.

Each subcontractor shall conform to Skanska's Environmental Policy and will comply with all requirements of ISO 14001 as incorporated into the project subcontract documents

Michael F. McNally

President & CEO
Skanska USA Building Inc.
New England Division

**SKANSKA**



National Environmental PerformanceTrack

# SKANSKA

## HOT WORK PERMIT

This permit must be used for any work activity that generates heat, sparks or slag.

This permit is issued and valid only for the job described below and for the dates(s) and time(s) specified. This permit must be posted at the applicable work area.

Date: _____    Start Time: _____    End Time: _____

Project/Building _____    Floor: _____

Type of Work: _____

Contractor(s) Performing the Work: _____

Contractor Supervisor Name: _____    Contact #: _____

Skanska Supervisor Name: _____    Contact #: _____

Emergency Phone # in the Event of Fire: _____

Name of Fire Watch: _____
(Fire watch must remain in place a minimum of 30 min. after completed work)

Location of Nearest Phone and/or Pull Station: _____

## SPECIAL PRECAUTIONS

_____ Sprinkler protection system active.

_____ Fire alarm system active.

_____ The contractor has provided the proper type of fire extinguisher, fully charged.

_____ A Fire Watch is provided that can see all hot work activities.

_____ Flammable and combustible materials removed in a 35' radius around work area.

_____ Floor openings within 50' of work area are covered.

_____ Cutting and welding equipment is in good condition.

_____ Is Hot Work in a confined space?  If yes, STOP WORK and obtain a Confined Space Entry Permit.

_____ Is ventilation adequate?

_____ There are no hazardous materials or materials with flammable vapors in the area.

_____ Adequate escape routes are provided for workers and people occupying the building.

_____ Surfaces to be cut or welded have been tested for lead content. (Yes or N/A)

_____ Adequate fire resistant blankets and/or welding screens have been provided.

| Initial |
|---------|
|         |
|         |

Appendix C

# SKANSKA

## CONFINED SPACE ENTRY PERMIT

| | |
|---|---|
| Description of Work Activity and Confined Space | |
| Name of Competent Person and Employer | Potential Hazards Related to Entry |
| Is this the Entry Supervisor?    Yes _____    No _____<br>If no, Name of Entry Supervisor | |
| Location of Confined Space | Time Permit Issued | Time Permit Expires |
| Date _____<br>Name of Entrant(s) | | Name of Attendant(s) |

* A new permit is required (at a minimum) daily

## PRE-ENTRY REQUIREMENTS

1  Has a pre-job safety meeting been held with the Skanska Superintendent and affected parties? (topics to include hazards, testing, emergency preparedness, communication procedures, required PPE, etc )      **YES**

2  Is the Job Hazard Analysis (JHA) attached?      **YES    NO**

3  Are additional permits needed (Hot work, LO/TO, owner-required permits,etc )      **YES    NO    N/A**

4  Is Lock out/de-engerization of energy sources (electrical, mechanical, hydraulic, pneumatic) needed?
   If yes, identify LO/TO points_____      **YES    NO    N/A**

5  Does the space need to be isolated, lines disconnected, or drained/vented?      **YES    NO    N/A**

6  Is mechanical venting/purging required?
   If yes, what equipment will be used?_____      **YES    NO    N/A**

7  Are barricades in place?      **YES    NO    N/A**

8  Are explosion proof lighting and non-sparking tools needed?      **YES    NO    N/A**

9  Is retrieval equipment immediately available?
   Types of equipment provided _____      **YES    NO    N/A**

10. Who will be conducting rescue operations if entry is needed?
   _____
   Has this entity been notified of the time of the entry, communications protocol, emergency procedures, and activities related to the job?      **YES**

11  Was the space tested for $O_2$, LEL, and toxic contaminants?      **YES**

12. What type of PPE is required to safely conduct the work? _____

13. Communication protocol during entry:   Attendant and Entrant(s) _____
   Attendant and Emergency
   Response Personnel _____

14  Sampling equipment used.

| EQUIPMENT TYPE | SERIAL # | CALIBRATION DATE |
|---|---|---|
| | | |

15. Contractor has submitted a written confined space entry program and training records related to this entry:      **YES    NO**

| Initial |
|---|
| |

Appendix D

## EXHIBIT H

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

### THE FOLLOWING WORK IS INCLUDED IN THIS SUBCONTRACT REVISION

# LIEN BOND

## KNOW ALL MEN BY THESE PRESENTS,

Bond No.: _____

That we _____ of _____ in the County of _____ and Commonwealth of Massachusetts, as principal, and _____ a surety company organized under the laws of _____ and authorized to do business in the Commonwealth as a surety company, are holden and stand firmly bound and obliged unto _____ Register of Deeds for the _____ District, County of _____, in the principal sum of _____ Dollars ($_____) to be paid unto said Register and his successors in said office, to which payment, well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, said principal is interested in the erection, alteration, repair or removal of a building or structure on a certain lot of land situated within the _____ Registry District in the Commonwealth, bounded and described as follows:

(Insert description)

and desires to free said land from liens for all labor and all labor and materials entitled to lien protection under chapter 254 and amendments thereto;

NOW, THEREFORE, the condition of this obligation is such that if the Principal shall pay for all labor and for all labor and materials entitled to lien protection under chapter 254 and amendments thereto under the contract referred to in the Certificate in this bond, irrespective of any agreement made between him and the owner or any other persons now interested or who may hereinafter be interested therein, then the above written obligation shall be null and void, otherwise to remain in full force and effect.

This bond is made for the use and benefit of all persons entitled to file the documents for lien protection as provided in Massachusetts General Laws, chapter 254 and they and each of them are hereby made Obligees hereunder, and in case of the failure of the principal to carry out the provisions of this bond made for their use and benefit they and each of them may sue hereon in their own name.

Signed, sealed and delivered this ___ day of _____, 20___.

```
                                        _____
                                        Principal
                                        By _____


                                        _____
                                        Surety
                                        By _____
```

| Initial |
| --- |
|  |

## EXHIBIT H

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

### THE FOLLOWING WORK IS INCLUDED IN THIS SUBCONTRACT REVISION

# LIEN BOND

### CERTIFICATE

_____, principal on the above bond, hereby certify that the (estimated) contract price for the proposed work to be performed on the land described in the above bond under a written contract between _____ and _____ dated _____, _____, 20___, is _____ Dollars ($_____).

[NAME OF COMPANY]

BY: _____
        (Name and Title

### COMMONWEALTH OF MASSACHUSETTS

[County], ss               Date: _____

Then personally appeared the above-named _____, to me known, who being duly sworn did say that he/she is the _____ of _____, that the foregoing Lien Bond was signed on behalf of said corporation and by authority of said corporation, and that said instrument was acknowledged to be the free act and deed of _____.

_____
Notary Public

My commission expires:

Initial

## EXHIBIT I

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

# PAYMENT BOND

Bond No.: _____

## KNOW ALL MEN BY THESE PRESENTS,

That we, [SUBCONTRACTOR NAME], a corporation—partnership—individual duly organized under the laws of _____ [STATE ORGANIZED UNDER], having a usual place of business in _____ [ADDRESS OF SUBCONTRACTOR], as Principal, and _____ [SURETY NAME], a corporation organized under the laws of the State of _____ [STATE], as Surety, are holden and stand firmly bound and obligated unto SKANSKA USA BUILDING INC., its successors and assigns, as obligee, hereinafter called Obligee, in the sum of _____ [WRITTEN WORDS] and 00/100 Dollars ($0,000.00) lawful money of the United States of America, to and for the true payment whereof we bind ourselves, and each of us, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, the said Principal has by means of a written subcontract agreement (the "Agreement" or "subcontract") dated [SUBCONTRACT DATE] entered into a contract with Obligee for certain work (the "Work") in connection with MASSACHUSETTS BIOLOGIC LABORATORIES under said agreement, which Agreement is incorporated herein by reference.

NOW, THE CONDITION of this obligation is such that if the said Principal and his subcontractors shall promptly make payment to all claimants as hereinafter defined in the prosecution of the Work provided for in the said Agreement, and if the said Principal shall indemnify and save harmless the said Obligee against any expenditure or loss, including counsel fees, arising from claims asserted against the said Obligee, or against the real estate involved in the Agreement, by those claiming to have supplied labor and materials to said Principal or his subcontractors in connection with the said Work, then this obligation shall be void; otherwise it shall remain in full force and effect.

(1)    A claimant is defined as one having a direct written contract with the Principal or a subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the Agreement.

(2)    The above named Principal and Surety hereby jointly and severally agree with the Obligee that every claimant as herein defined, who has not been paid in full before the expiration of ninety (90) days after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, provided that any such suit or action shall be commenced hereunder by any claimant within one (1) year of the date on which such claimant last provided such work, labor or materials.

The Surety, for value received, hereby stipulates and agrees that no extension of time, or change in, alteration or addition to, the terms of the Agreement, or to the Work to be performed thereunder, or the specifications accompanying the same, shall in any way affect the Surety's obligations on this Bond, and the Surety does hereby waive notice of any such extension of time, change, alterations or additions to the terms of the Agreement or the Work or to the specifications.

IN WITNESS WHEREOF, we have set our hands and seals to this Bond this _____ day of _____, 20__.

| Initial |
|---------|
|         |

## PAYMENT BOND

_____    PRINCIPAL _____ (Seal)
Witness

_____    SURETY _____ (Seal)
Witness

By _____

Initial

## EXHIBIT I

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

# PERFORMANCE BOND

Bond No. _____

## KNOW ALL MEN BY THESE PRESENTS,

That we, _____ [SUBCONTRACTOR NAME], a corporation—partnership—individual duly organized under the laws of _____ [STATE ORGANIZED UNDER], having a usual place of business in _____ [ADDRESS OF SUBCONTRACTOR], as Principal, and _____ [SURETY NAME], a corporation organized under the laws of the State of _____ [STATE], as Surety, are holden and stand firmly bound and obligated unto SKANSKA USA BUILDING INC., its successors and assigns, in the sum of _____ [WRITTEN WORDS] and 00/100 Dollars ($0,000.00) lawful money of the United States of America, to and for the true payment whereof we bind ourselves, and each of us, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, the said Principal has by means of a written agreement (the "Agreement" or "subcontract") dated [SUBCONTRACT DATE] entered into a contract with Obligee for certain work (the "Work") in connection with **Massachusetts Biologic Laboratories** under said agreement, which Agreement is incorporated herein by reference.

NOW, THE CONDITION of this obligation is such that if the said Principal shall well and truly keep and perform all the agreements, terms and conditions in the Agreement set forth and specified to be by said Principal kept and performed, and shall well and truly indemnify and save harmless the said Obligee against all counsel fees paid or incurred by said Obligee as a result of a breach of any condition of the Agreement or this Bond, and against all claims and suits for damage to person or property arising from carelessness or want of due care, or any act or omission on the part of said Principal during the performance of the Agreement, then this obligation shall be void, otherwise it shall remain in full force and effect.

Whenever the Principal shall be, and declared by the Obligee to be in default under the Agreement, the Obligee having performed its obligations thereunder, the Surety shall, if requested in writing by Obligee, within fourteen (14) days of such request, notify Obligee of the corrective actions to be taken by the Surety and shall commence such actions as is necessary to complete the Agreement, as follows:

(1)     The Surety may promptly remedy the default, subject to the provisions of paragraph 3 herein; or

(2)     The Obligee, after reasonable notice to the Surety may, or the Surety upon demand of Obligee may arrange for the performance of Principal's obligations under the Agreement, subject to the provisions of paragraph 3 herein;

(3)     The balance of the subcontract price, as defined below, shall be credited against the reasonable cost of completing performance of the Agreement. If completed by the Obligee, and the reasonable cost exceeds the balance of the subcontract price, the Surety shall pay to the Obligee such excess, subject to the limit of the penal sum of this Bond. If the Surety arranges completion or remedies the default, that portion of the balance of the subcontract price as may be required to complete the Agreement or remedy the default and to reimburse the Surety for its outlays shall be paid to the Surety at the times and in the manner as said sums would have been payable to Principal had there been no default under the Agreement. The term "balance of the subcontract price" as used in this paragraph shall mean the total amount payable by Obligee to Principal under the Agreement and any amendments thereto, less the amounts heretofore properly paid by Obligee under the Agreement.

The Surety, for value received, hereby stipulates and agrees that no extension of time, or change in, alteration or addition to, the terms of the Agreement, or to the Work to be performed thereunder, or the specifications accompanying the same, shall in any way affect the Surety's obligations under this Bond, and the Surety does

| Initial |
| --- |
|  |
|  |

# PERFORMANCE BOND

hereby waive notice of any such extension of time, change in, alterations or additions to the terms of the Agreement or the Work or to the specifications.

IN WITNESS WHEREOF, we have set our hands and seals to this Bond this _____ day of
_____, 20___.

_____          PRINCIPAL  _____ (Seal)
Witness

_____          SURETY     _____ (Seal)
Witness

                                         By. _____

| Initial |
|---------|
|         |
|         |

<u>EXHIBIT J</u>

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford
Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 –
ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

# PROJECT SPECIFIC SITE LOGISTICS OVERVIEW

# SKANSKA

# MASSACHUSETTS BIOLOGIC LABORATORIES

# MATTAPAN, MA

Initial

**December 27, 2002**

# SKANSKA

Site Logistics Overview

Massachusetts Biologic Laboratories

Massachusetts Biologic Laboratories

The site logistics plan shown in this project procedure manual will be used as a guide for the project site coordination, access, storage, traffic flow patters, head count areas, trailer locations and general construction information pertaining to the exterior of the building project. This logistics plan will be a living-growing document that could change as construction progresses. In the event that any information needs to be changed the plan will be revised showing the new information and distributed accordingly.

### Entrance to the site:

The entrance to the Mass Biologics construction site will be an immediate right or left hand turn off Walk Hill Street. This will be the only entrance to the building site for all personnel.

### Deliveries:

The truck route and deliveries to the project will be of Morton Street. Morton Street is the main road that is to the North of the project. After turning onto West Main Street from Morton, trucks will follow the signs to the loading dock and delivery area. All drivers must check in with security and let them know whom they are there to see. Security will call one of the Skanska superintendents and schedule the unloading of materials and equipment.

### Guard Shack/Security:

During the hours of construction a guard will be positioned in the guard shack to check all vehicles entering the site for a construction personnel badge. This badge must be shown in order to gain access to the construction site. The badge will also have to visible for all persons working on the site for the duration of the day.

### Security/Construction Fence:

There will be a Site Security Construction fence installed around all areas where construction activities will be taking place. There will be two (2) lockable gates intergrated into this fence. One will be at the connector easement on the west side of the site and the other will be located at the guard shack on West Main St. just after you make the turn off Walk Hill Street. This Fence will be maintained for the duration of the project. Anyone needing access through the gate must make sure it is replaced at the end of the shift.

### Trade Parking:

All contractor trades will park in the designated parking area on the south side of the site. There will be no parking including company trucks and vehicles along the roads, storage areas, building footprint, etc. Parking passes will be handed to all construction personnel to be displayed on your vehicle.

### Contractor Break Trailer:

This project for Mass Bio has a large amount of clean room space. It will have to approved by the FDA before they can sell their product. Because of this, there will be no eating in the building or around the site; the contractors will have a designated break trailer. This trailer will be used for all break and lunch time activities.

| Initial |
| --- |
| |
| |

Massachusetts Biologic Laboratories                                      Site Logistics Overview

### Bathroom Facilities:

There will be portable bathroom facilities located in different areas of the project. As the man power increases the number of facilities will also increase. The facilities will be cleaned on a regular basis and will also have a hand sanitizing system in them.

### Wash Trailer:

There will be no bathroom facilities with running water so a wash trailer will be installed next to the break trailer with potable water that can be used to wash up.

### Smoking Trailer:

This project for Mass Bio has a large amount of clean room space. It will have to approved by the FDA before they can sell their product. Because of this, there will be no Smoking in the building or around the site; the contractors will have a designated trailer in which they can smoke.

### Skanska/Arch/Eng./Owners Trailers:

This area will be where the Construction Manager has the offices set up for all the on site construction management personnel. This will include the Project Managers, Superintendents, Project Engineers, Document Control, Engineers, Architects, and possibly MBL.

### Subcontractor Trailers:

This area will be where the subcontractors for the project set up their office space. The project manager and foreman will have offices in these trailers.

### Parking for Trailer Residents:

This is where the people who are working in the trailer complex can park. It will be only for those people and a separate parking permit will be issued in order to gain access into this parking area. Subcontractors can only park one of their company vehicles along side their trailers.

### Dumpster Locations:

There will be (2) areas on the site where dumpsters will be placed in order to remove construction trash. Refer the site logistics plan for these locations. This project will be observing some new ISO 14001 standards and recycling of construction materials will be practiced. The dumpsters in these (2) areas will be clearly identified as to what kind of material can be thrown into them.

### Emergency Head Count Area:

This area will be used for a meeting place for all subcontractor personnel in the event of some type of site emergency. The Emergency Evacuation Plan is detailed in our project safety manual. The site logistics plan only shows the area of congregation.

### Staging and Truck Un-Load Area:

This area is designated for the receipt of equipment and materials. It is not to be used as a storage area but more for a place to get trucks un-loaded and stage materials after they have been un-loaded or materials that are about to be placed in the building.

| Initial |
|---------|
|         |
|         |

Massachusetts Biologic Laboratories                                    Site Logistics Overview

## Contractor Storage:

This area is used for a storage space for the subcontractors. There will be storage containers in this area for equipment and or material that cannot get wet. Each subcontractor will get a designated space that they can use for the duration of the project for storage

## Trade Access:

From the trades parking there will be a walkway that will lead to the building site. The contractors are to use this access when going to and leaving the construction project.

This construction site has a lot of sensitive areas surrounding the project. The Audubon owns a lot of the buiting property and maintains this property as an environmental sanctuary. It is very important that everyone working on this project follow the instructions on the site logistic plan as well as the site rules and regulations.

| Initial |
|---------|
|         |
|         |

(Truck Delivery Rou



Fence

Parking for
Trailer
People

Skanska
Trailers

Sub
Trailers

Trade
Break Trailer

Smoking
Trailer

MBL
Trailers

Site Entrance

## EXHIBIT K - SCHEDULE

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 - ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

- Refer to attached Schedule (2 Pages) Run Date 6/17/03.

Initial

## STRUCTION MANAGEMENT
### ing Contract Procurement

| ID | Description | Dur | Early Start | Early Finish |
|---|---|---|---|---|
| 1190 | Roofing-Bid Package (Construction) | 0 | 10JUN03A | 16JUN03A |
| 1195 | Roofing-Issue for Bids | 0 | 17JUN03A | 17JUN03A |
| 1200 | Roofing - Bid Period | 0 | 18JUN03A | 30JUN03 |
| 1210 | Roofing-Bid Eval/Nego/Recomm/Approve | 6 | 18JUN03A | 00JUL03 |
| 1215 | Roofing-Award PO | 5 | 09JUL03 | 09JUL03 |
| 1225 | Roofing-Contractor Submittals | 1 | 10JUL03 | 09JUL03 |
| 1230 | Roofing-Rvw & Appr Submittals | 10 | 10JUL03 | 23JUL03 |
| 1235 | Roofing-Contractor Procure Initial Materials | 10 | 24JUL03 | 06AUG03 |
| 1220 | Roofing-Start Mobilization | 20 | 07AUG03 | 04SEP03 |
| | | 1 | | 05SEP03 |

**1 Roofing**

| ID | Description | Dur | Early Start | Early Finish |
|---|---|---|---|---|
| 300 | Install Membrane Roofing - Area 1 | 7 | 07OCT03 | 16OCT03 |
| 000 | Install Roof Flashings - Area 1 | 5 | 17OCT03 | 23OCT03 |

**2 MAB**

| 500 | Install Membrane Roofing - Area 2 MAB | 5 | 23SEP03 | 29SEP03 |
|---|---|---|---|---|
| 200 | Install Roof Flashings - Area 2 MAB | 5 | 30SEP03 | 06OCT03 |

**2 Fill/Finsb**

| 400 | Install Membrane Roofing - Area 2 Fill/Finish | 5 | 30SEP03 | 06OCT03 |
|---|---|---|---|---|
| 100 | Install Roof Flashings - Area 2 Fill/Finish | 5 | 07OCT03 | 14OCT03 |

**3 Roofing**

| 000 | Install Membrane Roofing - Area 3 | 5 | 17OCT03 | 23OCT03 |
|---|---|---|---|---|
| 100 | Install Roof Flashings - Area 3 | 5 | 24OCT03 | 30OCT03 |

**Roofing 4**

| 400 | Install Membrane Roofing - Area 4 | 10 | 09SEP03 | 22SEP03 |
|---|---|---|---|---|
| 100 | Install Roof Flashings - Area 4 | 5 | 23SEP03 | 29SEP03 |

MASSACHUSETTS BIOLOGIC LABORATORIES
PROJECT: MHL @ MATTAPAN
4/23/03 SCHEDULE UPDATE
ROOFING SCHEDULE

Prepared by Skanska Science & Technology

| Revision | Checked/Approved |
|---|---|
| Date | |

© Primavera Systems, Inc.

| | | | | |
|---|---|---|---|---|
| Roofing | | | | |
| Install Membrane Roofing - 2nd Floor | | 10 | 03OCT03 | 17OCT03 |
| Install Roof Flashings - 2nd Floor | | 10 | 20OCT03 | 31OCT03 |
| Install Membrane Roofing - Penthouse | | 15 | 12SEP01 | 02OCT03 |
| Install Roof Flashings - Penthouse | | 10 | 03OCT03 | 17OCT03 |
| Mobilize Roofing | | 2 | 05SEP03 | 08SEP03 |

Install Membrane Roofing - 2nd Floor
Install Roof Flashings - 2nd Floor
Install Membrane Roofing - Penthouse
Install Roof Flashings - Penthouse
Mobilize Roofing

MASSACHUSETTS BIOLOGIC LABORATORIES
PROJECT:  MBL @ MATTAPAN
6/23/03 SCHEDULE UPDATE
ROOFING SCHEDULE

Sheet 1 of 1

Prepared by Skanska Science & Technology

Date | Revision | Checked | Approved

© Primavera Systems, Inc.

EXHIBIT L

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## CONFIDENTIALITY & NONDISCLOSURE AGREEMENT

**WHEREAS,** Skanska USA Building Inc. (hereinafter the "CONSTRUCTION MANAGER") on behalf of Massachusetts Biologic Laboratories (hereinafter the "OWNER") has contracted with The Hartford Roofing Company, Inc. (hereinafter the "SUBCONTRACTOR") to perform the work set forth in the Contract Documents (hereinafter the "Work"), of which this Agreement is a part, and in order to facilitate same, it may be necessary or desirable for OWNER or CONSTRUCTION MANAGER on behalf of the OWNER to disclose to SUBCONTRACTOR information or ideas which it deems secret, proprietary, or confidential, (collectively "Confidential Information"), which Confidential information OWNER or CONSTRUCTION MANAGER on behalf of the OWNER would not disclose to SUBCONTRACTOR, unless an obligation of confidentiality protected such Confidential Information;

**WHEREAS,** SUBCONTRACTOR desires to be bound by the obligation of confidentiality to ensure the free flow of confidential Information to it in order to properly undertake the Work.

**NOW, THEREFORE,** in consideration of the mutual promises contained herein and for other good and valuable consideration, OWNER and CONSTRUCTION MANAGER on behalf of the OWNER and SUBCONTRACTOR agree as follows:

1.  When Confidential Information is disclosed, either as a written or oral communication, OWNER or CONSTRUCTION MANAGER on behalf of the OWNER shall use reasonable efforts to adequately identify it as confidential for SUBCONTRACTOR to treat it as such. Additionally, SUBCONTRACTOR shall mark its work product in connection with the Work, whether Internal to SUBCONTRACTOR or delivered to OWNER or CONSTRUCTION MANAGER on behalf of the OWNER, with an appropriate restrictive legend to identify it as Confidential Information. .

2.  Confidential Information shall be used solely for the purpose of performing SUBCONTRACTOR'S Work, unless OWNER or CONSTRUCTION MANAGER on behalf of the OWNER first authorizes its use for other purposes.

3.  SUBCONTRACTOR'S employees and those employees of its affiliates who are exposed to Confidential Information shall be bound by this Agreement. SUBCONTRACTOR shall ensure that they maintain the confidentiality of the information for the term of this Agreement.

4.  Subject to the exceptions that may be contained in their Agreement, SUBCONTRACTOR shall not disclose to any third party, for a period of ten (10) years from completion of the Work and confidential Information.

5.  This Agreement shall not apply to any Confidential Information that:

    a.  Is already rightfully in the possession of SUBCONTRACTOR or its affiliates without obligation of nondisclosure, but was not obtained directly or indirectly from OWNER or CONSTRUCTION MANAGER on behalf of the OWNER or its affiliates;

    b.  Is independently developed by SUBCONTRACTOR or its affiliates not as part of the Work;

    c.  Is or becomes available to the public without breach of this Agreement;

Initial

EXHIBIT L

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

## CONFIDENTIALITY & NONDISCLOSURE AGREEMENT

  d.  Is rightfully received by SUBCONTRACTOR from a third party who is not under obligation of nondisclosure, but who did not obtain the information directly or indirectly from OWNER or CONSTRUCTION MANAGER on behalf of the OWNER or its affiliates;

  e.  Is required to be disclosed pursuant to law or court order.

6.  SUBCONTRACTOR understands and acknowledges that certain Confidential Information may have been disclosed or licensed by OWNER or CONSTRUCTION MANAGER on behalf of the OWNER to one or more third parties under separate confidentiality and nondisclosure agreements. SUBCONTRACTOR nevertheless shall maintain such information as Confidential Information in accordance with this Agreement.

7.  Unless further work to which this Agreement applies is authorized by OWNER or CONSTRUCTION MANAGER on behalf of the OWNER to be performed by SUBCONTRACTOR, upon completion of the Work, SUBCONTRACTOR shall return all Confidential Information to OWNER or CONSTRUCTION MANAGER on behalf of the OWNER, except for one record copy which SUBCONTRACTOR may retain for its records subject to the provisions of this Agreement.

8.  This Agreement shall be governed by, and construed in accordance with, the law of the State where the Project is located, and the courts of that State shall be the venue for resolution of any disputes arising here from.

9.  This Agreement shall inure to the benefit of, and be binding upon, the parties hereto and their respective successors and assigns.

10. This is the entire Agreement between OWNER or CONSTRUCTION MANAGER on behalf of the OWNER and SUBCONTRACTOR relative to the exchange of Confidential Information; it supersedes any prior or contemporaneous written or oral agreements thereon; and it may not be amended or modified except by subsequent agreement in writing by duly authorized officers or representatives of OWNER or CONSTRUCTION MANAGER on behalf of the OWNER and SUBCONTRACTOR.


**THE HARTFORD ROOFING COMPANY, INC.**    **SKANSKA USA BUILDING INC.**


BY: _____    BY: _____
                                               Brian Howe
TITLE: _____    TITLE: _____Project Executive_____

DATE: _____    DATE: _____


| Initial |
|---------|
|         |

## EXHIBIT R

Attachment to Subcontract No. 551039-417, dated August 21, 2003, by and between The Hartford Roofing Company, Inc. and SKANSKA USA BUILDING INC. for BID PACKAGE NO. 417 – ROOFING on Massachusetts Biologic Laboratories, Mattapan, MA.

Subcontract Rider
Rider to Subcontract No. 551039-417
Dated August 21, 2003
Between
Skanska USA Building Inc.
And
The Hartford Roofing Company, Inc.

Attached to and forming an integral part of this Subcontract for this Project, this Subcontract Document specifically and only modifies the following:

1. **Article 8.9:**

   At the beginning of the Article, insert "Provided the Subcontractor has been paid amounts properly due and owing,".

2. **Article 11.1:**

   In the first Paragraph, after the words "To the maximum extent permitted by law" insert the words "and to the extent caused by the Subcontractor, its employees, and/or agents,".

THE HARTFORD ROOFING COMPANY, INC.                SKANSKA USA BUILDING INC.

BY:_____            BY:_____

TITLE:_____            TITLE: Brian Howe, Project Executive_____

DATE:_____            DATE:_____

| Initial |
| --- |
|  |
|  |

# SKANSKA

June 25, 2003

TO: Subcontract Bidders

RE: Massachusetts Biologic Laboratories.
Mattapan, MA
Skanska Job No. 551039
Bid Package No. 417 – Roofing
Addendum No. 1

Ladies and Gentlemen:

Please find enclosed the following additional and/or revised documents, which are being issued for clarification purposes. Bidders are directed to include in their proposals all costs associated with any additions, deletions, revisions, clarifications and/or modifications to the Bid Package Scope of Work shown or specified on these additional and/or revised documents.

- Specification Section 07720 – Roof Accessories (Rev. A) dated 6/20/03.

Please be advised that the Bid Due Date and Time remains at 1:00 P.M. (EST), Monday, June 30, 2003.

All other terms and conditions of the original Bid Package and subsequent Addendum remain unchanged. If you have any questions regarding the enclosed please contact the undersigned at 617-296-0171 extension 2228.

Very truly yours,
Skanska

Brian C. Fugere
Sr. Director of Purchasing

Terry Connors/Kelly Conway MBL
Doyle Johnson, CDI
Robert Omoyeni - Mass Alliance

07/28/2003  15:23   17813441012                    HARTFORD ROOFING                    PAGE  00

# St Paul Surety

The St. Paul Companies
Surety
Franklin Oaks Office Park
114 Grove Street - Suite 311
Franklin, Massachusetts  02038
508.553.0700 Tel
508.553.0760 Fax
www.stpaulsurety.com

July 25, 2003

Skanska Building USA, Inc.
460 Walk Hill Street
Mattapan, MA  02126

Attention:    Brian Fugere
              Senior Director of Purchasing

Project:      University of Massachusetts
              Biological Laboratories

Reference:    Roofing

Dear Mr. Fugere:

We, ST. PAUL FIRE AND MARINE INSURANCE COMPANY is surety for THE HARTFORD
ROOFING COMPANY, INC.

We understand that The Hartford Roofing, Company, Inc. has submitted a bid to Skanska Building
USA, Inc. for the Roofing Package and related scope required on the above noted project.

Accordingly, should you accept the bid submitted by The Hartford Roofing Company, Inc., and
should it be required by you, we as surety are prepared to immediately issue a Performance Bond
and a Labor and Material Payment Bond on mutually acceptable form, in the full amount of said bid.

We are on the Federal REGISTER, Department of the Treasury, Fiscal Service, as a company holding
a Certificate of Authority as an acceptable Surety on federal bonds in the State of Connecticut with an
underwriting limitation in excess of the bid amount.

St. Paul Fire and Marine Insurance Company

By: _____          _____
    Kathleen M. Flanagan                                    Witness
    Attorney-In-Fact

St. Paul Fire and Marine
Insurance Company
United States Fidelity
and Guaranty Company
Seaboard Surety Company
Fidelity and Guaranty
Insurance Company
Fidelity and Guaranty
Insurance Underwriters, Inc.
St. Paul Mercury
Insurance Company
St. Paul Guardian
Insurance Company

**The St Paul**

## POWER OF ATTORNEY

| | |
|---|---|
| Seaboard Surety Company | United States Fidelity and Guaranty Company |
| St. Paul Fire and Marine Insurance Company | Fidelity and Guaranty Insurance Company |
| St. Paul Guardian Insurance Company | Fidelity and Guaranty Insurance Underwriters, Inc. |
| St. Paul Mercury Insurance Company | |

Power of Attorney No.    23840          Certificate No. **1811090**

**KNOW ALL MEN BY THESE PRESENTS:** That Seaboard Surety Company is a corporation duly organized under the laws of the State of New York, and that St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company and St. Paul Mercury Insurance Company are corporations duly organized under the laws of the State of Minnesota, and that United States Fidelity and Guaranty Company is a corporation duly organized under the laws of the State of Maryland, and that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc. is a corporation duly organized under the laws of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Kathleen M. Flanagan, Bette A. Botticello, Richard A. Leveroni, Gary J. Ginhetti, Kelly L. Julizmo, Kathleen A. Wagner, and Stacy Koehler

of the City of    **Farmington**         , State    **Connecticut**         , their true and lawful Attorney(s)-In-Fact, each in their separate capacity if more than one is named above, to sign its name as surety to, and to execute, seal and acknowledge any and all bonds, undertakings, contracts and other written instruments in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF,** the Companies have caused this instrument to be signed and sealed this    21ˢᵗ    day of    April    2003

*(diagonal watermark: WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER)*

| | |
|---|---|
| Seaboard Surety Company | United States Fidelity and Guaranty Company |
| St. Paul Fire and Marine Insurance Company | Fidelity and Guaranty Insurance Company |
| St. Paul Guardian Insurance Company | Fidelity and Guaranty Insurance Underwriters, Inc. |
| St. Paul Mercury Insurance Company | |

PETER W. CARMAN, Vice President

THOMAS E. HUIBREGTSE, Assistant Secretary

State of Maryland
City of Baltimore

On this    21ˢᵗ    day of    April    , 2003 , before me, the undersigned officer, personally appeared Peter W. Carman and Thomas E. Huibregtse, who acknowledged themselves to be the Vice President and Assistant Secretary, respectively, of Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, United States Fidelity and Guaranty Company, Fidelity and Guaranty Insurance Company, and Fidelity and Guaranty Insurance Underwriters, Inc.; and that the seals affixed to the foregoing instrument are the corporate seals of said Companies; and that they, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing the names of the corporations by themselves as duly authorized officers.

In Witness Whereof, I hereunto set my hand and official seal.

My Commission expires the 1st day of July, 2006.

REBECCA EASLEY-ONOKALA, Notary Public

86203 Rev. 7-2002 Printed in U.S.A.

07/28/2003  15:23  17813441012                    HARTFORD ROOFING                    PAGE  10

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Boards of Directors of Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, United States Fidelity and Guaranty Company, Fidelity and Guaranty Insurance Company, and Fidelity and Guaranty Insurance Underwriters, Inc. on September 2, 1998, which resolutions are now in full force and effect, reading as follows:

**RESOLVED,** that in connection with the fidelity and surety insurance business of the Company, all bonds, undertakings, contracts and other instruments relating to said business may be signed, executed, and acknowledged by persons or entities appointed as Attorney(s)-in-Fact pursuant to a Power of Attorney issued in accordance with these resolutions. Said Power(s) of Attorney for and on behalf of the Company may and shall be executed in the name and on behalf of the Company, either by the Chairman, or the President, or any Vice President or an Assistant Vice President, jointly with the Secretary or an Assistant Secretary, under their respective designations. The signature of such officers may be engraved, printed or lithographed. The signature of each of the foregoing officers and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Attorney(s)-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and subject to any limitations set forth therein, any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company, and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding upon the Company with respect to any bond or undertaking to which it is validly attached; and

**RESOLVED FURTHER,** that Attorney(s)-in-Fact shall have the power and authority, and, in any case, subject to the terms and limitations of the Power of Attorney issued them, to execute and deliver on behalf of the Company and to attach the seal of the Company to any and all bonds and undertakings, and other writings obligatory in the nature thereof, and any such instrument executed by such Attorney(s)-in-Fact shall be as binding upon the Company as if signed by an Executive Officer and sealed and attested to by the Secretary of the Company.

I, Thomas E. Huibregtse, Assistant Secretary of Seaboard Surety Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, United States Fidelity and Guaranty Company, Fidelity and Guaranty Insurance Company, and Fidelity and Guaranty Insurance Underwriters, Inc. do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I hereunto set my hand this ___25th___ day of ___July___, 2003

    

Thomas E. Huibregtse
Thomas E. Huibregtse, Assistant Secretary

*To verify the authenticity of this Power of Attorney, call 1-800-421-3880 and ask for the Power of Attorney clerk. Please refer to the Power of Attorney number, the above-named individuals and the details of the bond to which the power is attached.*

WARNING
THIS POWER OF ATTORNEY IS INVALID
WITHOUT THE RED
BORDER

| CIVIL ACTION COVER SHEET | Trial Court of Massachusetts SUPERIOR COURT DEPARTMENT County: Suffolk | Docket Number 04 4823 |
|---|---|---|

| PLAINTIFF(S) SKANSKA USA BUILDING, INC. | DEFENDANT(S) The Hartford Roofing Company, Inc. and St. Paul Fire & Marine Insurance Company d/b/a St. Paul Surety |
|---|---|
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Brett D. Carroll, Esq. Holland & Knight LLP 10 St. James Avenue, Boston, MA 02116 Board of Bar Overseers number: 640569 (617) 523-2700 | ATTORNEY (if known) |

Origin code and track designation

Place an x in one box only:
XX [ ] 1. F01 Original Complaint
[ ] 2. F02 Removal to Sup.Ct. c. 231, s.104 (Before trial) (F)
[ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

[ ] 4. F04 District Court Appeal c.231 s. 97 &104 (After trial) (X)
[ ] 5. F05 Reactivated after rescript; relief from judgment/ Order (Mass.R.Civ.P. 60) (X)
[ ] 6. E10 Summary Process Appeal (X)

| CODE NO. | TYPE OF ACTION AND TRACK DESIGNATION (See reverse side) TYPE OF ACTION (specify)    TRACK | IS THIS A JURY CASE? |
|---|---|---|
| A12 | Construction Dispute    (N) | (X) Yes    ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

TORT CLAIMS
(Attach additional sheets as necessary)
A.  Documented medical expenses to date:
    1.  Total hospital expenses  ..................................................  $...............
    2.  Total Doctor expenses  ....................................................  $...............
    3.  Total chiropractic expenses  ............................................  $...............
    4.  Total physical therapy expenses  ......................................  $...............
    5.  Total other expenses (describe)  ...................... Subtotal  $...............
B.  Documented lost wages and compensation to date  ...........................  $...............
C.  Documented property damages to date  ...........................................  $...............
D.  Reasonably anticipated future medical and hospital expenses  ...........  $...............
E.  Reasonably anticipated lost wages  ................................................  $...............
F.  Other documented items of damages (describe)
                                                                                            $...............
G.  Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                                                            $...............
                                                                                    TOTAL: $...............

CONTRACT CLAIMS
(Attach additional sheets as necessary)
Provide a detailed description of claim(s): Breach of contract and specific performance claim against subcontractor for failure to perform and performance bond claim against surety for failure to perform.    TOTAL    Approximately $250,000.00

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT    N/A

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."
Signature of Attorney of Record                                    DATE: 11/04/04

A.O.S.C. 2003

I HEREBY ATTEST AND CERTIFY ON
DEC. 13, 2004 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT
BY

ASSISTANT CLERK.

3

# Commonwealth of Massachusetts



SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. **04-4823**

SKANSKA USA BUILDING, INC. _____, Plaintiff(s)

v.

THE HARTFORD ROOFING COMPANY, INC. and ST. PAUL FIRE
& MARINE INSURANCE COMPANY d/b/a ST PAUL SURETY
_____, Defendant(s)

## SUMMONS

CT Corporation System as
Registered Agent for The Hartford Roofing Company, Inc.
101 Federal Street, Boston, MA 02072

To the above-named Defendant:

    You are hereby summoned and required to serve upon Brett D. Carroll, Esq. Holland &
Knight, LLP, 10 St. James Avenue, Boston, MA 02116

plaintiff's attorney, whose address is 10 St. James Avenue, Boston, MA 02116 , an answer to
the complaint which is herewith served upon you, within 20 days after service of this summons upon you,
exclusive of the day of service. if you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You are also required to file your answer to the complaint in the office
of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable
time thereafter.

    Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which
you may have against the plaintiff which arises out of the transaction or occurrence that is the subject
matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

              Barbara J. Rouse
    Witness, ~~Suzanne V. DelVecchio~~, Esquire, at Boston, the_____ day of
November _____, in the year of our Lord two thousand _and four_____ .

                    *Michael Joseph Donovan*
                                          Clerk/Magistrate

NOTES
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
    (1) TORT    (2) MOTOR VEHICLE TORT    (3) CONTRACT    (4) EQUITABLE RELIEF    (5) OTHER

FORM CIV.P. 1 3rd Rev.

I HEREBY ATTEST AND CERTIFY ON
DEC. 13, 2004 , THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

    MICHAEL JOSEPH DONOVAN
    CLERK / MAGISTRATE
    SUFFOLK SUPERIOR CIVIL COURT
    DEPARTMENT OF THE TRIAL COURT

BY. _____
    ASSISTANT CLERK.

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.